**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | |
|---|---|
| In re: | ) )  Chapter 11 |
| TEHUM CARE SERVICES, INC., | ) )  Case No. 23-90086 (CML) |
| Debtor. | ) ) *Pending in the United States Bankruptcy* ) *Court for the Southern District of Texas* |
| THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER, | ) ) ) )  Adversary Proceeding No. 23-04005-drd ) |
| Plaintiffs, | ) ) *Removed from the Circuit Court of* ) *Boone County, Missouri, Division 4* |
| v. | ) *Case No. 22BA-CV01701-01* |
| TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC., CHS TX, INC. and YESCARE CORP., | ) ) ) ) |
| Defendants. | ) ) |

**SUGGESTIONS IN SUPPORT OF**
**MOTION OF TEHUM CARE SERVICES, INC.**
**D/B/A CORIZON HEALTH, INC. TO TRANSFER VENUE TO THE**
**SOUTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1412 AND**
**RULE 7087 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

## TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... i

     I.     PRELIMINARY STATEMENT ........................................................................ 1

     II.    JURISDICTION ................................................................................................ 1

     III.   BACKGROUND ................................................................................................ 2

     IV.   LEGAL STANDARDS ..................................................................................... 3

     V.    DISCUSSION ................................................................................................... 7

          A.     The Interests of Justice Favor Transfer to the Texas Bankruptcy Court. .... 7

               i.     The Southern District of Texas is the Presumed Venue for the
Adversary Proceeding. ................................................................... 7

               ii.    Efficiency and Economics of Estate Administration, and Judicial
Economy and Efficiency Strongly Favor Transfer of the Adversary
Proceeding. ...................................................................................... 7

               iii.   Fairness is a Neutral Factor. .......................................................... 11

               iv.   Plaintiffs' Choice of Venue Does Not Overcome the Other Factors.
................................................................................................... 11

          B.     Transfer of This Adversary Proceeding is Significantly More Efficient for
All Parties Involved. ................................................................................. 12

               i.     The Requested Transfer Will Promote the Economic
Administration of the Estate. ......................................................... 12

               ii.    Creditors Varying Proximity to Either Venue, and the Expected
Lack of Ancillary Administration Makes the Final Factors Neutral.
................................................................................................... 14

     VI.   CONCLUSION ............................................................................................... 15

CERTIFICATE OF SERVICE ..................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Gen. Nutrition Cos.*,
  2006 WL 2739642 (D.N.J. 2006) .................................................................. 7

*Aldrich Pump LLC v. Those Parties to Actions Listed Appendix A (In re Aldrich Pump LLC)*,
  No. 20-30608 (JCW), Adversary Proceeding No. 20-03041 (JCW), 2021 WL
  3729335, at *31-31 ¶¶ 185-190 (Bankr. W.D.N.C. Aug. 23, 2021) ..................... 13

*Aliant Health Mgmt. Servs., Inc. v. Vital Link Private Duty Lodi, Inc. (In re Vital Link Lodi, Inc.)*,
  240 B.R. 15 (Bankr. W.D. Mo. 1999) ................................................... *passim*

*Burlingame v. Whilden (In re Whilden)*,
  67 B.R. 40 (Bankr. M.D. Fla. 1986) ............................................................. 6

*Cadle Co. v. Mims (In re Moore)*,
  608 F.3d 253 (5th Cir. 2010) ....................................................................... 8

*Commonwealth of P.R. v. Commonwealth Oil Ref. Co. (In re Commonwealth Oil Ref. Co.)*,
  596 F.2d 1239 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045 (1980) .............. 5, 6, 8

*In re Farmland Indus., Inc.*,
  567 F.3d 1010 (8th Cir. 2009) ..................................................................... 5

*Fraizer v. Law. Title Ins. Corp. (In re Butcher)*,
  46 B.R. 109 (Bankr. N.D. Ga. 1985) ............................................................. 8

*Hechinger Liquidation Tr. v. Fox (In re Hechinger Inv. Co. of Del.)*,
  296 B.R. 323 (Bankr. D. Del. 2003) ............................................................. 7

*Highland Cap. Mgmt., L.P. v. Welsh (In re Bridge Info. Sys., Inc.)*,
  344 B.R. 587 (Bankr. E.D. Mo. 2006) ........................................................... 8

*Howard Brown Co. v. Reliance Ins. Co.*,
  66 B.R. 480 (E.D. Pa. 1986) ....................................................................... 7

*Larimi, Ltd. v. Yes! Ent. Corp.*,
  244 B.R. 56 (D.N.J. 2000) .......................................................................... 5

*Leal v. Bednar*,
  2017 WL 565176, No. 3:16-CV-3424-G (N.D. Tex. Feb. 13, 2017) .................. 10

*LSREF2 Baron, LLC v. Aguilar*,
  2013 WL 230381, No. 3:12-cv-1242-M (N.D. Tex. Jan. 18, 2013) ................... 12

