IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| IN RE: TEHUM CARE SERVICES, INC., | ) <br> ) <br> ) Case No. 23-0086 (CML) <br> ) |
| Debtor. | ) <br> ) |
| THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER, | ) <br> ) <br> ) Adversary Proceeding No. 23-04005-drd <br> ) |
| Plaintiffs, | ) *Removed from the Circuit Court of* <br> ) *Boone County, Missouri, Division 4* |
| v. | ) *Case No. 22BA-CV01701-01* <br> ) |
| TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC., CHS TX, INC. and YESCARE CORP., | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**CHS TX, INC. AND YESCARE CORP.'S STATEMENT IN SUPPORT OF TEHUM CARE SERVICES, INC. D/B/A CORIZON HEALTH, INC.'S MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF TEXAS**

CHS TX, Inc. ("CHS TX") and YesCare Corp. ("YesCare") submit this Statement in Support of *Tehum Care Services, Inc. d/b/a Corizon Health, Inc's Motion to Transfer Venue to the Southern District of Texas* (ECF 9-12, the "Transfer Motion"), and respectfully state as follows:

1.  CHS TX and YesCare support the transfer of this adversary proceeding (the "Proceeding") to the United States Bankruptcy Court for the Southern District of Texas (the "Southern District") for the reasons set forth in the Transfer Motion.

2.  CHS TX and YesCare submit this Statement in Support to highlight three additional reasons in support of transfer unique to them.

**I)** **Each Cause of Action Asserted Against CHS TX and YesCare Will Be Impacted By the Southern District's Evaluation of the Divisional Merger.**

3.  Any determination as to the Defendants' 2022 corporate restructuring (the "Divisional Merger")—which has been challenged by Plaintiffs and numerous other litigants across the country—should necessarily be made by the Southern District, the Court presiding over Tehum Care Service's (the "Debtor") chapter 11 case. Plaintiffs assert claims for breach-of-contract, successor liability, fraudulent transfer, and conspiracy-related causes of action that hinge on the ultimate assessment of the Divisional Merger. The propriety of the Divisional Merger and the resulting impacts of that determination should be decided by the court presiding over the Debtor's restructuring—the Southern District. Any other outcome could (and potentially would) result in inconsistent determinations across various tribunals.

4.  The Southern District already has put an initial stop to the risk of staggered and disparate assessments of the Divisional Merger. Presented with the slew of litigation seeking to unwind the Divisional Merger and recognizing the risks posed to the Debtor by the various indemnity obligations that it potentially owes in connection with the Divisional Merger and otherwise, the Southern District extended the automatic stay to this litigation and many others on March 3, 2023, see ECF 24 (Notice of Extension of Automatic Stay). In doing so, the Southern District paused any other court's consideration of those issues. By asking this Court to refuse transfer and, in fact, remand this case to state court, Plaintiffs here effectively seek a veto right over any conclusion reached by the Southern District regarding the Divisional Merger. That does not serve any of the stay factors, see Matter of Commonwealth Oil Ref. Co., Inc., 805 F.2d 1175, 1182 (5th Cir. 1986) (purposes of automatic stay are "giv[ing] the debtor a breathing spell from his creditors" and "protect[ing] creditors by preventing a race for the debtor's assets"), and is otherwise wholly inappropriate.

5. Plaintiffs are at no risk of their interests going unprotected in any litigation concerning the validity of the Divisional Merger in the Southern District. To the contrary, Plaintiff Capital Region Medical Center ("Capital Region") has been appointed to serve as a fiduciary on the Official Committee of Unsecured Creditors, see In re Venturelink Holdings, Inc., 299 B.R. 420, 423 (Bankr. N.D. Tex. 2003) ("a committee member owes a fiduciary duty to *all* creditors represented by the committee") (emphasis added), and estate-funded legal counsel will now be advocating for the interests of the entire body of all unsecured creditors. See Doc. 145, Amended Notice of Appointment of Official Committee of Unsecured Creditors, Case No. 23-90086 (Bankr. S.D. Tex. Mar. 6, 2023).[1] In light of this, there is no reason to refuse to transfer this action to the Southern District. And, practically speaking, now that the Southern District has extended the stay to CHS TX and YesCare (albeit on an interim basis, through May 18, 2023 but potentially indefinitely), there is no reason for this case to linger inactive on this Court's docket.

## II) The Causes of Action Against the Debtor, CHS TX, and YesCare Should be Considered Together and Cannot Be Separated In "Any Part Thereof."