*Mann v. Michael Industries, Inc. (In re Inland Shoe Manufacturing Company, Inc.)*,
    90 B.R. 981 (Bankr. E.D. Mo. 1988) ............................................................. 6

*Marroquin v. Taylor Bean & Whitaker Mort. Corp. (In re Case Pending in Another Dist.)*,
    No. 3:09-BK-07047-JAF, 2013 WL 1703867 (Bankr. W.D. Tex. April 19, 2013) .............................. 5

*In re Moss*,
    249 B.R. 411 (Bankr. N.D. Tex. 2000) .......................................................... 6

*Nixon Machinery Co. v. Roy Energy, Inc. (In re Nixon Machinery Co.)*,
    27 B.R. 871 (Bankr. E.D. Tenn. 1983) .......................................................... 7

*Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*,
    Case No. 2:18-cv-00014-JRG-RSP, 2019 WL 10094 (E.D. Tex. Feb. 13, 2019) ............................... 10

*Specialty Mills, Inc. v. Citizens State Bank*,
    51 F.3d 770 (8th Cir. 1995) ..................................................................... 4

*Think3 Litig. Trust v. Zuccarello (In re Think3, Inc.)*,
    529 B.R. 147 (Bankr. W.D. Tex. 2015) ................................................. 5, 6, 7, 9

*Windsor Communications Group, Inc. v. Five Towns Stationery, Inc. (In re Windsor Communications Group, Inc.)*,
    53 B.R. 293 (Bankr. E.D. Pa. 1985) ............................................................. 7

*Wittes v. Interco, Inc. (In re Interco, Inc.)*,
    139 B.R. 718 (Bankr. E.D. Mo. 1992) ........................................................... 5

**Statutes**

28 U.S.C § 157(b)(2)(A) ........................................................................... 4

28 U.S.C. § 157(b)(2)(B) .......................................................................... 5

28 U.S.C § 157(b)(2)(H) ........................................................................... 4

28 U.S.C § 157(b)(2)(O) ........................................................................... 4

28 U.S.C. § 1334(b) ............................................................................... 5

28 U.S.C. § 1409(a) ............................................................................... 3

28 U.S.C. § 1412 .................................................................................. 4

28 U.S.C. § 1452(a) ............................................................................... 4

Tex. Bus. Orgs. Code § 10.008(a)(2)(C) .......................................................... 10

Tex. Bus. Orgs. Code § 10.003 ................................................................... 11

**Other Authorities**

Fed. R. Bankr. P. 7019(2) ......................................................................... 4

4855-4422-6129

Fed. R. Bankr. P. 7087...................................................................................................................... 4

4855-4422-6129

Tehum Care Services, Inc. d/b/a Corizon Health, Inc., one of the above-captioned defendants and the above-captioned chapter 11 debtor and debtor in possession ("Tehum" or the "Debtor"), for its *Suggestions in Support of Motion to Transfer Venue to the Southern District of Texas Pursuant to 28 U.S.C. § 1412 and Rule 7087 of the Federal Rules of Bankruptcy Procedure*, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.      On Monday, February 13, 2023 (the "Petition Date"), the Debtor—a Texas corporation—filed a voluntary chapter 11 petition with the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division (the "Texas Bankruptcy Court"). The Debtor's chapter 11 case is pending before the Honorable Christopher M. Lopez under Case No. 23-90086 (CML) (the "Chapter 11 Case"). The next day, February 14, 2023, the Debtor removed the above-captioned adversary proceeding (the "Adversary Proceeding") to this Court from the Circuit Court of Boone County, Missouri, Division 4.

2.      In light of the pendency of the Chapter 11 Case, transferring this Adversary Proceeding to the Texas Bankruptcy Court is warranted pursuant to 28 U.S.C. § 1412(a) and rule 7087 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), because the claims at issue herein are "Core" and directly affect the Debtor and the administration of its Chapter 11 Case.

## II.    JURISDICTION

3.      This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334. The determination of venue for this Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b).

### III.   BACKGROUND

4.      Plaintiffs, The Curators for The University of Missouri on behalf of the Missouri
Health Care and University Physicians ("University") and Capital Region Medical Center
("Capital Region," and together with University, the "Plaintiffs"), originally filed the above-
referenced proceeding in Missouri state court on May 11, 2022.  The most recently amended
petition therein was filed on November 3, 2022, with the full caption as follows:  *The University
of Missouri on behalf of the Missouri Health Care and University Physicians and Capital Region
Medical Center v. Tehum Care Services, Inc. d/b/a Corizon Health, Inc., CHS TX, Inc., and
YesCare Corp,* Case No. 22BA-CV01701 (the "State Court Action"), in the Circuit Court of Boone
County, Missouri, Division 4 (the "State Court").  *See* Docket No. 1-1.[1]

5.      In relevant part, Plaintiffs allege Corizon Health, Inc. ("Corizon Health") entered
into a Hospital Services Agreement (the "Agreement") with the Missouri Department of
Corrections ("MDOC"), and that Plaintiffs contracted with Corizon Health to provide medical
services in support of Corizon Health's obligations to the MDOC under the Agreement.  Plaintiffs
also allege, among other things, that Corizon Health failed to pay Plaintiffs for their services and,
therefore, owes the Plaintiffs $11,174,365.50 for such unpaid services.  Plaintiffs assert claims for
breach of contract arising from these unpaid services.  *See generally* Docket No. 1-3 at 55-107.