6. Bankruptcy Rule 7087 allows the Court, "[o]n motion and after a hearing" to "transfer an adversary proceeding or any part thereof to another district." CHS TX and YesCare support the Motion to Transfer's request to transfer this adversary proceeding, in full, to the Southern District.

7. The adversary proceeding should not be transferred in "part"—i.e., only the claims against the Debtor—to the Southern District because the claims that would be left here against CHS TX and YesCare would still require the Debtor's participation in this proceeding (at minimum, as an extensive third-party discovery participant) and subject the Debtor to liability because it potentially owes various indemnity obligations to CHS TX and YesCare. Thus, the

---

[1] *Available at* https://www.kccllc.net/tehum/document/2390086230306000000000003.

3

claims against CHS TX and YesCare should not be split in "any part thereof" from the claims against the Debtor because it would create unnecessary expense and confusion without any accompanying judicial or economic efficiency. See In re Velocita Corp., 285 B.R. 188, 191 (Bankr. M.D.N.C. 2002) ("The consolidation of these proceedings before a single court likewise will promote decisional consistency."); In re SII Liquidation Co., 2011 WL 5101771, at *4 (Bankr. N.D. Ohio Oct. 25, 2011) (transferring adversary proceeding by creditor seeking to recover an asset along with counterclaims and crossclaims because those claims "are ancillary to the underlying core complaint"); Fed. R. Bankr. P. 7087.[2]

**III) If the Court Denies the Transfer Motion, CHS TX and YesCare Risk Facing Liability for the Same Causes of Action Brought by Different Plaintiffs in Different Forums.**

8. Plaintiffs press multiple fraudulent transfer claims against the Debtor, CHS TX, and YesCare, including fraudulent transfer and constructive fraudulent transfer (against the Debtor), and conspiracy to engage in a fraudulent transfer and a constructive fraudulent transfer (against the Debtor, CHS TX, and YesCare). See ECF 1-1 (Am. Pet. Counts VIII – XI).

9. The Debtor's Motion to Transfer makes clear that the Estate—not Plaintiffs—is the proper party in interest for all of the fraudulent transfer-based claims. See ECF 10 at 8 (explaining that Plaintiffs' fraudulent transfer "claims themselves, as well as any recovery, are now property of the Debtor's bankruptcy estate and Plaintiffs no longer have standing to pursue these causes of action"). Moreover, it is black letter law that the fraudulent transfer claims asserted by Plaintiffs

---

[2] Given the overlapping claims, it is not apparent how the eleven claims could be split to proceed without all three Defendants present. **Five** of the claims are asserted against all Defendants. See Counts I (Breach of Contract); II (Breach of Covenant of Good Faith and Fair Dealing); VII (Common Law Fraud); IX (Civil Conspiracy to Engage in Fraudulent Transfer); and XI (Conspiracy to Engage in a Constructive Fraudulent Transfer). **Four** first require a finding of liability against the Debtor before successor liability can be imposed. See Count III (Successor Liability – Express or Implied Agreement to Assume Debts); IV (Successor Liability - De Facto Merger); V (Successor Liability - Mere Continuation); VI (Successor Liability – Intent to Defraud Creditors). The **two** that remain are the property of the Estate and must proceed in the Southern District. See Counts VIII (Fraudulent Transfer) and X (Constructive Fraudulent Transfer).

4

are now property of the Debtor's estate and Plaintiffs no longer have standing to pursue the same. See, e.g., Highland Cap. Mgmt, L.P. v Welsh (In re Bridge Info. Sys., Inc.), 344 B.R. 587, 594-96 (Bankr. E.D. Mo. 2006) (claims seeking to recover diverted assets are property of the bankruptcy estate).

10. As long as this case remains separate from the proceeding in the Southern District, CHS TX and YesCare face different plaintiffs potentially asserting the same claims in different forums. Transfer to the Southern District would alleviate this risk.

## CONCLUSION

11. For the reasons stated in the Motion to Transfer and herein, CHS TX and YesCare respectfully ask the Court to grant the Motion to Transfer.

Dated: March 13, 2023                                             Respectfully Submitted,

**DOWD BENNETT LLP**

*/s/ Philip A. Cantwell*
Philip A. Cantwell #65505
7676 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
(314) 889-7300 (telephone)
(314) 863-2111 (facsimile)
pcantwell@dowdbennett.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 13th day of March, 2023, a true and correct copy of the foregoing document was filed with the Electronic Case Filing System for the United States Bankruptcy Court for the Western District of Missouri, which electronically sent notice of the foregoing document to all parties authorized to receive electronic notice in this case.

*/s/ Philip A. Cantwell*