6.      In late 2021 and early 2022, according to Plaintiffs' allegations, Corizon Health
"enacted a plan to undergo a divisional merger under the Texas Business Organization Code
(the "TBOC") to reallocate assets and liabilities among the resulting entities to avoid the claims of
its creditors, like the Plaintiffs."  Docket No. 1-3, ¶ 58.  Plaintiffs contend the defendants in this

---

[1] Exhibit 1 to Docket No. 1 (Notice of Removal) is the form of complaint filed with the state court on October 7, 2023, in connection with Plaintiffs' request for leave to file the same.  The First Amended Petition in the State Court Action was filed of record on November 3, 2023 and appears at Docket No. 1-3 at 55-107.  The two forms of document are identical.

4855-4422-6129

action were the result of this alleged "restructuring scheme" that "left [Corizon Health] with no active contracts, no customers, no meaningful assets; all while bearing the liabilities for all Corizon Health's terminated or expired contracts . . . , including Plaintiffs' Agreement." *Id.* ¶ 62.

7.      In summary, Plaintiffs assert the following causes of action in the State Court Action:[2]

      a.      Breaches of contract and covenants of good faith and fair dealing;

      b.      Fraudulent transfers and constructive fraudulent transfers;

      c.      Civil conspiracy to engage in actual and constructive fraudulent transfers;

      d.      Common law fraud and conspiracy to commit fraud;

      e.      Express or implied agreements to assume the Debtor's debts; and

      f.      Successor liability and alter ego theories

8.      On the face of the complaint, therefore, Plaintiffs seek money damages from the Debtor and equitable remedies in furtherance of the same, including successor or alter ego theories and fraudulent transfer claims, against the non-debtor defendants.[3] The Debtor disputes the factual allegations set forth in the State Court Action, but presents this background to demonstrate the basis to transfer the now-removed State Court Action to the Texas Bankruptcy Court.

## IV.    LEGAL STANDARDS

9.      Pursuant to 28 U.S.C. § 1409(a), a proceeding related to a case under title 11 may be commenced in the district court where the title 11 case is pending. 28 U.S.C. § 1409(a). Accordingly, the proper venue for this case is the Southern District of Texas, where the Debtor's Chapter 11 Case is pending.   *Id.*   The Debtor is the surviving entity following a by-the-book

---

[2] The Debtor disputes the allegations but presents them here to demonstrate the basis for transfer of this Adversary Proceeding.

[3] As discussed below, the claims for fraudulent transfer and alter ego/successor liability are property of the Debtor's estate and Plaintiffs no longer have standing to pursue the same.

4855-4422-6129

divisional merger under Texas law (the "Divisional Merger"), and the crux of Plaintiffs' claims in the State Court Action go to the heart of the validity and enforceability of the divisional merger. While the Debtor disputes the merits of Plaintiffs' claims, such claims nonetheless fall within the Texas Bankruptcy Court's "core" jurisdiction to (i) resolve the claims asserted against the Debtor and (ii) otherwise determine how the other asserted claims may proceed, if at all, for the benefit of the Debtor's estate and creditor body as a whole.

10.     The Debtor removed the State Court Action to this Court on February 14 pursuant to 28 U.S.C. § 1452(a), and hereby moves to transfer this Adversary Proceeding to the Texas Bankruptcy Court.

11.     The statutory basis for this Motion is 28 U.S.C. § 1412 and Bankruptcy Rule 7087. Section 1412 provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.  Bankruptcy Rule 7087 provides that the Court, "[o]n motion and after a hearing . . . may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412, except as provided in Rule 7019(2)."

12.     As a threshold matter, this Court has subject matter jurisdiction over the Adversary Proceeding, because the claims asserted by the Plaintiffs are unquestionably core, but at a minimum, certainly "related to" the Debtor's bankruptcy case: the allegations concerning the Debtor's divisional merger and alleged fraudulent transfers go to the heart of the Chapter 11 Case and the Debtor's existence, and could not have more direct effects on the administration of the Debtor's bankruptcy estate.  *See* 28 U.S.C § 157(b)(2)(A), (H), (O); *see also, e.g.*, *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir. 1995) (quotation omitted).  Indeed, the claims asserted by Plaintiffs in the State Court Action may go so far as to "invoke a substantive right provided by the Bankruptcy Code," given the direct attack on the Debtor's formation and existence

4

pursuant to the TBOC, as well as the attempt to assert the Debtor's potential fraudulent transfer claims against the other defendants. *See In re Farmland Indus., Inc.,* 567 F.3d 1010, 1017-18 (8th Cir. 2009). And then, of course, there are Plaintiffs' claims for payment against the Debtor which (albeit stayed) are core matters pursuant to 28 U.S.C. § 157(b)(2)(B). This Court unquestionably has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b), and thus has broad discretion to transfer the case on grounds of either the "interest of justice" or "convenience of the parties," or both. *Aliant Health Mgmt. Servs., Inc. v. Vital Link Private Duty Lodi, Inc. (In re Vital Link Lodi, Inc.),* 240 B.R. 15, 19 (Bankr. W.D. Mo. 1999) (citations omitted); *see also Larimi, Ltd. v. Yes! Ent. Corp.,* 244 B.R. 56, 61 (D.N.J. 2000).

13.     The Debtor, as the movant here, has the burden to establish by a preponderance of the evidence that transfer of venue is warranted and appropriate. *See In re Vital Link Lodi, Inc.,* 240 B.R. at 19 (citing *Wittes v. Interco, Inc. (In re Interco, Inc.),* 139 B.R. 718, 720 (Bankr. E. D. Mo. 1992)). However, as discussed below, there is a "strong presumption" that the Texas Bankruptcy Court is the proper venue. *Id.*; *see also Think3 Litig. Trust v. Zuccarello (In re Think3, Inc.),* 529 B.R. 147, 208 (Bankr. W.D. Tex. 2015) (citing *Marroquin v. Taylor Bean & Whitaker Mort. Corp. (In re Case Pending in Another Dist.),* No. 3:09-BK-07047-JAF, 2013 WL 1703867, at *2 (Bankr. W.D. Tex. April 19, 2013)); *Commonwealth of P.R. v. Commonwealth Oil Ref. Co. (In re Commonwealth Oil Ref. Co.),* 596 F.2d 1239, 1241 (5th Cir. 1979), *cert. denied,* 444 U.S. 1045 (1980).

14.     When evaluating whether the "interest of justice" warrants transferring venue, courts consider the following factors:

    a.    Efficiency and economics of estate administration;

    b.    Presumption in favor of the 'home court;'

    c.    Judicial economy and efficiency;

    d.    Fairness and the ability to receive a fair trial;

      e.     The state's interest in having local controversies decided within its borders; and

      f.     Plaintiff's original choice of forum.

*In re Vital Link Lodi, Inc.*, 240 B.R. at 19 (citing *Mann v. Michael Industries, Inc. (In re Inland Shoe Manufacturing Company, Inc.)*, 90 B.R. 981, 983–84 (Bankr. E.D. Mo. 1988); *Burlingame v. Whilden (In re Whilden)*, 67 B.R. 40, 42 (Bankr. M.D. Fla. 1986)); *see also In re Think3, Inc.*, 529 B.R. at 209.  Of these six factors, four unequivocally favor transfer (a, b, c and e), one is neutral (d) and one only marginally falls in Plaintiffs' favor (f), but it outweighed by factors a, b, c and e.

15.     When evaluating whether the "convenience of the parties" favors transfer of the Adversary Proceeding, courts weigh several factors, including:

      a.     the proximity of creditors of every kind to the court;

      b.     the proximity of the debtor to the court;

      c.     the location of the assets;

      d.     the economic administration of the estate; and

      e.     the necessity for ancillary administration.

*In re Vital Link Lodi, Inc.*, 240 B.R. at 19; *see also In re Moss*, 249 B.R. 411, 425 (Bankr. N.D. Tex. 2000) (citing *Commonwealth Oil Ref. Co.*, 596 F.2d at 1247).  And "the most important of these considerations is whether the requested transfer would promote the economic and efficient administration of the estate." *Id.*

16.     As set forth below, under either the interest of justice or the convenience of the parties analysis, the transfer of this Adversary Proceeding to the Texas Bankruptcy Court is appropriate.

## V.    DISCUSSION

**A.    The Interests of Justice Favor Transfer to the Texas Bankruptcy Court.**

**i.    The Southern District of Texas is the Presumed Venue for the Adversary Proceeding.**

17.    In determining whether to transfer venue of the Adversary Proceeding to the Texas Bankruptcy Court, this Court has recognized the "strong presumption in favor of placing venue in the district where the bankruptcy case is pending." *In re Vital Link Lodi, Inc.*, 240 B.R. at 19 (citing *Windsor Communications Group, Inc. v. Five Towns Stationery, Inc.* (*In re Windsor Communications Group, Inc.*), 53 B.R. 293, 296 (Bankr. E.D. Pa. 1985)). "The general rule is that the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction, because speedy and economic administration of cases is a paramount consideration in the bankruptcy process." *Id.* (citing *Nixon Machinery Co. v. Roy Energy, Inc.* (*In re Nixon Machinery Co.*), 27 B.R. 871, 873 (Bankr. E.D. Tenn. 1983)); *see also Abrams v. Gen. Nutrition Cos.*, 2006 WL 2739642 (D.N.J. 2006) (*citing Howard Brown Co. v. Reliance Ins. Co.*, 66 B.R. 480, 482 (E.D. Pa. 1986)) ("Generally, the district where the bankruptcy case is pending is the proper venue for all proceedings 'related to' that bankruptcy case."); *Hechinger Liquidation Tr. v. Fox (In re Hechinger Inv. Co. of Del.)*, 296 B.R. 323, 325 (Bankr. D. Del. 2003).

18.    Because the Texas Bankruptcy Court is the "home court" for the Debtor's Chapter 11 Case, it follows that there is a "strong presumption" this Adversary Proceeding should be transferred to the Texas Bankruptcy Court.  This is also the logical outcome, as addressed below.

**ii.    Efficiency and Economics of Estate Administration, and Judicial Economy and Efficiency Strongly Favor Transfer of the Adversary Proceeding.**

19.    Some courts consider the efficiency and economics administration of the bankruptcy estate to be "the most important factor" in the analysis. *See, e.g.*, *In re Think3, Inc.*,

7

529 B.R. at 209 (citations omitted); *see also Fraizer v. Law. Title Ins. Corp. (In re Butcher)*, 46 B.R. 109, 112 (Bankr. N.D. Ga. 1985) (citing *Commonwealth of P.R. v. Commonwealth Oil Ref. Co. (In re Commonwealth Oil Ref. Co.)*, 596 F.2d 1239, 1247 (5th Cir. 1979)).  This factor is often considered in tandem with judicial economy and efficiency.

20.    In case the presumption of transferring an adversary proceeding to the Debtor's "home court" were not sufficient, these two key considerations make transfer an easy decision: The Debtor is organized under the laws of Texas and operates in many states beyond Missouri. Indeed, the Debtor's creditors and potential creditors are disbursed across the Nation.[4]  The most substantial relief the Plaintiffs seek in the now-removed State Court Action is the avoidance of a fraudulent transfer that the Plaintiffs allege to have been made from the Debtor to its alleged affiliates.  Whatever merit these claims may have, the claims themselves, as well as any recovery, are now property of the Debtor's bankruptcy estate and Plaintiffs no longer have standing to pursue these causes of action.  *See Highland Cap. Mgmt., L.P. v. Welsh (In re Bridge Info. Sys., Inc.)*, 344 B.R. 587, 594-96 (Bankr. E.D. Mo. 2006) (citations omitted) (concluding that, under Missouri state law, general claims and theories that seek recovery of diverted assets are property of the bankruptcy estate, and cannot be pursued by individual creditors); *see also Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 258-59 (5th Cir. 2010).  The Debtor must be allowed to address these claims in the Texas Bankruptcy Court, in front of Judge Lopez, where all of the Debtor's creditors will have an opportunity to be heard.  It would be the antithesis of efficiency and economy to require a Debtor to pursue (or not) its own claims in a faraway and unfamiliar venue, rather than

---

[4] Attached as **Exhibit A** is the current Master Service List filed in the Chapter 11 Case, which contains the Attorneys General for 12 states where the Debtor previously conducted business as well as other governmental units.  The Debtor's list of 30 largest unsecured creditors, attached as part of **Exhibit B**, contains creditors from 13 states.  There are also over 200 lawsuits pending in at least 21 states as of the Petition Date, as referenced below and in the accompanying Declaration of Russell A. Perry, where the Debtor is either a party or has potential indemnity obligations.

having such claims administered—along with all of the Debtor's other assets and causes of action—before the judge presiding over the Chapter 11 Case who will have full context, and who is in the best position to consider the views of the Debtor's creditor body.  In addition, forcing the Debtor to litigate in Missouri will require the Debtor to expend additional resources to retain and compensate Missouri counsel, as well as incur travel expenses for out-of-state professionals and witnesses.  *See, e.g.*, *In re Think3, Inc.*, 529 B.R. at 209 (concluding that forcing a debtor, or its successor, to litigate an estate claim outside of the "home court" forces additional expenses, and "will likely reduce the recovery (if any) to creditors").

21.    Judicial economy is similarly served by transferring this Adversary Proceeding to the Texas Bankruptcy Court.  The Debtor's Chapter 11 Case is currently assigned to Judge Christopher M. Lopez in the Houston Division.  Upon transfer to Houston, this Adversary Proceeding will automatically be assigned to Judge Lopez, to be adjudicated before him in a uniform manner.  Rather than having various proceedings relating to the Debtor flung far and wide across numerous jurisdictions, consolidating all bankruptcy-related issues and cases before Judge Lopez will bring both context and consistency to the overall Chapter 11 Case and undoubtedly increase the efficiency of estate administration.  Centralizing the Debtor's disputes also serves the ends of judicial economy by leveraging the case-specific knowledge of Judge Lopez and his staff, rather than having multiple out-of-state tribunals handle a variety of matters that are all inextricably intertwined with (and at a minimum "relate to") the overarching Chapter 11 Case.

22.    Moreover, "[b]ankruptcy courts are regularly called upon to decide issues of corporate law of another state," making Judge Lopez well-suited to handle the matters in this case, and maintaining judicial economy and efficiency after transfer of this Adversary Proceeding to the Debtor's home court.  *In re Think3, Inc.*, 529 B.R. at 210.

23.     Perhaps of equal importance is that transferring this Adversary Proceeding to the Texas Bankruptcy Court will diminish the possibility of inconsistent rulings, particularly on the validity of the Debtor's divisional merger, which is sure to be one—if not the central—issue in the Chapter 11 Case. *See Leal v. Bednar*, 2017 WL 565176, No. 3:16-CV-3424-G, at *4 (N.D. Tex. Feb. 13, 2017) (finding that "the transfer may allow the bankruptcy court to make decisions based on the facts, law, and how the bankruptcy estate will provide for payment, discharge, or litigation of [the adversary claim,]" which would "diminish the possibility of inconsistent judgments and promote the efficient administration of justice.").

24.     Finally, while Plaintiffs may argue that, as a governmental unit, the State of Missouri may have some interest in adjudicating the dispute at home, that will certainly be the rallying cry of every state.  But the State of Texas has the paramount interest in adjudicating the dispute because it is Texas law that ultimately will govern: through the State Court Action, Plaintiffs have lodged a direct challenge to the validity of the Debtor's divisional merger under the TBOC.  Other than its own self-interest in collecting on its claim, there is no reason why the State of Missouri has any interest, never mind a compelling interest, in having a Missouri court interpret and apply a novel area of Texas law.  Nor is there any compelling reason to apply Missouri law in a manner that undermines or invalidates a Texas statute.  *Compare* Tex. Bus. Orgs. Code § 10.008(a)(2)(C) (providing that the allocation of assets and liabilities in a merger implemented according to statute is not a "transfer" or "assignment") *and Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, Case No. 2:18-cv-00014-JRG-RSP, 2019 WL 10094, at *2 (E.D. Tex. Feb. 13, 2019) (quoting relevant portions of Tex. Bus. Orgs. Code and stating "[u]nder Texas law, the division of Plastronics constitutes a divisive merger and the transfer of rights therefore occurred by operation of law, so no prohibited transfer occurred . . . . While the parties could have specifically stated that a merger specifically violated an anti-assignment provision, they did not do

4855-4422-6129

so. Accordingly, the prohibited transfer [should] not be implied by merger" (internal citations and quotation marks omitted) *with* **Exhibit D** (Plaintiffs' submission of form of proposed order in the State Court Action containing findings that the Divisional Merger was a "transfer" and seeking to vest fraudulent conveyance claims in a receiver).[5]

### iii.    Fairness is a Neutral Factor.

25.    One of the two remaining factors for transferring this Adversary Proceeding in the interest of justice is neutral. This Court and the Texas Bankruptcy Court both provide fairness and the ability to receive a fair trial. There is no indication that either court would provide an unfair advantage to any of the parties.

### iv.    Plaintiffs' Choice of Venue Does Not Overcome the Other Factors.

26.    The only element potentially weighing against transfer of this Adversary Proceeding is Plaintiffs' original choice of venue, Missouri State Court in Boone County. However, this choice is easily outweighed by the other factors, particularly the presumption that the Debtor's "home bankruptcy court" is the best venue for adjudication of disputes such as these. The Texas Bankruptcy Court is accustomed to accommodating bankruptcy cases of national and international interest, and there is no reason to suspect that the Plaintiffs will have any difficulty participating in the Debtor's bankruptcy case if this Adversary Proceeding is transferred. Indeed, the Texas Bankruptcy Courts conduct fully remote or "hybrid" hearings every day where attorneys and witnesses from across the United States are welcome to appear either live in the courtroom or via remote video feed, and it is a common occurrence for lawyers across the United States to routinely appear by video. *See Procedures for Complex Cases in the Southern District of Texas* (Effective January 1, 2023), Sections H, I (¶¶ 21-28) (providing instructions for remote or hybrid

---

[5] Copies of Texas Business Organizations Code sections 10.003 (Contents of Plan of Merger; More than One Successor) and 10.008 (Effect of Merger) are attached for the Court's convenience as **Exhibit E**.

4855-4422-6129

participation       in       all       hearings,       as       applicable),
https://www.txs.uscourts.gov/sites/txs/files/Complex_11_Procedures_01032023.pdf (last visited
February 16, 2023) (the "Texas Complex Case Procedures").  Regardless, the Plaintiffs' choice of
venue on core bankruptcy issues is "not sufficient to overcome the paramount interest in the
economical and efficient administration of [the Debtor's] bankruptcy estate." *LSREF2 Baron, LLC
v. Aguilar*, 2013 WL 230381, No. 3:12-cv-1242-M, at *5 (N.D. Tex. Jan. 18, 2013).

**B.      Transfer of This Adversary Proceeding is Significantly More Efficient for All Parties
Involved.**

27.      As demonstrated above, the Court should transfer this Adversary Proceeding to the
Texas Bankruptcy Court on interest of justice grounds alone.  If the Court wanted further support
for transfer, the convenience of the parties militates in favor of transfer as well.  Adjudication of
the Adversary Proceeding will be significantly more efficient for the parties if transferred to the
Texas Bankruptcy Court, as compared with this Court, which has no familiarity with this dispute,
the parties or the Chapter 11 Case.  *See In re Vital Link Lodi, Inc.*, 240 B.R. at 20 ("It would be
much more efficient and expedient to try those matters at one time in a single forum. In contrast,
no efficiencies would be realized by keeping this adversary matter in Missouri, particularly since
this Court has absolutely no connection with this Debtor or its Chapter 11 proceedings").

**i.      The Requested Transfer Will Promote the Economic Administration of the
Estate.**

28.      Similar to the "interest of justice" analysis, the Court must also consider "economic
administration of the estate" as part of the "convenience of the parties" analysis.  As shown above,
the "economics of estate administration" are best served by the transfer of this Adversary
Proceeding to the Debtor's "home court" in Texas.   Doing so will result in this Adversary
Proceeding being consolidated with the Debtor's Chapter 11 Case, where all claim-related disputes
and restructuring issues will be centralized.

29.     Analyzing the economic administration of the estate necessarily requires the Court to consider two other factors relevant to the convenience of the parties: (a) the location of relevant assets and (b) the proximity of the debtors to the Court.  In this Chapter 11 Case, the Debtor acts as a debtor in possession for its assets and business.  The Debtor's counsel is in Texas, as are the Debtor's financial advisors and Chief Restructuring Officer.  And, unless and until financing is secured and approved, there are few to no assets to pay additional professionals in Missouri or the travel costs associated with principal counsel, the CRO and potentially other witnesses traveling to Missouri for hearings.

30.     Any litigation outside of the Texas Bankruptcy Court will unnecessarily increase the costs incurred by the Debtor, reducing any amounts that will ultimately be distributed to creditors.  In considering the economics, the Court is presented with three practical options: (a) upon motion by Plaintiffs, remand the case to the State Court, where it will remain stayed with respect to the Debtor;[6] (b) deny all motions and adjudicate the Adversary Proceeding in this Court; or (c) transfer the case to the Texas Bankruptcy Court.  But only the last of these three options promotes the economic administration of the estate.

31.     The first option is not a viable alternative.  The lawsuit is presently stayed and is likely to remain stayed indefinitely because the claims asserted by the Plaintiffs are property of the Debtor's bankruptcy case and can only be asserted by the Debtor or a bankruptcy trustee.  *See, e.g.*, *Aldrich Pump LLC v. Those Parties to Actions Listed Appendix A (In re Aldrich Pump LLC)*, No. 20-30608 (JCW), Adversary Proceeding No. 20-03041 (JCW), 2021 WL 3729335, at *31–

---

[6] On Friday, February 17, 2023, the Debtor filed a motion to extend the automatic stay to cover various entities in litigation who have a right of indemnity from the Debtor.  *See* **Exhibit C-1** (the "Stay Extension Motion").  The two co-defendants here, YesCare and CHS TX, both have such indemnities, and the State Court Action is, therefore, one of the subjects of the Stay Extension Motion.  The Stay Extension Motion has been set for hearing on March 3, 2023 at 1:00 p.m. Central time.  *See* **Exhibit C-2** (Notice of Hearing).  If the Stay Extension Motion is granted, the automatic stay will apply to this action in its entirety regardless of any other practical realities (for example, that certain of the claims asserted by Plaintiffs are now property of the Debtor's estate).

4855-4422-6129

31 ¶¶ 185-190 (Bankr. W.D.N.C. Aug. 23, 2021) (holding that fraudulent conveyance claims sought to be continued by tort claimants are property of the estate). Remanding this case to the State Court would do nothing to aid the administration of the Debtor's bankruptcy case or ensure the timely adjudication of the Adversary Proceeding.

32.     The second option—adjudication of this Adversary Proceeding by this Court—is no more viable than the first option. While this Court is certainly well-suited to assess whether the Plaintiffs' claims constitute property of the Debtor's bankruptcy estate, only the Texas Bankruptcy Court should adjudicate such a core matter as whether to lift the stay to allow this Adversary Proceeding to continue.

33.     The final option—transfer of this case to the Texas Bankruptcy Court—resolves all of the issues presented by the other two. Namely, upon transfer, the Texas Bankruptcy Court can assess whether the Plaintiffs' claims are property of the Debtor's bankruptcy estate and determine whether the stay should be modified, all while monitoring the impact the Adversary Proceeding may have on the overall administration of the Debtor's Chapter 11 Case, including how a chapter 11 plan may impact the Adversary Proceeding. Under these circumstances, the economics of estate administration clearly favor a transfer of venue, for the convenience of the parties and judicial efficiency.

**ii.     Creditors Varying Proximity to Either Venue, and the Expected Lack of Ancillary Administration Makes the Final Factors Neutral.**

34.     The other relevant factors for the Court's "convenience of the parties" analysis are neutral, at best. *See In re Vital Link Lodi, Inc.*, 240 B.R. at 19-20. In terms of proximity, the Debtor's other creditors and likely witnesses are spread across the country, with over 200 litigations pending in at least 21 states where the Debtor is a direct party or has potential indemnity obligations: Alabama, Arizona, California, Florida, Georgia, Idaho, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New Mexico, New York, Oregon,

Pennsylvania, Tennessee, Virginia, and Wyoming.  Further, as of February 1, 2022, the Debtor

provided services to over 50 facilities across 12 states.  Cross referencing this with the Debtor's

last of 30 largest unsecured creditors and the Master Service List reveals creditors in at least 25

states.  If the proximity of creditors weighs in either direction, it weighs in favor of transfer to the

Texas Bankruptcy Court to allow these larger and smaller creditors an opportunity to be heard on

the impact this litigation will have on the administration of the Chapter 11 Case.  Ancillary

administration will not be necessary, as there are no international operations or entities involved

in these proceedings.  Moreover, as stated above and as reflected in the Texas Complex Case

Procedures, transfer will not disenfranchise any party in interest, as all parties in interest will have

direct access to any and all hearings in the Chapter 11 Case over the internet for video, and over

the phone for audio.  Accordingly, the final factor the Court must consider with regard to

convenience of the parties is neutral or, potentially favors transfer to Texas where any party in

interest may appear remotely for any hearing.

35.    In weighing all of these factors, it is clear that a transfer of venue to the Texas

Bankruptcy Court will not inconvenience Plaintiffs or prevent them from prosecuting their claims

against the Debtor.  Rather, transferring the Adversary Proceeding to the Texas Bankruptcy Court

will serve the interest of justice, and will provide greater convenience for all parties involved.

## VI.    CONCLUSION

36.    The interest of justice mandates transfer of this Adversary Proceeding to the Texas

Bankruptcy Court.  The presumption in favor of that court paired with the unquestionable

efficiency and economy of having the "home court" adjudicate this Adversary Proceeding tilt the

scales dramatically in favor of the requested transfer.  The preponderance of evidence makes clear

that transferring this Adversary Proceeding to the Texas Bankruptcy Court will not shift

inconvenience from one party to another.  Instead, granting this request to transfer the Adversary

15

Proceeding to the Texas Bankruptcy Court will serve the interest of justice, and will provide greater convenience for all parties involved.

WHEREFORE the Debtor requests that this Court transfer this Adversary Proceeding to the United States Bankruptcy Court for the Southern District of Texas, Houston Division, and grant such other relief as may be appropriate.

Respectfully submitted this 20th day of February, 2023.

**MARTIN, PRINGLE, OLIVER, WALLACE & BAUER, L.L.P.**

*/s/ Scott B. Haines*

Scott B. Haines MO #32525
B. Scott Tschudy MO # 46736
6401 Indian Creek Parkway
Overland Park, Kansas 66210
Telephone:     (913) 491-5500
Facsimile:      (913) 491-3341
Email:            sbhaines@martinpringle.com
                      bstschudy@martinpringle.com

*-and-*

**GRAY REED**

*/s/ Jason S. Brookner*

Jason S. Brookner (*pro hac vice*)
Texas Bar No. 24033684
1300 Post Oak Boulevard, Suite 2000
Houston, Texas 77056
Telephone:     (713) 986-7000
Facsimile:      (713) 986-7100
Email:            jbrookner@grayreed.com

*Counsel to Tehum Care Services, Inc. d/b/a Corizon Health, Inc.*

16

### CERTIFICATE OF SERVICE

I certify that on the 20th day of February, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Western District of Missouri, as well as via e-mail on counsel to Plaintiffs and the other Defendants as follows:

| **Counsel to Plaintiffs:** | **Counsel to YesCare and CHS TX, Inc.:** |
| --- | --- |
| Patrick Stueve (stueve@stuevesiegel.com) | Sam Hershey (sam.hershey@whitecase.com) |
| Ethan Lange (lange@stuevesiegel.com) | Phil Cantwell (pcantwell@dowdbennett.com) |
| Jordan Kane (kane@stuevesiegel.com) | Robyn Parkinson (rparkinson@dowdbennett.com) |

/s/ Jason S. Brookner
Jason S. Brookner