**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | | |
|---|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** | ) | |
| **Plaintiffs,** | ) | Case No. 22BA-CV01701-01 |
| **v.** | ) | Division 4 |
| **TEHUM CARE SERVICE, INC. d/b/a CORIZON HEALTH, INC., CHS TX, INC., and YESCARE CORP.,** | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 4

I. Corizon Health Schemes to Silo Its Assets into a New Corporation. ........ 4

A. Gefner and Tirschwell Take Over Corizon Health. ........ 4

B. Corizon Health Develops Scheme Intended to Prevent Plaintiffs from Recovering on Corizon Health's Assets. ........ 6

C. Corizon Health Accelerates Restructuring After Plaintiffs Threaten to Sue in Seven Days. ........ 7

D. Corizon Health Works Through the Weekend to Finish its Restructuring Scheme Before Plaintiffs File Suit. ........ 8

E. With Corizon Health's Assets Now with CHS TX, Defendants Maneuver to Conceal Who Owns Them. ........ 11

F. Corizon Health VP Gefner Buys YesCare's Equity for Ninety-Five Dollars. ........ 12

G. YesCare Guts Corizon and Absorbs its Entire Business, Minus Liabilities, in the Restructuring. ........ 13

H. Free from Corizon Health's Liabilities, YesCare and CHS TX Hold Themselves Out as Corizon Health With a "Name Change." ........ 15

I. YesCare and CHS TX Take Over Corizon Health's Headquarters and Business Operations ........ **Error! Bookmark not defined.**

J. YesCare and CHS Take Over Corizon Health's Officers, Directors, Managers, and Employees ........ **Error! Bookmark not defined.**

II. Defendants Continue Their Operations After Draining Corizon Health's Assets. .... **Error! Bookmark not defined.**

A. Defendants Abandon Corizon Health and its Parent Companies. ........ 25

B. The Main "Consideration" Corizon Health Received for the Restructuring, a Purported $15 Million "Funding Agreement," is Seemingly With a Dissolved Company. ........ 26

C. Corizon Health Continues to Pull From YesCare Funds. ........ 27

D. YesCare's Tenuous Business and Financial Situation. 29

i. David Gefner, Jay Leitner, Isaac Lefkowitz, YesCare Holdings, LLC, and Perigrove. 29

ii. Sara Tirschwell and YesCare Corp. 35

III. All the While, Corizon Health Misleads Plaintiffs About its Intent to Pay. 37

LEGAL STANDARD 40

ARGUMENT 41

I. Plaintiffs Have a Fair Chance of Prevailing Under Missouri's Uniform Fraudulent Transfer Act. 41

A. MUFTA Authorizes Provisional Remedies Against All Defendants. 41

B. Defendants' Restructuring Supports a "Presumption" and "Strong Inference" of Fraudulent Intent. 42

II. Relatedly, Plaintiffs Have a Fair Chance of Prevailing on Their Successor Liability Claims. 45

A. This is a Paradigmatic Case of Successor Liability. 45

B. Missouri Law Applies to the Determination of Successor Liability 46

C. The Restructuring was Enacted to Escape Corizon Health's Liabilities. 48

D. CHS TX and YesCare are a Mere Continuation of Corizon Health. 49

E. The Restructuring Meets the Elements of a De Facto Merger. 52

III. This Court has Personal Jurisdiction Over All Defendants. 53

IV. Plaintiffs Will Suffer Irreparable Harm Absent Provisional Relief. 55

V. The Threat of Irreparable Harm to Plaintiffs Outweighs any Risk of Injury Granting the Injunction Will Inflict on Defendants—So Does the Public Interest. 55

VI. Plaintiffs' Requested Relief. 56

CONCLUSION 57

# TABLE OF AUTHORITIES

**Cases**

*A.O.A. v. Rennert*,
350 F. Supp. 3d 818 (E.D. Mo. 2018) .......... 47

*Aguilar v. PNC Bank, N.A.*,
2014 WL 12700618 (E.D. Mo. Nov. 19, 2014) .......... 46

*Allenspach-Boller v. United Cmty. Bank*,
2021 WL 1738884 (W.D. Mo. May 3, 2021) .......... 43, 44, 45

*BancorpSouth Bank v. Hall*,
2011 WL 529971 (W.D. Mo. Feb. 7, 2011) .......... *passim*

*Brockmann v. O'Neill*,
565 S.W.2d 796 (Mo. App. St. 1978) .......... 51

*C.D. Acquisition Holdings, Inc. v. Meinershagen*,
2007 WL 184796 (W.D. Pa. Jan. 22, 2007) .......... 53

*CitiMortgage, Inc. v. Just Mortg., Inc.*,
2013 WL 6538680 (E.D. Mo. Dec. 13, 2013) .......... 40, 43, 45, 55

*Clune v. Alimak AB*,
233 F.3d 538 (8th Cir. 2000) .......... 53

*Dieser v. St. Anthony's Med. Ctr.*,
498 S.W.3d 419 (Mo. 2016) .......... 41

*Enslein as Tr. for Xurex, Inc. v. Di Mase*,
2019 WL 2505052 (W.D. Mo. June 17, 2019) .......... 46

*Enter. Fin. Grp., Inc. v. Podhorn*,
930 F.3d 946 (8th Cir. 2019) .......... 42

*Favazza v. Path Media Holdings, LLC*,
2014 WL 1846109 (E.D. Mo. May 8, 2014) .......... 45

*Fink v. Wright (In re Wright)*,
611 B.R. 319 (Bankr. W.D. Mo. 2019) .......... 43

*Fleming Companies, Inc. v. Rich*,
978 F. Supp. 1281 (E.D. Mo. 1997) .......... 41

*Flotte v. United Claims, Inc.*,
657 S.W.2d 387 (Mo. App. E.D. 1983) .......... 50, 51

*Green v. Montgomery Ward & Co.*,
775 S.W.2d 162 (Mo. Ct. App. 1989) ........ 54

*Harashe v. Flintkote Co.*,
848 S.W.2d 506 (Mo. App. E.D. 1993) ........ 52

*J.Y.C.C. v. Doe Run Res., Corp.*,
2019 WL 2211109 (E.D. Mo. May 21, 2019) ........ 46

*Koch Supplies, Inc. v. Charles Needham Indus.*,
1990 WL 274485 (W.D. Mo. Nov. 14, 1990) ........ 54

*Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*,
519 F.2d 634 (8th Cir. 1975) ........ 54

*LearSchmidt Inv. Grp., LLC v. AB-Alpine SPE, LLC*,
2019 WL 3779521 (W.D. Mo. Aug. 12, 2019) ........ 54

*Nat'l Green Gas, L.L.C. v. Estrategy, Inc.*,
2019 WL 13207472 (W.D. Mo. June 27, 2019) ........ 53

*Nat'l Gypsum Co. v. Cont'l Brands Corp.*,
895 F. Supp. 328 (D. Mass. 1995) ........ 46

*Noodles Dev., LP. v. Ninth Street Partners, LLP*,
507 F.Supp.2d 1030 (E.D. Mo. 2007) ........ 40, 55

*Osborn v. Prime Tanning Corp.*,
2011 WL 13291159 (W.D. Mo. Apr. 29, 2011) ........ 47

*Patin v. Thoroughbred Power Boats Inc.*,
294 F.3d 640 (5th Cir. 2002) ........ 54

*Phelps–Roper v. Nixon*,
509 F.3d 480 (8th Cir. 2007) ........ 40

*Riegel v. Jungerman*,
597 S.W.3d 695 (Mo. App. W.D. 2019) ........ 40, 56

*Rodriguez v. Lawns of Distinction, Ltd.*,
2008 WL 4552973 (E.D. Mo. 2008) ........ 55

*Romak USA, Inc. v. Rick*,
384 F.3d 979 (8th Cir. 2004) ........ 53

*Roper Elec. Co. v. Quality Castings, Inc.*,
60 S.W.3d 708 (Mo. App. S.D. 2001) ........ 49

*Sangamon Assocs., Ltd. v. Carpenter 1985 Family P'ship, Ltd.*,
165 S.W.3d 141 (Mo. 2005) .................... 56

*Shaffer v. Health Acquisition Co.*, No.
2019 WL 104932 (W.D. Mo. Mar. 5, 2019) .................... 46

*Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*,
336 F.3d 801 (8th Cir. 2003) .................... 49, 50

*State ex rel. Dir. of Revenue, State of Mo. v. Gabbert*,
925 S.W.2d 838 (Mo.1996) .................... 40

*State ex rel. Fam. Support Div. v. Steak'm Take'm LLC*,
524 S.W.3d 584 (Mo. App. W. D. 2017) .................... *passim*

*Stolzenburg v. Biewer Lumber, LLC*,
2016 WL 3582032 (E.D. Mo. June 28, 2016) .................... 54

*Sundance Rehabilitation Corp. v. New Vision Care Assocs. II, Inc.*,
2006 WL 2850556 (W.D. Mo. Sept. 29, 2006) .................... 52

*Volk Const. v. Wilmescherr Drusch Roofing*,
58 S.W.3d 897 (Mo. App. E.D. 2001) .................... 56

**Statutes**

Mo. Rev. Stat. § 428.009 .................... 42, 43

Mo. Rev. Stat. § 428.014 .................... 44, 45

Mo. Rev. Stat. § 428.024 .................... 41, 42, 43, 45

Mo. Rev. Stat. § 428.039 .................... 1, 42

Mo. Rev. Stat. § 506.500.1 .................... 53

Tex. Bus. Orgs. Code Ann. § 10.901 (West) .................... 41

**Other Authorities**

*Solution for Conflict of Laws Governing Fraudulent Transfers: Apply the Law That Was Enacted to Benefit the Creditors*, 48 Bus. Law. 889 (1993) .................... 47

The New Texas Business Corporation Act Merger Provisions,
21 ST. MARY'S L.J. 109 (1989) .................... 41

Plaintiffs The Curators of the University of Missouri and Capital Region Medical Center move for provisional relief under Mo. Rev. Stat. § 428.039, including the appointment of a receiver to take charge of the assets transferred or of other property of the transferee. In support, Plaintiffs state as follows:

## INTRODUCTION

Until the last quarter of 2021, Corizon Health was the contracted healthcare provider for the Missouri Department of Corrections ("MDOC") for twenty-nine years, maintaining a regional office in Jefferson City, Missouri since 1992.[1] The University of Missouri and Capital Region provided health care services to inmates with the MDOC pursuant to a hospital services agreement with Corizon Health and its Missouri subsidiary, Corizon, LLC. But starting in 2020, Corizon Health stopped paying Plaintiffs for those services—even though, as Corizon Health admits, the MDOC paid Corizon Health in full for those services.[2] Corizon Health admits that it owes Plaintiffs at least $11,174,465.60 under the agreement.[3]

Corizon Health now claims it cannot pay Plaintiffs because it "has insufficient assets."[4] But claiming "insufficient assets" was a plan Corizon Health's owners and directors set in motion months ago. At the time these payments were due and owing, Corizon Health had sufficient assets, including $22.3 million in cash "available to unsecured creditors" in Corizon, LLC's bank

[1] Plaintiffs' First Amended Petition, ¶ 48; Corizon Health's Amended Answer to Plaintiffs' First Amended Petition, ¶ 48 ("Corizon admits the allegations contained in Paragraph 48 of the First Amended Petition").
[2] **Ex. 1**, Corizon's Responses to Plfs' Second Set of Request for Admission ("Corizon Health's RFA Responses") No. 35; **Ex. 2**, Corizon's Responses to Plfs' Second Set of Interrogatories ("Corizon Health's Second Irog Responses") No. 15.
[3] **Ex. 3**, Corizon's Responses to Pltfs' First Set of Interrogatories ("Corizon Health's First Irog Responses") No. 9. Particularly troubling is Corizon Health's filing of an Amended Answer on Friday, December 16, in which it attempts to create a sham issue about the amounts owed to Plaintiffs under the Agreement by claiming it "in error" admitted that over eleven million was owed. Corizon Health's response to Plaintiff's Interrogatory No. 9, however, stands, and this recent attempt to claw back a prior discovery admission fails.
[4] **Ex. 1**, Corizon Health's RFA Responses, No. 31.

account.[5] To prevent Plaintiffs from recovering on those funds and its other assets, Corizon Health enacted a scheme, through an abuse of the Texas Business Organizations Code, to quietly transfer all of Corizon Health's operations and assets, including substantially all of that $22.3 million, to a new company of its own creation.

Unbeknownst to Plaintiffs and despite Corizon Health's assurances that it would pay, Corizon Health converted to a Texas corporation, merged with Corizon, LLC and two other subsidiaries, split into "CHS TX, Inc." and "Corizon Health, Inc.," and then allocated its business, employees, management, and substantially all of its assets to CHS TX. As a result of that scheme, Corizon Health now seeks to bind Plaintiffs to recovering the amounts owed solely from Corizon Health's drained accounts.

But Corizon Health cannot avoid its obligations to Plaintiffs by fraudulently shedding its assets. Missouri's Uniform Fraudulent Transfer Act ("MUFTA") prohibits transactions made with the "actual intent to hinder, delay, or defraud any creditor of the debtor." A presumption of "actual intent" arises when several statutorily-enumerated "badges of fraud" are present. Explained in detail below, nearly all those factors exist:

- The transfer occurred after Corizon Health incurred substantial debt;
- Before the transfer was made, Plaintiffs had threatened Corizon Health with suit;
- Shortly thereafter, Corizon Health, managed by Sara Tirschwell and David Gefner, transferred its assets to an "insider:" the assets went to CHS TX (organized and owned by Tirschwell), whose equity was purchased by YesCare Corp. (organized and owned by Tirschwell), and then 95% of YesCare Corp.'s equity was purchased by YesCare Holdings, LLC (organized by Gefner);
- The transfer was of substantially all of Corizon Health's assets;
- Corizon Health was, or became, insolvent at the time of the transfer;
- Corizon Health nonetheless retained control of the assets transferred;
- Corizon Health admits it concealed the transfer from Plaintiffs.

---

[5] **Ex. 18**, Presentation to Corizon Health, Inc on Fairness Analysis Pertaining to Proposed Transaction, YESCARE-CHS-00000383 at 395

Thus, Plaintiffs are likely to succeed on their MUFTA claims. This is also a paradigm case of successor liability. Not only was the restructuring a fraudulent attempt to escape liability for debts, but YesCare and CHS TX are "mere continuations" of Corizon Health—consistent with the relevant factors, their officers, directors, and stockholders are the same as pre-merger Corizon Health; their business operations are identical; their equipment, labor force, and supervisors are identical; and they told their existing customers and employees that Corizon Health was simply undergoing a "name change."[6]

These facts establish that Plaintiffs are likely to succeed on the merits of their fraudulent transfer claims and successor liability theories, and that injunctive relief is warranted. Without it, efforts to collect a judgment in Plaintiffs' favor will likely meet the same fate as Plaintiffs' efforts to collect the amounts owed under the Agreement. For the foregoing reasons, and those stated more fully herein, Plaintiffs respectfully request this Court grant their Motion for Preliminary Injunction.

[6] Likewise, the restructuring meets the requisite factors for a "de facto merger" under Missouri law. *See* Section II(E).

## FACTUAL BACKGROUND

### I. Corizon Health Schemes to Silo Its Assets into a New Corporation.

#### A. Gefner and Tirschwell Take Over Corizon Health.

At the end of 2021, Corizon Health had stopped paying its vendors and creditors.[7] Unbeknownst to Plaintiffs, and despite Corizon Health's assurances of payment, Defendants maintain that Corizon Health knew, at that time, that it was "deeply insolvent and headed towards bankruptcy."[8] Against that backdrop, Corizon Health privately appointed Sara Tirschwell as its CEO and director effective December 17, 2021, replacing former CEO James Hyman.[9] Ms. Tirschwell's appointment is telling. A former managing director of MH Davidson's distressed strategy group, Tirschwell spent "29 years in distressed finance," is "a pioneer in distressed bank loan trading," and notably organized and led a bankruptcy litigation strategy that "ultimately caus[ed] Mexico to overhaul its insolvency laws."[10]

At the time of her appointment, Tirschwell was the Managing Director of Quest Turnaround Advisors ("Quest").[11] Quest boasts that its personnel "frequently work with companies as they complete an out of court restructuring."[12] Among its services, Quest offers, among other things, "Financial Restructuring," "Plans of Reorganization," and "Crisis/Interim Management," claiming experience in "[r]ecommending action plans and negotiating strategy, including…change of venue, transfer of assets…and other appropriate actions,"[13] "[i]dentifying

---

[7] *See, e.g.,* **Exhibit 5**, Blue Cross Blue Shield of Michigan v. Corizon Health Incorporated, Case No. 2022-002172-CB, Complaint, ¶¶ 14-15.

[8] **Ex. 4,** Kelly v. Corizon Health Inc., et al, Case No. 222-cv-10589, ECF No. 32.

[9] **Ex. 6**, Corizon Health's Officers and Directors from 2014-2022 (CORIZON010355-010359 at 59); Amended Answer ¶ 57 ("Corizon admits that Sara Tirschwell was appointed as Corizon's CEO"); **Ex. 7**, Sarah Tirschwell Marketing Op-Ed (claiming Tirschwell "has more than 30 years of experience in distressed finance").

[10] **Ex. 8**, Tirschwell – Quest Turnaround Advisors Bio (last visited December 17, 2022).

[11] **Ex. 8**, Tirschwell – Quest Turnaround Advisors Bio (last visited December 17, 2022) (stating "Sara Tirschwell, CFA, is a Managing Director of Quest Turnaround Advisors….She is currently serving as the CEO of Corizon Health").

[12] **Ex. 9**, Quest Turnaround Advisors – About Us (last visited December 17, 2022).

[13] **Ex. 10**, Quest Turnaround Advisors - Financial Restructuring.

opportunities to sell assets or raise new financing,"[14] "[t]aking positions as directors of companies to help manage the re-organization process when appropriate."[15]

Around the time of leadership changeover in December 2021, Corizon Health appears to have been bought by or transferred to new ownership. The Flacks Group, a private equity firm led by Michael Flacks, purchased Corizon Health in July 2020.[16] Michael Flacks and the Flacks Group's Chief Legal Officer, James Gassenheimer, gained seats on Corizon Health's board once the Flacks Group took ownership. But in December 2021, Flacks and Gassenheimer were replaced by new directors David Gefner, Jay Leitner, Isaac Lefkowitz, and Abe Goldberger.[17] David Gefner[18] is the principal and founder of a private equity group named "Perigrove;" Jay Leitner is Perigrove's Vice President of Special Operations.[19] Though Isaac Lefkowitz does not appear publicly as a director on Perigrove's website, he apparently has a Perigrove email address,[20] and is otherwise affiliated with Gefner through other Perigrove-related enterprises. *See* Section II(D)(i) below. These changes indicate Perigrove may have quietly acquired the insolvent Corizon Health from the Flacks Group sometime in November or early December 2021.[21]

---

[14] **Ex. 11**, Quest Turnaround Advisors - Crisis Interim Management.
[15] **Ex. 12**, Quest Turnaround Advisors - Plans of Reorganization (sic).
[16] *See* https://flacksgroup.com/flacks-group-takes-a-longer-term-view-on-corizon-and-reduces-its-debt/ (last visited December 13, 2022) (article from July 13, 2020, stating "Brentwood-based Corizon, which provides healthcare services to the prison industry, announced last week that it had been bought by investment firm Flacks Group").
[17] **Ex. 6**, Corizon Health's Officers and Directors from 2014-2022 (CORIZON010355-010359 at 59); *see* https://flacksgroup.com/leadership/ (last visited December 15, 2022) (listing Michael Flacks as the Chairman, Founder, and CEO; listing James Gassenheimer as the Chief Legal Officer). Michel Rypkin was also replaced as a director, though his affiliation with the Flacks Group is uknown.
[18] **Ex. 13**, screen capture of https://www.perigrove.com/ (last visited December 13, 2022) ("David founded Perigrove in 2012 as an access point for ultra-high-net-worth individuals to rare, off-market opportunities within every segment of the global healthcare sector").
[19] *Id.* ("Jay is responsible for the teams that execute on the companies projects…. He is the firm's frontline leader. Orchestrating a wide web of intertwined people, resources, and deals. Jay has been with Perigrove since its founding in 2012").
[20] https://www.zoominfo.com/p/Isaac-Lefkowitz/3069634215 (last visited Dec. 18, 2022).
[21] **Ex. 6**, Corizon Health's Officers and Directors from 2014-2022 (CORIZON010355-010359 at 59)*; see also* **Ex. 14**, Complaint in Kelly v. Corizon Health dated 3.19.22. ¶ 12 and **Ex. 15**, Corizon Health's 4.13.22 Answer in Kelly v. Corizon Health, ¶12 (Corizon Health denying allegation that it was owned and control by the Flacks Group); **Ex. 16,** YesCare's 6/1/22 Invoicing Talking Points Email, YESCARE-CHS-00000446-449 at 448 ("Under new ownership, we are, for the first time, under the ownership of a healthcare corporation").

### B. Corizon Health Develops Scheme Intended to Prevent Plaintiffs from Recovering on Corizon Health's Assets.

With a new owner, CEO, and team of directors, Tirschwell, Gefner, Goldberger, Lefkowitz, and Leitner began to develop a strategy in late 2021 to separate Corizon Health's profits from its liabilities to evade Plaintiffs' collection efforts using Texas's Business Organization Code ("TBOC"). By January 2022, the Corizon Board had developed its restructuring scheme, and as a first step, Tirschwell incorporated YesCare Corp. in Texas on January 31, 2022.[22] She listed herself as YesCare's registered agent and sole director.[23]

YesCare and CHS TX's have explicitly stated the intent behind the Corizon Health restructuring scheme was to bind Corizon Health's unsecured creditors to a company that was shed of its assets: "Faced with these [dire financial] circumstances," YesCare and CHS TX told one federal court, Corizon Health determined that the most "value-maximizing path forward would be a divisional merger under the Texas Business Organizations Code," which YesCare and CHS TX described as a "statutory framework that enables one or more corporate entities to merge into one or more surviving or new legal entities and ***re-allocate assets and liabilities among the resulting entities in a manner that is binding on creditors under Texas law.***"[24]

In an effort to insulate their restructuring strategy against anticipated claims of fraud, the Corizon Health board retained FTI Capital Advisors, LLC on February 8, 2022, just days after Tirschwell created YesCare Corp., to issue an opinion that its planned restructuring strategy was "fair" to unsecured creditors.[25] That same day, Corizon Health duplicitously continued to provide Plaintiffs assurances of forthcoming payment. Explaining Corizon Health had "new owners,"

---

[22] **Ex. 17**, YesCare Corp.'s Certificate of Formation, YESCARE-CHS-000001.
[23] **Ex. 17**, YesCare Corp.'s Certificate of Formation, YESCARE-CHS-000001; Amended Answer ¶ 91 ("Corizon further admits that Sara Tirschwell is listed as the sole director for YesCare on its…Certificate of Formation").
[24] **Ex. 4**, Kelly v. Corizon Health Inc., et al, Case No. 222-cv-10589, ECF No. 32, ECF p. 11-12.
[25] **Ex. 18**, Presentation to Corizon Health, Inc on Fairness Analysis Pertaining to Proposed Transaction, YESCARE-CHS-00000383-405 at 390.

Corizon Health told Plaintiffs it was "going through and pushing out payments," and that while it could not give Plaintiffs an exact time frame for payment, its "new owners" were telling Corizon Health to tell people to "allow 30 more days for clean up."[26]

Instead of paying Plaintiffs within those 30 days, however, Corizon Health advanced their restructuring scheme: Corizon Health signed Certificates of Conversion, seeking to convert Corizon Health, Inc. and its parent company, Valitas Health Services, Inc., from Delaware corporations to Texas corporations, on February 25, 2022.[27] Though signed, Corizon Health did not file these documents for two months—until Plaintiffs threatened suit.

### C. Corizon Health Accelerates Restructuring After Plaintiffs Threaten to Sue in Seven Days.

After months of failed attempts to collect millions of dollars from Corizon Health, Plaintiffs sent Corizon Health a Demand for Payment of Amounts Due and Owing through undersigned counsel on **April 19, 2022**.[28] Corizon Health admits receiving this letter. [29] The letter expressly warns: "If the $12 million is not paid **within seven business days**, Hospital intends to enforce its contractual rights in court."[30]

Faced with impending litigation, Corizon Health pushed its plan forward. Five business days after Plaintiffs' demand letter, on **April 26, 2022**, Sara Tirschwell published a standalone opinion piece on The Well News website, in which she, for the first time, soft-launched YesCare ("Among our patient population at Corizon, soon to be YesCare,") and twice described herself as "CEO of Corizon, soon to be YesCare."[31]

[26] **Ex. 19**, 2/8/22 Email Re "CORIZON Info," Pltf00004169.
[27] **Ex. 20**, Corizon Health, Inc. Certificate of Conversion; **Ex. 21**, Valitas Health Services, Inc Certificate of Conversion.
[28] **Ex. 22**, 4/19/22 Demand for Payment of Amounts Due and Owing.
[29] Amended Answer ¶ 85.
[30] **Ex. 22**, 4/19/22 Demand for Payment of Amounts Due and Owing (emphasis added).
[31] **Ex. 7**, Sara Tirschwell Marketing Op-Ed (Sara Tirschwell is the chief executive officer of Corizon, soon to be YesCare").

Exactly seven business days after Plaintiffs' demand letter, on **April 28, 2022**, Corizon Health filed the Certificates of Conversion and Certificates of Formation with the Texas Secretary of State that had been signed in February.[32]

But Corizon Health faced an obstacle—it needed the fairness opinion from FTI Capital Advisors, LLC before proceeding with the remainder of the restructuring plan. It could not claim to have relied on the fairness opinion, purportedly rendered for the "sole" purpose of "assist[ing] [the Board] with its decision making in connection with the Proposed Transaction,"[33] if that opinion was provided *after* the restructuring was complete. The Corizon Health board knew it needed the fairness opinion to provide cover for questions Plaintiffs (and other unsecured creditors) would raise about the legitimacy of the restructuring. So, Corizon Health worked through the weekend.

### D. Corizon Health Works Through the Weekend to Finish its Restructuring Scheme Before Plaintiffs File Suit.

On Saturday, April 30, 2022, White & Case LLP , also YesCare and CHS TX's counsel in this case, sent Corizon Health a memorandum (the "White & Case Memorandum") purporting to "summarize[] the Existing Secured Debt and the collateral securing the obligations thereunder."[34] Corizon Health rushed this letter to FTI Capital Advisors, LLC. *Id.*

At 8:16am the next morning, Tirschwell published another guest opinion, this time on an Alabama news website.[35] Titled "Alabama must raise standard of mental healthcare to support

---

[32] **Ex. 20**, Corizon Health, Inc. Certificate of Conversion and Certificate of Formation; **Ex. 21**, Valitas Health Services, Inc Certificate of Conversion and Certificate of Formation. These document lists Corizon Health's directors as Sara Tirschwell, Abe Goldberger, David Gefner, and Isaac Lefkowitz. *Id.*: *see also* Amended Answer ¶ 91 ("Corizon admits that Sara Tirschwell is listed [as] a director on Corizon Health's…Certificate of Formation along with Abe Goldberger, David Gefner, and Isaac Lefkowitz").
[33] **Ex. 18**, Presentation to Corizon Health, Inc on Fairness Analysis Pertaining to Proposed Transaction, YESCARE-CHS-00000383 at 387.
[34] **Ex. 23**, FTI Capital Advisor's Fairness Opinion - YESCARE-CHS-00000018-24 at 20.
[35] **Ex. 24**, Guest opinion - Alabama must raise standard of mental healthcare to support released inmates - al.com.

released inmates," Tirschwell again soft-launched the YesCare name. Under her picture, she states "Sara Tirschwell is the CEO of YesCare (formerly Corizon Health)." Next to her name, she titles herself "CEO of YesCare." She also name-drops YesCare in the article, stating "[A]t YesCare facilities across the country, we are…" despite no YesCare facilities existing—yet. She likewise states, "[a]t YesCare, we work with people during reentry…" despite YesCare having no employees—yet. She concludes the article with another mention of her title: "Sara Tirschwell is CEO of YesCare (formerly Corizon Health)."

That same day, on Sunday May 1, 2022, Corizon Health sent FTI Capital Advisors, LLC a "Management Representation Letter," purportedly containing "certain representations, including but not limited to representations as to historical financial statements, financial projections and their underlying assumptions, the pro forma schedule of assets and liabilities of each Company and of RemainCo immediately before and after giving effect to the consummation of the transaction."[36]

That same Sunday, May 1, 2022, FTI Capital Advisors, LLC issued its fairness opinion. With the White & Case Memorandum and the Management Representation Letter newly in hand, FTI Capital Advisors purportedly relied on those documents to generate, within hours, its written "Fairness Opinion," and a slide-deck presentation.[37] That same day, FTI Capital Advisors, LLC also purportedly presented their findings during a meeting of the Corizon Board. This opinion cautioned that it was "for the benefit of the Board to assist with its decision making in connection with the Proposed Transaction," and that it was "intended for the sole use of the addressee, solely

[36] **Ex. 25**, Management Representation Letter, YESCARE-CHS-422-439.
[37] **Ex. 18**, Presentation to Corizon Health, Inc on Fairness Analysis Pertaining to Proposed Transaction, YESCARE-CHS-00000383; **Ex. 23**, FTI Capital Advisor's Fairness Opinion, YESCARE-CHS-000018-24.

for the purpose stated, and may not be relied upon by any other person or for any other purpose without FTICA's prior written consent."[38]

With the pretextual fairness opinion formally secured, Corizon Health executed the remainder of its scheme. That same Sunday, May 1, 2022 (and three months after its incorporation) YesCare Corp. formally adopted bylaws and appointed officers through "Unanimous Written Consent of the Board of Directors of YesCare Corp."[39] YesCare Corp.'s board was only one person—Tirschwell.[40] She appointed herself as "President and Secretary," and appointed no other officers or directors.[41]

Then, same day, Corizon Health executed the Agreement and Plan of Combination Merger.[42] This document, dated Sunday, May 1, 2022, detailed that Corizon Health, Inc. would survive a merger of Corizon Health, Inc., Valitas Health Services, Inc., Corizon, LLC, and Corizon Health of New Jersey, LLC, and would "continue its existence as a corporation organized under the laws of the State of Texas."[43] J. Scott King signed the Agreement and Plan of Combination Merger on behalf of all four entities.[44] The document stated the combination merger would be effectuated as provided in the plan "through the filing of a certificate of merger," and that the merger would be effective "on the date and at the time set forth in the Certificate of Merger."[45]

---

[38] **Ex. 18**, Presentation to Corizon Health, Inc on Fairness Analysis Pertaining to Proposed Transaction, YESCARE-CHS-00000383. The presentation also assumed that "there is no pending or threatened litigation that would have a material adverse effect on the Company." It is unclear the extent to which Corizon Health disclosed its pending litigation.
[39] **Ex. 26**, 5/1/22 Unanimous Written Consent of the Board of YesCare, YESCARE-CHS-0000006-17.
[40] *Id.*
[41] *Id.*
[42] **Ex. 27**, Agreement and Plan of Combination Merger, YESCARE-CHS-00000370-382.
[43] *Id.*
[44] *Id.*
[45] *Id.*

Finally, that same day, Corizon Health executed the Agreement and Plan of Divisional Merger.[46] This 167-page document, also dated on Sunday, May 1, 2022, details the "terms and conditions" of the divisional merger, which split Corizon Health, Inc.'s assets and liabilities into two separate entities: Corizon Health, Inc., and newly-formed CHS TX, Inc.[47] The document stated the divisional merger would be effective "on the date and at the time set forth in the Certificate of Merger."[48]

The very next business day, Monday May 2, 2022, J. Scott King signed the Certificate of Merger–Combination Merger on behalf of all four merging entities.[49] Also on May 2, 2022, J. Scott King signed the Certificate of Merger–Divisional Merger on behalf of Corizon Health, Inc., which split it into Corizon Health and CHS TX.[50] That same day, Sara Tirschwell signed the Certificate of Formation for CHS TX, Inc.[51]

On Tuesday, May 3, 2022, the Certificate of Merger–Combination was filed with the Texas Secretary of State. [52] So was the Certificate of Merger–Divisional Merger.[53] So was the Certificate of Formation of CHS TX, Inc.[54]

### E. With Corizon Health's Assets Now with CHS TX, Defendants Maneuver to Conceal Who Owns Them.

As a result of the divisional merger, Corizon Health, Inc. and CHS TX were owned by the same company: Valitas Intermediate Holdings, Inc.[55] But to liability-proof Corizon Health's assets

---

[46] **Ex. 28**, Agreement and Plan of Divisional Merger, YESCARE-CHS-0000203-369 at 205.
[47] *Id.*
[48] *Id.* at 204.
[49] **Ex. 27**, Agreement and Plan of Combination Merger, YESCARE-CHS-00000370-382.
[50] **Ex. 28**, Agreement and Plan of Divisional Merger, YESCARE-CHS-0000203-369 at 353.
[51] **Ex. 28**, Agreement and Plan of Divisional Merger, YESCARE-CHS-0000203-369 at 358.
[52] **Ex. 27**, Agreement and Plan of Combination Merger, YESCARE-CHS-00000370-382.
[53] **Ex. 28**, Agreement and Plan of Divisional Merger, YESCARE-CHS-0000203-369 at 349.
[54] **Ex. 28**, Agreement and Plan of Divisional Merger, YESCARE-CHS-0000203-369 at 356.
[55] **Ex. 28**, Agreement and Plan of Divisional Merger, YESCARE-CHS-00000203-369 at 205, § 8(a) ("100% of the capital stock of the Company shall be converted into: (i) 100% of the capital stock of RemainCo, which shall be owned by Valitas Holdings, and (ii) 100% of the capital stock of NewCo, which shall be owned by Valitas Holdings").

from its unsecured creditors and create the illusion of separate ownership, Corizon Health's plan from its inception was to place those assets with the original entity Tirschwell created, YesCare Corp.[56] So, on May 5, 2022, YesCare Corp. (through Tirschwell), purchased 100% of CHS TX's stock from Valitas Intermediate Holdings, Inc.[57] The signatory for Valitas Intermediate Holdings, Inc. was Isaac Lefkowitz—Corizon Health's director.[58] As a result of this transaction, CHS TX became a wholly-owned subsidiary of YesCare Corp.[59] Importantly, the sale of CHS TX from Valitas Intermediate Holdings, Inc. to YesCare Corp. was expressly "***not***" subject to FTI Capital Advisors' fairness opinion.[60]

In YesCare and CHS TX's Motion to dismiss, they claim that YesCare Corp.'s acquisition of CHS TX "completed the 2022 Corporate Restructuring." MTD at p. 7. Not so—Defendants had one, final step planned.

### F. Corizon Health VP Gefner Buys YesCare's Equity for Ninety-Five Dollars.

That same day she purchased CHS TX, on May 5, 2022, Sara Tirschwell sold 95% of YesCare Corp.'s equity for $95.00 to YesCare Holdings, LLC. YesCare Holdings, LLC is a New York limited liability company organized by Corizon Health director and Perigrove founder David

---

[56] *See, e.g.,* **Ex. 7**, Sarah Tirschwell Marketing Op-Ed (Tirschwell representing on April 26 that Corizon was "soon to be YesCare").
[57] **Ex. 29**, Equity Purchase and Sale Agreement Between Valitas Intermediate Holdings and YesCare Corp., YESCARE-CHS-00000199-202.
[58] *Id.*
[59] *Id.*; Amended Answer ¶ 60(d) ("Corizon further admits that CHS TX, Inc. is a wholly-owned subsidiary of YesCare….on May 5, 2022, YesCare purchased the equity of CHS TX, Inc."). YesCare Corp.'s sole director on its corporate documents is Sara Tirschwell (President, CEO, and Secretary). *See* **Ex. 26**, Unanimous Written Consent of the Board of YesCare, YESCARE-CHS-0000006. However, YesCare's website boasts, and Corizon Health's answer also represents, that Scott King is YesCare's Chief Legal Officer, Jeff Sholey is its Chief Financial Officer, and Greg Ladele is its Chief Medical Officer—an identical board to CHS TX. https://www.yescarecorp.com/about (last visited Dec. 15, 2022); *see also* Corizon Health's Amended Answer ¶ 4.
[60] **Ex. 18**, Presentation to Corizon Health, Inc on Fairness Analysis Pertaining to Proposed Transaction, at 391 ("Upon completion of the Proposed Transaction, following the divisional merger transaction, NewCo will be sold to YesCare Corp. This step is ***not*** subject to our Opinion") (emphasis in original).

Gefner on May 11, 2022.[61] YesCare Holdings, LLC's address is 7 World Trade Center 46th Fl., New York—the same address as Perigrove.[62] The equity purchase was signed for YesCare Holdings, LLC by an "Authorized Signatory," attorney Zalman Schapiro—Perigrove's general counsel.[63]

These facts imply fraud. David Gefner is a Corizon Health director and its purported owner; he is also YesCare Holdings, LLC's organizer and purported owner of 95% of YesCare's equity. If Corizon Health's statement in its Answer that Corizon Health "**denies that David Gefner…retain[s] ownership interests in YesCare**," is to be believed, what other undisclosed transactions have since taken place?[64]

In any case, it is clear that the restructuring was not an arms-length transaction in which Corizon Health sold substantially all its assets to a third party for their fair-market value. This was, plainly, an insider transaction in which Corizon Health's owners placed Corizon Health's assets into new entities that they newly formed and control, for the purpose of frustrating creditors, like Plaintiffs, in their efforts to collect money owed from Corizon Health.

### G. YesCare Guts Corizon and Absorbs its Entire Business, Minus Liabilities, in the Restructuring.

As part of the divisional merger, the Corizon Health board split itself between Corizon Health and CHS TX. Sara Tirschwell became the Chair, CEO, and President of CHS TX[65] and Goldberger, Gefner, and Lefkowitz remained directors of Corizon Health, and became Corizon

---

[61] **Ex. 30**, Equity Purchase and Sale Agreement Between YesCare Corp. and YesCare Holdings, LLC, YESCARE-CHS-000000191-93; **Ex. 31**, YesCare Holdings, LLC's Articles of Organization' **Ex. 32**, YesCare Holdings, LLC Entity Information from New York's Department of State Division of Corporations.

[62] *Id.*; **Ex. 13**, Screen capture of https://www.perigrove.com/ (last visited December 13, 2022) (listing 7 World Trade Center 46th Fl. as its corporate office).

[63] **Ex. 30**, Equity Purchase and Sale Agreement Between YesCare Corp. and YesCare Holdings, LLC, YESCARE-CHS-000000191-93; **Ex. 13**, Screen capture of https://www.perigrove.com/ (last visited December 13, 2022) (listing Zalman Schapiro as "General Counsel").

[64] Amended Answer, ¶ 4.

[65] **Ex. 33**. 5/5/22 Unanimous Written Consent of the Board of CHS TX, YESCARE-CHS-0000036-54.

Health's sole officers: CEO, Senior VP, and Senior VP, respectively.[66] CHS TX then absorbed the remainder of Corizon Health's officers: Scott King became CHS TX's Chief Legal Officer and Secretary, Jeff Sholey became its Chief Financial Officer, and Greg Ladele became its Chief Medical Officer.[67]

In the restructuring, Corizon Health transferred nearly all of its assets to CHS TX, Inc.[68] As a result of Corizon Health's restructuring scheme, CHS TX (and consequently, YesCare) received all the assets, active contracts, customers, and employees of pre-division Corizon Health, including, among other things, "[a]ll cash in the Company's bank accounts, less $1,000,000 to be maintained in the account of Corizon, LLC," "[a]ll bank accounts of the Company," with a few exceptions, "all trademarks, tradenames, domain names, trade secrets, and other intellectual property relating to the Company," "[a]ll receivable and other current assets of the Company," and "[a]ny owned real estate asset of the Company."[69]

Corizon Health, on the other hand, was gutted: the restructuring scheme left it with no active contracts, no customers, and no meaningful assets; all while bearing the liabilities for all Corizon Health's terminated or expired contracts (a list that spans over 98 pages), including Plaintiffs' Agreement; over 500 active lawsuits and claims; and a mere $1,000,000 in remaining assets to cover those liabilities.[70]

---

[66] **Ex. 28**, Agreement and Plan of Divisional Merger, YESCARE-CHS-0000203-369 at 205.
[67] **Ex. 33**, 5/5/22 Unanimous Written Consent of the Board of CHS TX, YESCARE-CHS-0000036-54 (erroneously titling Ladele as the chief "marketing" officer).
[68] **Ex. 28**, Agreement and Plan of Divisional Merger, YESCARE-CHS-00000203-369 at p. 2 § 3 ("**Allocation of Assets**"); § 4 ("**Allocation of Liabilities**"); p. 0000212-223, Schedule 3.01(a) ("NEWCO ASSETS"); p. 0000224-325, Schedule 3.01(b) ("REMAINCO ASSETS"); p. 0000326-331, Schedule 4.01(a) ("NEWCO LIABILITIES"); p. 0000332-347, Schedule 4.01(b) ("REMAINCO LIABILITIES").
[69] **Ex. 28**, Agreement and Plan of Divisional Merger, YESCARE-CHS-00000203-369 at 212 ("NEWCO ASSETS").
[70] **Ex. 28**, Agreement and Plan of Divisional Merger, YESCARE-CHS-00000203-369 at 224 ("REMAINCO ASSETS"); *Id.* at Schedule 4.01(b).

Apparently anticipating the consequences of its abusive structuring maneuvers, the Corizon Health board likewise allocated to Corizon Health:

> Any liabilities, costs, expenses, or losses arising from, related to, or in connection with any person's or entity's lawsuits or claims in connection with the Merger or related transactions, including any alleged breach of duties by the board or managers of any Combination Merger Entity.

Ex, 28, Agreement and Plan of Divisional Merger, REMAINCO LIABILITIES ¶ 4.

### H. Free from Corizon Health's Liabilities, YesCare and CHS TX Hold Themselves Out as Corizon Health With a "Name Change."

After the restructuring was complete, YesCare, CHS TX, and Corizon Health made the restructuring known to its clients and employees. On May 12, 2022, Corizon Health Chief of Staff Dana Bell emailed Brandon De Julius, Mary Silva, Sara Tirschwell, and Steve Tomlin regarding the "YesCare Announcement."[71] Ms. Bell stated:

> We are going live with the YesCare announcement on Friday, 5/13 to staff and clients with a formal press release on Monday, 5/16. Sara will host a town hall meeting on 5/13 at 2:30 pm EDT for all employees. We will need to communicate the YesCare information to our clients ahead of the town hall. Each VPO or whomever has the best relationship with the client should communicate the information. We will distribute a client Q&A shortly for site leadership to use as a guide as well as an email draft that should be sent by regional leadership, or whomever you decide, on behalf of Sara. It should not come from Sara directly in case the number of replies from our clients becomes burdensome. This will protect Sara from inadvertently being deemed non-responsive. Attached is a list of client contacts …. I will forward the Q&A and client email draft as soon as I have the revised copies from the PR firm.[72]

The draft email from Ms. Tirschwell states: "**<u>YesCare Announcement – Client Email</u>**" and "*Subject Line: Excited to Announce that Corizon Health is now YesCare*."[73] Ms. Tirschwell's announcement states, among other things, "Monday morning, we will be announcing that the dedicated employees of Corizon Health have teamed up with a healthcare conglomerate to create

[71] **Ex. 34**, "YesCare Announcement" correspondence, YESCARE-CHS-0000484.
[72] *Id.*
[73] **Ex. 35**, YesCare Announcement- Client Email, YESCARE-CHS-0000486.

YesCare…. In the immediate term, this will not impact our service to in any way….Please join us in our excitement for this next stage of innovative and compassionate care, under the new YesCare name. I invite you to visit our new website….”[74] The document is signed by “Sara Tirschwell, Chief Executive Officer, YesCare.”[75]

In the Client Q&A, YesCare answers questions like “**Why is Corizon becoming YesCare?**”[76] YesCare confirms that YesCare's federal ID number is the same as Corizon Health's, and that “no changes [will] be made to the existing agreement.”[77] In response to the question “**Will this change who we work with day-to-day?**” YesCare states “As you know, we have already made organizational changes. **We have a new name**; we have higher expectations, and we intend to only increase the support and responsiveness of your company contacts.”[78] In response to the question, “**Are any of the services you provide at our facility changing?**” YesCare responds, “No, the current services we provide at your facility will continue.”[79]

On May 13, 2022, Karen Davies emailed Chief Esmond of the Myokaloosa government stating “I do want to share the exciting news about our new name YesCare. Below is the announcement from our CEO, Sara Tirschwell, as well as a list of questions and answers.”[80]

On May 13, 2022, Vandelyn Phillips, Corizon Health Vice President of Operations, emailed Bruce Herdman for the Philadelphia government with the subject: “Fw: TIME SENSITIVE/ACTION REQUIRED – Client Communication Re: YesCare Rebranding.”[81] Phillips

---

[74] *Id.*
[75] *Id.*
[76] **Ex. 36**, YesCare Client Q&A - YESCARE-CHS-00000463 (emphasis added).
[77] *Id.*
[78] *Id.* (emphasis added).
[79] *Id.*
[80] **Ex. 37**, Davies to Esmond May 16, 2022, YESCARE-CHS-00000479-481 at 480.
[81] **Ex. 38**, Phillips to Herdman May 13, 2022, YESCARE-CHS-0000440.

said, "As discussed we are excited to announce our rebranding please find attached our Client Q&A."[82] Phillips signed the email with the Corizon Health email signature.[83]

On May 13, 2022, Maria D. O'Neal, Corizon Health VP of Operations, emailed Bryan Baker from the Donaan County government with the subject: "Excited to Announce that Corizon Health is now YesCare."[84] Duran said, "We are excited to share our announcement of our new company name YesCare. Please find attached letter from our CEO and Q&A."[85] Ms. O'Neal's email signature line states, beneath her name, "VP of Operations, Corizon Health aka YesCare."[86]

On May 13, 2022, Ms. O'Neal also sent an email to Rosanne Otero and Greg Richardson with the Bernalillo County government with the subject line "Fwd: TIME SENSITIVE/Corizon health Rebranding to YesCare."[87] Ms. O'Neal said, "Per my voicemail, we are excited to share our announcement of our new company name YesCare."[88] Ms. O'Neal's email signature line states, beneath her name, "VP of Operations, Corizon Health aka YesCare."[89] Ms. O'Neal sent substantially the same email to various other clients that same day.[90]

On May 13, 2022 at 2:21 pm, before the 2:30 all-employee town hall, Lawanda Mckinnon sent an "all employee announcement" of the name change. She emailed "Rest – Company All at RL-CompanyAll@yescarecorp.com," CC'ing Ms. Tirschwell and Ms. Bell, with the following message "sent on behalf of Sara Tirschwell," stating, among other things:

---

[82] *Id.*
[83] *Id.*
[84] **Ex. 39**, O'Neal to Baker May 13, 2022, YESCARE-CHS-00000442.
[85] *Id.*
[86] *Id.*
[87] **Ex. 40**, O'Neal to Otero May 13, 2022, YESCARE-CHS-00000458.
[88] *Id.*
[89] *Id.*
[90] **Ex. 41**, O'Neal to Clemons-Abdullah May 13, 2022, YESCARE-CHS-00000461; **Ex. 42**, O'Neal to Phelps May 13, 2022, YESCARE-CHS-0000467 ("As you are very well by now that Corizon was in the process of rebranding. We are excited to share its official now. Effective today, we are announcing our new company name YesCare."); **Ex. 43**, O'Neal to Farmer May 13, 2022, YESCARE-CHS-00000470 ("As I shar[e]d with you during the MAC meeting, we are excited to share our announcement of our new company name YesCare").

- "As of Monday, May 16, our dedicated team at Corizon Health will become YesCare;"
- "I'm thrilled to announce several newly promoted staff who will join me on the senior management team to help lead YesCare in its next chapter;"
- "Brandon De Julius…. has been with YesCare for over 12 years;"
- "I'm excited for our next stage of curated and quality care, under the YesCare name."[91]

Attached to the all-employee announcement was a "YesCare Employee Q&A," which states, among other things:

- **Why is Corizon becoming YesCare? Is this a rebrand announcement?** This is not a rebrand announcement. YesCare is a newly formed entity and will be operating Corizon's existing business going forward;
- **"Why are we making this change?** After digging in, we decided that this was the best path forward – <u>to make a fresh start</u>…. <u>This change puts us on stronger financial footing and broadens our access to resources that we have never had</u> (underlined added);
- **Will my benefits change?** Current benefits will continue;
- **Will there be a new management structure?** Outside of the organizational changes we have already implemented, the management structure will remain the same at this time;
- **Will my email address be changing?** Yes, we will move all employees over to YesCare emails.[92]

On May 16, 2022, Corizon Health admits that BusinessWire published a press release titled "Leading Healthcare Group forms YesCare, Debuting New Vision and Leadership."[93] Corizon Health admits that this press release "introduced YesCare management," and that "the individuals listed in the press release…previously held positions at Corizon."[94]

Seven minutes before the announcement was published on May 16, 2022, at 8:00am, a secured creditor filed two UCC-1s in Texas, covering YesCare and CHS TX, and asserting security interests in "all assets of debtor, whether now owned or hereafter acquired" for both entities.[95]

---

[91] **Ex. 44**, Mckinnon to Company May 13, 2022, YESCARE-CHS-00000489-90.
[92] **Ex. 45**, YesCare Employee Q&A, YESCARE-CHS-00000493.
[93] Amended Answer ¶ 65.
[94] *Id.*
[95] Amended Answer ¶ 66 ("Corizon admits that a UCC-1 was filed in Texas against YesCare Corp. and CHS TX, Inc. on May 16, 2022 and note that those documents speak for themselves").

On May 19, 2022 and May 20, 2022, the same secured creditor filed UCC-3s in Missouri and New Jersey, releasing its previously-filed liens on the assets of Corizon Health.[96] These released liens had been in place since April of 2017, and had covered all assets of the respective debtors.[97]

Also on May 16, 2022, Sara Tirschwell tweeted, "Today marks a new era in correctional healthcare as Corizon Health officially becomes @YesCare! I'm proud of the work our team has done during this transition into a better model of care."[98]

On June 1, 2022, Corizon admits that it filed a "Certificate of Amendment" pursuant to which Corizon Health changed its name to Tehum Care Services, Inc., for which Isaac Lefkowitz was the signatory.[99]

On June 1, 2022, Brandon De Julius, EVP and Chief Administrative Officer for YesCare sent an email titled "Invoicing Talking Points" to members of the newly-YesCare leadership team, including V. Phillips, S. Koch, K. Davies, and E. Frias.[100] De Julius states, "As a follow up to our conversation yesterday, below are the bullet points to discuss with your clients. Please follow-up with an email with the following information, and please cc me." De Julius then lists the following talking points:

As a follow up to our announcement on our name change:

- YesCare acquired all the active business of Corizon. As a part of this acquisition, your contract with Corizon is now vested with CHS TX, LLC ("CHS"), a wholly owned subsidiary of YesCare.
- There are no operational changes related to this transaction. Staff, P&P, contract structures, etc. will all remain the same.

---

[96] Plaintiffs' First Amended Petition ¶ 67; Amended Answer ¶ 67 ("Corizon admits the allegations contained in Paragraph 67 of the First Amended Petition").
[97] *Id.*
[98] **Ex. 46**, Sara Tirschwell (@STirschwell) Twitter.
[99] Amended Answer ¶ 68 ("Corizon admits that on June 1, 2022, it filed a 'Certificate of Amendment' pursuant to which Corizon changed its name to Tehum Care Services, Inc. Corizon further admits that Isaac Lefkowitz was the signatory for this filing").
[100] **Ex. 16**, YesCare's 6.1.22 Invoicing Talking Points Email - YESCARE-CHS-00000446-449 at 448.

- Under our new ownership, we are, for the first time, under the ownership of a healthcare corporation- a structure unique in the industry. This affords our re-branded organization with
  - ownership that understands the delivery of healthcare;
  - backing of a large healthcare conglomerate with multitudes of resources for us to leverage; and
  - strong financial and leadership stability.
- To ensure that payments under the contract continue without interruption, we will be providing you with CHS' FEIN (tax id number) and a W-9 form as part of our next invoice. There will be no change in bank account information at this time, however, that may be updated in the future.
- Because CHS was split from Corizon through a merger transaction, your contract has not been assigned or transferred and no other action with respect to the contract is necessary.
- Any future contracts amendments we will want to reflect that CHS is the successor contracting entity because of the merger transaction.
- The full force of our corporate office remains at your service for any additional information or clarification that you may need.[101]

Defendants' representations to its clients and employees that it simply underwent a "name change," is consistent with the fact that YesCare and CHS TX's operations are, in fact, the same as Corizon Health's.

### I. YesCare and CHS TX Take Over Corizon Health's Headquarters and Business Operations.

Both YesCare and CHS TX's principal place of business address is 205 Powell Place, Suite 104, Brentwood, TN.[102] Corizon Health, Inc.'s principal place of business address is (or was) 205 Powell Place, Suite 104, Brentwood, TN.[103]

Corizon Health "ceased its ordinary business operations following the 2022 Divisional Merger."[104] Corizon Health is "no longer an active entity providing correctional healthcare."[105]

---

[101] *Id.*
[102] **Ex. 47**, Certificate of Merger, Corizon Health and CHS TX, YESCARE-CHS-000025-32 at 28; **Ex. 48**, Contact YesCare Webpage.
[103] **Ex. 1**, Corizon Health's Responses to Pls' Second RFAs No. 28 ("Corizon admits that 205 Powell Place, Suite 104, Brentwood, TN 37207 was previously its corporate headquarters").
[104] **Ex. 1**, Corizon Health's Response to Pls' 2nd RFAs No. 34.
[105] Amended Answer ¶ 15.

Because it has apparently ceased doing business, Corizon Health now denies that it has any headquarters at all.[106]

YesCare and CHS TX have, as a result of the merger, continued on with Corizon Health's same business (minus the liabilities). Indeed, CHS TX "receive[d] all assets used in, or necessary to, the conduct of the continuing business of the Company…or the service of any active and current customer contracts."[107] Accordingly, YesCare's website boasts of "decades of experience providing healthcare in jails and prisons," and despite being incorporated in January, it claims it has been "serving our patients for over 40+ years," and "[o]perating across the US in over 125+ states," adopting Corizon Health's corporate experience as its own.[108]

Corizon Health admits that there are "commonalities" between "YesCare's social media and marketing content and Corizon's prior social media and marketing content."[109] Corizon admits "that the LinkedIn icon on YesCare's website takes users to Corizon's LinkedIn."[110] And until sometime in November 2022, YesCare's website stated on the front page: "*YesCare acquired all of the employees and active contracts of Corizon Health in early 2022."[111] After Plaintiffs joined YesCare and CHS TX in this suit, this representation was removed.[112] YesCare and Corizon Health have the same federal identification number.[113]

YesCare and CHS TX also continue to hold themselves out as the same entity. For example, on June 16, 2022, CHS TX registered to do business in Missouri, and on November 29, 2022, J.

---

[106] Amended Answer ¶ 87.
[107] **Ex. 25**, Management Representation Letter, at p. 2.
[108] Plaintiffs' First Amended Petition ¶ 106; Amended Answer ¶ 106 ("Corizon admits that the statements contained in Paragraph 106 of the First Amended Petition appear on YesCare's website").
[109] Amended Answer ¶ 107.
[110] Amended Answer ¶ 107.
[111] **Ex. 49**, 9.16.22 screen capture of YesCare's Homepage at p. 3, https://www.yescarecorp.com.
[112] **Ex. 50**, 12.17.22 screen capture of YesCare's Homepage at p. 3, https://www.yescarecorp.com.
[113] **Ex. 1**, Corizon Health's Response to Pls' 2nd RFAs No. 30 ("Corizon admits that its federal identification number is the same as YesCare's federal identification number").

Scott King, on behalf of CHS TX, filed an "Application for Fictitious Name Registration" in Missouri, stating CHS TX was "doing business" under the YesCare name at 205 Powell Place, Suite 104 in Brentwood, TN.[114]

### J. YesCare and CHS Take Over Corizon Health's Officers, Directors, Managers, and Employees.

CHS TX's organizer is Sara Tirschwell.[115] YesCare's organizer is also Sara Tirschwell.[116] Corizon Health, Inc.'s organizer was Nicholas Geohegan, an associate in White & Case LLP's Global Mergers and Acquisitions Practice Group, Corizon Health's attorneys who advised them on the restructuring.[117]

Pre-Merger, Corizon Health's directors were Sara Tirschwell (CEO), Abe Goldeberger, David Gefner (Chairman), and Isaac Lefkowitz.[118] Corizon Health's officers included Scott King (EVP and Chief Legal Officer), Jeffrey Sholey (Chief Financial Officer), and Greg Ladele (Chief Medical Officer).[119]

Post-Merger, Gefner, Lefkowitz, and Goldberger stayed with Corizon Health—and the remainder of the officers/directors went to CHS TX/YesCare:

- Corizon Health's directors are Abe Goldberger (Chair and CEO), David Gefner (Senior Vice President), and Isaac Lefkowitz (Senior Vice President).[120]
- CHS TX's directors are Sara Tirschwell (President, CEO, and Chair), Scott King (Chief Legal Officer and Secretary), Jeff Sholey (Chief Financial Officer), and Greg Ladele (Chief Medical Officer);[121]

---

[114]**Ex. 51**, CHS TX Registration of Fictitious Name (MO).
[115] **Ex. 47**, Certificate of Merger, Corizon Health and CHS TX, at 32; Amended Answer ¶ 84 ("Corizon Health admits that Sara Tirschwell was the organizer of YesCare").
[116] **Ex. 17**, YesCare Corp.'s Certificate of Formation - YESCARE-CHS-00000001-5 at 3-5.
[117] **Ex. 20**, Corizon Health Certificate of Conversion and Certificate of Formation, at p. 3; *see also* **Ex. 18**, Presentation to Corizon Health, Inc. on Fairness Analysis Pertaining to Proposed Transaction at p. 394 (representing FTICA reviewed a memorandum from White & Case LLP to Corizon Health summarizing Corizon Health's indebtedness).
[118] **Ex. 20**, Corizon Health Certificate of Conversion and Certificate of Formation.
[119] **Ex. 52**, Corizon Health, Inc.'s April 19, 2022 Foreign Profit Corporation Annual Report.
[120] **Ex. 28**, Agreement and Plan of Divisional Merger, YESCARE-CHS-0000203-369 at 204.
[121] **Ex. 47**, Certificate of Merger, Corizon Health and CHS TX, YESCARE-CHS-000025-32 at 30-32; **Ex. 33**, 5.5.22 Unanimous Written Consent of the Board of CHS TX, YESCARE-CHS-0000036-54 at 37.

- YesCare's sole director on its corporate documents is Sara Tirschwell (President, CEO, and Secretary).[122] However, YesCare's website boasts, and Corizon Health's answer also represents, that Scott King is YesCare's Chief Legal Officer, Jeff Sholey is its Chief Financial Officer, and Greg Ladele is its Chief Medical Officer—an identical board to CHS TX.[123]

So did the remainder of Corizon Health's management team:

- Jennifer Finger is current in-house counsel for YesCare, and previously in-house counsel for Corizon Health.[124]
- Joseph Pastor is the Chief Psychiatric Officer for YesCare.[125] Immediately before the restructuring Pastor held the same role for Corizon Health.[126]
- Mary Silva is the Chief Clinical Officer for YesCare.[127] Immediately before the restructuring, Silva held the same role with Corizon Health.[128]
- Stacie Koch is the Vice President of Operations—Wyoming for YesCare.[129] Immediately before the restructuring Koch held the same role with Corizon Health.[130]
- Steve Tomlin is the Senior Vice President of Reentry and Community Partnerships for YesCare.[131] Immediately before the restructuring, Tomlin held the same role with Corizon Health.[132]
- Vandelyn Phillips is the Vice President of Operations—City of Philadelphia for YesCare.[133] Immediately before the restructuring, Phillips held the same role with Corizon Health.[134]
- Tasha McMillan is the Vice President of Operations—Maryland for YesCare.[135] Immediately before the restructuring, McMillan held the same role with Corizon Health.[136]
- Michael Middleton is the Chief Information Officer for YesCare.[137] Immediately before the restructuring, Middleton was the Chief Information Officer for Corizon Health.[138]

---

[122] **Ex. 26**, 5.1.22 Unanimous Written Consent of the Board of YesCare, YESCARE-CHS-000006-17 at 6.
[123] **Ex. 53**, Screen capture of httpswww.yescarecorp.com's About page, www.yescarecorp.com/about (last visited December 15, 2022); *see also* Amended Answer ¶ 4 ("Corizon moreover admits that YesCare's executive team includes Sara Tirschwell, Jeff Sholey, J. Scott King, and Gregory Ladele").
[124] Amended Answer ¶ 112.
[125] Amended Answer ¶ 99.
[126] **Ex. 54**, Joseph M. Pastor bio page, www.corizonhealth.com (as of Sept. 16, 2022).
[127] Amended Answer ¶ 100.
[128] **Ex. 55**, Mary Silva bio page, www.corizonhealth.com (as of Sept. 16, 2022).
[129] Amended Answer ¶ 101.
[130] **Ex. 56**, Stacie Koch bio page, www.corizonhealth.com (as of Sept. 16, 2022).
[131] Amended Answer ¶ 97.
[132] **Ex. 57**, Steven Tomlin bio page, www.corizonhealth.com (as of Sept. 16, 2022).
[133] Amended Answer ¶ 103.
[134] **Ex. 58**, Vandelyn Phillips bio page, www.corizonhealth.com (as of Sept. 16, 2022).
[135] Amended Answer ¶ 102.
[136] **Ex. 59**, Latasha McMillan bio page, www.corizonhealth.com (as of Sept. 16, 2022).
[137] Amended Answer ¶ 93.
[138] **Ex. 60**, Michael Middleton bio page, www.corizonhealth.com (as of Sept. 16, 2022).

- Michael Murphy is the SVP for State Client Relations and Business Development for YesCare.[139] Immediately before the restructuring, Murphy had the same title with Corizon Health.[140]
- Karen Davies is the Senior Vice President Community Operations—Southeast for YesCare.[141] Immediately before the restructuring, Davies had the same title with Corizon Health.[142]

The Plan of Divisional Merger confirms that "All current employees" of Corizon Health "as of the Effective Time shall become employees of" CHS TX.[143] And on May 5, 2022, Corizon Health, Inc. and CHS TX, Inc. entered into an "Interim Employee Leasing Agreement," along with CHS Employee Group, LLC.[144] The agreement was meant to span from May 5 until CHS TX notified Corizon Health that CHS Employee Group would be able to (1) process payroll and make applicable withholdings from such payroll under CHS Employee Group's federal ID number and (2) administer all applicable benefit plans (the "Lease Term").[145] During the Lease Term, the agreement stated that Corizon Health "shall permit" CHS TX "to utilize, on a full-time basis, the services of all employees of the Company… for the purpose of performing such services for [CHS TX]."[146] During the Lease Term, Corizon Health "will provide the Leased Employees with the same base salary and benefits such employees were [previously] provided."[147]

On May 19, 2022, Sara Tirschwell confirmed this arrangement with a tweet: "I am excited to announce that the dedicated employees of Corizon Health now work for @YesCare Corp!"[148]

---

[139] Amended Answer ¶ 94.
[140] **Ex. 61**, Michael Murphy bio page, www.corizonhealth.com (as of Sept. 16, 2022).
[141] Amended Answer ¶ 95.
[142] **Ex. 62**, Karen Davies bio page, www.corizonhealth.com (as of Sept. 16, 2022).
[143] **Ex. 28**, Agreement and Plan of Divisional Merger, YESCARE-CHS-00000203-369 at 205.
[144] **Ex. 63**, Interim Employee Leasing Agreement, YESCARE-CHS-00000473-478.
[145] *Id.* at 473.
[146] *Id.*
[147] *Id.*
[148] **Ex. 46**, Sara Tirschwell, (@STirschwell) Twitter; Plaintiffs' First Amended Petition ¶ 88; Amended Answer ¶ 88 ("Corizon admits the allegations contained in Paragraph 88 of the First Amended Petition").

## II. Defendants Continue Their Operations After Draining Corizon Health's Assets.

### A. Defendants Abandon Corizon Health and its Parent Companies.

Corizon Health "is no longer an active entity providing healthcare."[149] Corizon Health's parent company is Valitas Intermediate Holdings, Inc., which is wholly owned by M2 EquityCo, LLC, which is wholly owned by M2 Holdco, LLC:




Ex. 18,[150] But recent filings show these entities have been dissolved. M2 EquityCo, LLC was a Florida limited liability company managed by Michael Flacks (previously on Corizon Health's board).[151] As of September 23, 2022, it has been administratively dissolved for failure to file an annual report.[152]

---

[149] Amended Answer ¶ 15.
[150] **Ex. 18**, Presentation to Corizon Health, Inc on Fairness Analysis Pertaining to Proposed Transaction, YESCARE-CHS-00000392.
[151] **Ex. 64**, M2 Equity Co, LLC Entity Details as of 12.15.22.
[152] *Id.*

Likewise, M2 Holdco, LLC was a Florida limited liability company managed by Michael Flacks.[153] As of September 23, 2022, it has been administratively dissolved for failure to file an annual report.[154]

**B. The Main "Consideration" Corizon Health Received for the Restructuring, a Purported $15 Million "Funding Agreement," is Seemingly With a Dissolved Company.**

YesCare and CHS TX represent that M2 LoanCo, LLC is an affiliate of Corizon Health that has provided a $15 million total funding agreement to Corizon Health.[155] YesCare and CHS TX cite this "funding agreement" as evidence that Corizon Health received "value" in exchange for transferring its assets to CHS TX and that the transaction was not fraudulent.[156]

In its Management Representation Letter, the Corizon Health board likewise stated that Corizon Health would be allocated the right to draw on this "Funding Agreement," as part of the transaction. The Corizon Health board also represented that "M2 LoanCo has or will have at the closing sufficient source of cash…available to it to fully fund the full $15 million of funding to RemainCo contemplated under the Funding Agreement."[157]

This so-called "Funding Agreement," is not listed in the Plan of Divisional Merger. And its terms remain undisclosed. To date, Corizon Health has refused to produce this document, standing behind an eyebrow-raising objection to the document as "irrelevant" to Plaintiffs' claims.

It is unclear if any funding agreement, practically, exists. The FTI Consulting Fairness Opinion states that the funding agreement is with "M2 LoanCo, LLC, a Delaware limited liability company."[158] But a search of the State of Delaware's Division of Corporations reveals no company

[153] **Ex. 65**, M2 HoldCo, LLC Entity Details as of 12.15.22.
[154] *Id.*
[155] *See* YesCare/CHS TX's Suggestions in Support of their Motion to Dismiss ("Motion to Dismiss"), p. 7-8.
[156] *Id.* at 8.
[157] **Ex. 25**, Management Representation Letter, p. 3-4 ¶¶ 4, 7.
[158] **Ex. 23**, FTI Capital Advisor's Fairness Opinion, YESCARE-CHS-0000018.

with that name. An "M2 LoanCo, LLC," existed as a Florida limited liability company ostensibly organized by Michael Flacks. Isaac Lefkowitz, Corizon Health director, also appears to be at the helm of M2 LoanCo, LLC (he signed a security agreement with YesCare on M2LoanCo, LLC's behalf).[159] But this company, like its similarly-named M2 HoldCo LLC and M2 EquityCo LLC, was administratively dissolved as of September 23, 2022 for failure to file an annual report.[160]

Curiously, an "M2 LoanCo II LLC" now exists in New York at the 7 World Trade Center 46th Floor address as of June 2, 2022—the same address as Perigrove's and YesCare Holdings, LLC's headquarters.[161] But no party has produced any evidence that this second company has a funding agreement with Corizon Health.

**C. Corizon Health Continues to Pull From YesCare Funds.**

Even absent a funding agreement, Corizon Health ostensibly has control and access to at least some of the same funds as before the restructuring—albeit through more indirect means. While this case was in federal court, on October 13, 2022, Judge Nanette K. Laughrey ordered Corizon Health to pay Plaintiffs $12,000 in attorneys' fees for its objectively unreasonable removal to federal court. *See* Text Entry Order, Doc. 29, Case No. 2:22-cv-04100 ("Defendants shall pay $12,000 to Plaintiffs on or before October 20, 2022"). Rather than receiving a check from Corizon Health, however, Stueve Siegel Hanson received a $12,000 check from a New York bank account associated with YesCare and a previously-unheard-of "Geneva Consulting, LLC:"

---

[159] *See* **Ex. 68**, Fifth Amendment, Assignment, Assumption, Waiver, and Release to Third Amended and Restated Credit Agreement, YESCARE-CHS-0000055-190 at 64 (Lefkowitz signing credit agreement between the parties on M2 LoanCo, LLC's behalf).
[160] **Ex. 66**, M2 LoanCo, LLC Entity Details as of 12.15.22.
[161] **Ex. 67**, M2 LoanCo II, LLC Entity Details as of 12.15.22.



YesCare
Say Yes To Exceptional Care

GENEVA CONSULTING, LLC
205 Powell Place
Brentwood, TN 37027

METROPOLITAN COMMERCIAL BANK
99 Park Avenue | 12th Floor

No. 101426

Date October/21/2022

Pay Exactly ****TWELVE THOUSAND AND XX / 100 DOLLAR****

VOID AFTER 90 DAYS

Check Amount
$12,000.00***

To The Order Of STVEVE SIEGEL HANSON, LLP
460 NICHOLS ROAD SUITE 200
KANSAS CITY, MO 64112

Authorized Signature

Security features. Details on back.

[redacted]

**Ex. 69**.[162] While Corizon Health has not disclosed who signed the check, the signature above bears resemblance to F. Jeffrey Sholey's signature—current YesCare CFO:



Sincerely,

F. Jeffrey Sholey

Signature: ______________ Title: SVP, Chief Financial Officer

**Ex. 25**, Management Representation Letter, p. 6.

Corizon Health has, however, confirmed that "[t]he person who authorized the $12,000 payment was Isaac Lefkowitz, a Director of Corizon."[163]

Corizon Health maintains that YesCare "did not pay the $12,000 judgment," but rather that "Geneva Consulting, LLC paid the $12,000 judgment."[164] Corizon Health has not explained what Geneva Consulting, LLC is, who is running it, and why they are paying for Corizon Health's

---

[162] Settlement Check from Corizon Health.

[163] **Ex. 2**, Corizon Health's Responses to Pls' 2nd Irogs No. 13.

[164] **Ex. 2**, Corizon Health's Responses to Pls' 2nd Irogs No. 13; **Ex. 1**, Corizon Health's Responses to Pls' 2nd RFAs, No. 19 ("Corizon admits a $12,000 check was issued to Stueve Siegel Hanson, but denies that the party listed on the check is YesCare as the check was issued by Geneva Consulting, LLC.").

liabilities; nor has Corizon Health explained Lefkowitz's link to Geneva Consulting, LLC or his authority to authorize a check on its behalf for Corizon Health.

But Geneva Consulting, LLC's single corporate document provides the link: it was formed by David Gefner.[165] Gefner formed Geneva Consulting, LLC on November 16, 2021—the same day Corizon Health lost the MDOC contract.[166] Its address (listed on the check) is 205 Powell Place, Brentwood, Tennessee, which is the headquarters for YesCare, CHS TX, and formerly Corizon Health (though, it appears it is not registered to do business in Tennessee). In short, Corizon Health is using common funds with YesCare.[167]

Curiously, on February 3, 2022, David Gefner also organized a "Geneva Health Management LLC" in Florida, listing Jay Leitner's email address.[168] The principal office listed for Geneva Health Management LLC is 351 Spook Rock Road in Suffern NY—the same auto-parts warehouse which, described below, may also be the actual corporate address for Perigrove.

### D. YesCare's Tenuous Business and Financial Situation.

#### *i. David Gefner, Jay Leitner, Isaac Lefkowitz, YesCare Holdings, LLC, and Perigrove.*

Described above, YesCare Corp. is 95% owned by YesCare Holdings, LLC, organized by Corizon Health director (and Perigrove founder) David Gefner on May 11, 2022. YesCare has represented to clients and employees that its "new ownership…affords our re-branded organization with…backing of a large healthcare conglomerate with multitudes of resources for us to leverage[]

[165]**Ex. 70**, Geneva Consulting, LLC Entity Details; **Ex. 71**, Geneva Consulting, LLC Certificate of Formation.
[166]*Id.*
[167] A dive into CHS and YesCare's corporate documents reveals more of their connection to Geneva Consulting, LLC. As a part of YesCare's acquisition of CHS TX from Valitas Intermediate Holdings, Inc., YesCare assumed all of the rights, obligations, and liabilities of Valitas under a credit agreement. **Ex. 68**, Fifth Amendment, Assignment, Assumption, Waiver, and Release to Third Amended and Restated Credit Agreement, YESCARE-CHS-00000055. That credit agreement, amended to reflect YesCare's assumption of obligations, references a management services agreement dated May 5, 2022 between Geneva Consulting, LLC and "the Company, Holdings, Corizon Health of New Mexico, LLC". *Id.* at 88. It also references a security agreement dated May 5, 2022 the same parties. *Id.* "Holdings" is defined as YesCare Corp. (*Id.* at 73); CHS TX is "the Company" (*Id.*).
[168] **Ex. 72**, Articles of Organization for Geneva Health Management LLC.

and strong financial and leadership stability"[169] that it is "on strong financial resources and have extraordinary resources,"[170] and that the change to YesCare "puts us on stronger financial footing[.]"[171]

But, a dive into purported owner David Gefner and Perigrove shows these representations may be overstated. In a report published only days ago on December 7, 2022, investment research firm Hindenburg Research published an investigation into David Gefner and Perigrove. The report was the result of an investigation into a joint venture partnership between another David Gefner entity, Integra Health, and Ohio-based Welltower, which Hindenburg Research concluded was a "sham" and a "shell game," causing Welltower's stock to drop 6-8%.[172] About Perigrove and David Gefner, the report writes:

"Gefner is 29 years old, according to UK entity filings. Far from being an experienced operator, we found no evidence that he has managed skilled nursing facilities or healthcare facilities."[173] "He describes himself as the Founder and Principal of Perigrove, a 'prolific' private equity firm formed in 2012, when he was around 19 years old."[174] A review of Gefner's LinkedIn reveals he claims to have been an "Acquisition Specialist" since 2009—when he was 16.[175]

"Perigrove's website describes itself as a multi-billion-dollar private equity investment firm focused on healthcare:

> Perigrove is a prolific private equity firm strategically diversified across every segment of the global healthcare sector. Headquartered in New York City Perigrove

[169] **Ex. 16**, YesCare's 6/1/22 Invoicing Talking Points Email, YESCARE-CHS-00000446-449 at 448.
[170] **Ex. 36**, YesCare Client Q&A, YESCARE-CHS-00000463.
[171] **Ex. 45**, YesCare Employee Q&A, YESCARE-CHS-00000493-95.
[172] **Ex. 73**, Hindenburg Research, Welltower: Exposing The Shell Game, Dec. 7, 2022 ("Hindenburg Research Article"), https://hindenburgresearch.com/welltower/ (last visited December 14, 2022); *see also* McKnights Senior Living Report: Welltower stock falls sharply following report claiming "shell game" tactics," dated Dec. 9, 2022, https://www.mcknightsseniorliving.com/home/news/business-daily-news/welltower-stock-falls-sharply-following-report-claiming-shell-game-tactics/ (last visited December 14, 2022).
[173] **Ex. 73**, Hindenburg Research Article.
[174] *Id.*
[175] **Ex. 74**, LinkedIn Profile for David Gefner (last visited December 15, 2022).

> has conducted billions in transactions over the past decade. On behalf of our stakeholders and the tens of thousands of lives we impact, we continue to create outsize opportunities in all we engage."

Perigrove's claimed focus on healthcare appears to be relatively new. "Earlier archived versions of its homepage from 2019 made no reference to healthcare, instead professing a focus on real estate."[176] "The same archived website captures show that Perigrove stated that it raised more than $3 billion in total equity:[177]"




Indeed, "[d]espite its claims to be a large asset manager, Perigrove is not registered with the SEC as an advisor."[178] According to Hindenburg, "[a]ll U.S.-based investment advisors with $100 million or more in assets under management are required to register with the SEC as investment advisors."[179] "When raising private capital, investment firms are also required to file 'Form Ds' reporting details of the capital raises." Hindenburg Research "found No Form D's referencing Perigrove or Gefner, despite claimed numerous large capital raises. Similarly, a search on FINRA BrokerCheck to see if Perigrove or Gefner were affiliated with any broker/dealer turned

[176] **Ex. 73**, Hindenburg Research Article.
[177] *Id.*
[178] *Id.*
[179] *Id.*

up no results."[180] Hindenburg Research concluded that "**[t]he lack of required regulatory filings suggest that Perigrove either exaggerated its capital raising activities or raised the capital illegally**."[181]

In fact, Hindenburg Research's "review of Perigrove indicates the company hasn't raised anything close to $3 billion."[182] "Perigrove's current website lists no specific projects the firm has completed." "An archived 2019 version of Perigrove's website features 12 New York City area building development projects" but, upon review, "none were actually run by Perigrove."[183] In fact, Perigrove "had a documented role in only 1 of the claimed projects on its website; a Manhattan hotel once dubbed the 'City's Worst Illegal Hotel' by Crain's Business."[184] Perigrove's role in the deal "seems to be that it attempted to launch a $30 million crypto token to raise funds for the property. The (likely illegal) ICO offering looks to have failed."[185] The token offering was conducted under the name "iTokenize," purportedly based out of the Cayman Islands—whose managing director is none other than Corizon Health director Isaac Lefkowitz.[186]

Hindenburg Research also investigated Perigrove's purported headquarters at 7 World Trade Center, 46th Floor.[187] Hindenburg Research visited the address "and found Perigrove was no longer there."[188] "We spoke to the receptionist, who had never heard of Perigrove."[189] Hindenburg Research then visited Perigrove's registered address from its corporate entity filings—a 351 Spook

---

[180] *Id.*
[181] *Id.*(emphasis added).
[182] *Id.*
[183] *Id.*
[184] *Id.*
[185] *Id.*
[186] **Ex. 75**, LinkedIn Profile for Isaac Lefkowitz - Managing Director – Itokenize (last visited December 15, 2022).
[187] **Ex. 73**, Hindenburg Research Article.
[188] *Id.*
[189] *Id.*

Rock Rd., Suffern, New York.[190] They found Perigrove "next to an auto parts store in a worn-down building in a strip mall:"



"The 351 Spook Rock Road address shared signage for Perigrove and an auto parts company called AutoPlus."[191] "Perigrove's name on the sign was put up with stickers and was misspelled as "Perigove:"




[190] *Id.*
[191] *Id.*

"The building's lobby had visible wear and tear and was piled high with auto part boxes."[192] "In between a high pile of cardboard boxes and a tire, a large mailbox has Perigrove LLC marked on it:"






Hindenburg Research spoke to a representative at the auto parts store who told them that Perigrove worked upstairs.[193]

Hindenburg investigators "reached Gefner by cell phone to ask him about Integra and Perigrove."[194] Gefner "declined to provide any information but said he would take our name and number and call back….He did not call back and did not answer when we phoned 3 subsequent times." Hindenburg reported Gefner "eventually responded to our WhatsApp message saying, 'I'm on a plane traveling overseas.'"[195]

---

[192] *Id.*
[193] *Id.*
[194] *Id.*
[195] *Id.*

***ii. Sara Tirschwell and YesCare Corp.***

YesCare's registered office is listed on its Certificate of Formation as 3411 Yoakum Blvd, #2901 in Houston, Texas, which is the address for a luxury apartment building.[196] This is also the address Tirschwell lists for herself on the Certificate of Formation; she apparently listed her personal residence as YesCare Corp.'s registered office.[197]

This was confirmed by the process server Plaintiffs engaged to serve YesCare with this lawsuit.[198] Describing YesCare's address as a "high end apartment building," the process server recounted under oath that Tirschwell, like Gefner, is apparently evading contact:

> ….The concierge called her [Tirschwell] and she said she was not in. **He handed me the phone and she told me she was on a plane and not there. She said they have been trying to serve her for months and they are going to have to find another way. She said they aren't going to be able to find her and that she is traveling.** She said to serve her through counsel. Before I could ask when she expects to [be] back home she hung up the phone.

**Ex. 76**, Nov. 17, 2022 Return of Non-Service on YesCare (emphasis added).

It is unclear what assets remain with YesCare, but information available paints a troubling picture. YesCare's current business dealings appear sparse. As of data generated on November 23, 2022, it has retained only 21 clients.[199] Of those 21 clients, only three are department of corrections clients (in Maryland, Wyoming, and New York).[200] Notably, none of YesCare's clients are in Texas.[201] In total, YesCare currently serves an inmate population of 39,410, which pales in comparison to Corizon Health's former inmate population.[202]

---

[196] **Ex. 17**, YesCare Corp.'s Certificate of Formation, YESCARE-CHS-00000001; https://www.livelacolombedor.com/ (last visited December 15, 2022).
[197] **Ex. 17**, YesCare Corp.'s Certificate of Formation, YESCARE-CHS-00000001.
[198] **Ex. 76**, Nov. 17, 2022 Return of Non-Service on YesCare (emphasis added).
[199] **Ex. 77**, YesCare's Clients by State, YESCARE-CHS-00000198.
[200] *Id.*
[201] *Id.*
[202] *Id.*

Reports of YesCare's current contracts signal trouble. For example, the Albuquerque Editorial Board published an article in the Albuquerque Journal on November 16, 2022 regarding YesCare's provision of medical care to inmates in Bernalillo County.[203] In the article, the Board describes a developing "crisis" at the Metropolitan Detention Center for "an apparent failure to provide proper medical care to the jail's population," culminating in the deaths of "[s]eventeen inmates….in custody at MDC since the beginning of 2020." [204] The Board explains that "YesCare…went several months without meeting its contractual obligation to have two doctors present at the jail." And while Bernalillo County commissioners "approved a $64.9 million, four-year contract with Corizon Health—the forerunner of YesCare—in September 2021….care only got worse."[205] The Board concluded the article with "[t]he county needs to continue demanding improvement by YesCare. If YesCare isn't up to the task, the county has a responsibility to taxpayers to find someone else who is."[206]

News reports related to YesCare's bids for additional clients are likewise not favorable. For example, the Alabama Department of Corrections ("ADOC") announced in July that it had picked YesCare Corp. for a three-year contract covering 26 correctional facilities. But the ADOC soon rescinded that decision: "Out of an abundance of caution, the ADOC has determined that it is in the state's best interest to rescind this RFP (request for proposals) and any previously issued notice of intent to award."[207]

---

[203] **Ex. 78**, Editorial - Medical concerns at MDC must be addressed pronto, Editorial: Medical concerns at MDC must be addressed pronto - Albuquerque Journal (abqjournal.com) (last visited December 15, 2022).
[204] *Id.*
[205] *Id.*
[206] *Id.*
[207] **Ex. 79**, Alabama rescinds prison health care contract award, will start process over, Alabama rescinds prison health care contract award, will start process over - al.com (last visited December 15, 2022).

## III. All the While, Corizon Health Misleads Plaintiffs About its Intent to Pay.

For months, Corizon Health told Plaintiffs it would pay the balance of its contractual obligations:

In May 2021, Corizon Health admits that Corizon Health employee Shawn Lewis emailed representatives of Plaintiff Capital Region and asked that a Capital Region representative Michelle Hughey call him to "discuss the plans" for "getting [Plaintiffs'] balance paid to the contract position."[208]

In August 2021, Corizon Health admits that Darrell Barker, now a Claims Director for YesCare, told Capital Region that he would have "better visibility" and would "continue to advise what [Corizon] can do week to week to resolve the backlog."[209]

Also in August, Corizon Health represented to Plaintiffs that it would pay them with the money received from the MDOC. On August 17, 2021, Mr. Lewis emailed Mr. Barker stating, "Darrell, Please see email below Mr. Luebbering is wanting to know your plan of action."[210] Barker responded, "Hello Shawn, Our plan of action is to continue to work to supplement their payments each week until we receive the funding from the MDOC. Since we do not know when we will receive those dollars, we are not able to provide a solid timeline for when we will be able to eliminate the backlog."[211] Lewis responded to Barker, "Okay thank you I will inform Mr. Luebbering."[212]

In September 2021, Corizon Health admits it provided Plaintiffs a payment schedule for a back log of $12 million dollars. Corizon Health admits that Mr. Luebbering (from Capital Region)

---

[208] Amended Answer ¶ 76.
[209] Amended Answer ¶ 76.
[210] **Ex. 80**, Correspondence between Barker and Lewis August 2021, Corizon010277-010279.
[211] *Id.*
[212] *Id.*

reiterated that Plaintiffs were "deeply concerned with the amount of outstanding claims that have yet to be paid" and requested a "detailed plan on how interest and claims payments will be made to resolve the outstanding liability."[213] Corizon Health admits that on September 27, 2021, Mr. Barker told Plaintiffs he would "work to calculate the interest payment for the 2nd quarter and have approved for reimbursement," and would "work to calculate the interest for the 3rd quarter next week and have approved for reimbursement."[214] Mr. Barker explained Corizon Health would "work to[] reimburse billed charges," on the following schedule: $3 million in October; $3 million in November; $3 million in December; and $3 million January. Mr. Barker provided this payment schedule to Plaintiffs.[215] Mr. Barker further represented that Corizon Health hoped to "close out" the balances "60-days from the termination of the contract."[216] Despite these assurances, Corizon Health neither paid Plaintiffs on the promised schedule, nor closed out Plaintiffs' balance 60-days from the November 14, 2021 termination date.

In November 2021, Plaintiffs jointly sent a demand letter to Corizon Health requesting the amounts owed under the Agreement.[217] Corizon Health acknowledges receipt of this letter.[218] Corizon Health responded on November 24, 2021 with a letter stating "Corizon, LLC is aware of the contractual terms and payment obligations" and that Corizon was "working through our backlog of provider claims" and would "follow up with you soon with a proposed resolution."[219]

---

[213] Amended Answer ¶ 77 ("Corizon admits the allegations contained in Paragraph 77 of the First Amended Petition").
[214] Amended Answer ¶ 78; **Ex. 81**, Correspondence between Barker and Luebbering Sept. 2021, PLTF0004150-4158.
[215] Amended Answer ¶ 78; **Ex. 81**, Correspondence between Barker and Luebbering Sept. 2021, PLTF0004150-4158.
[215] Amended Answer ¶ 78.
[216] **Ex. 81**, Correspondence between Barker and Luebbbering Sept. 2021, PLTF0004150-4158.
[216] Amended Answer ¶ 78; **Ex. 82**, Nov. 11, 2021 Demand Letter, PLTF000004120-4121.
[217] Amended Answer ¶ 80.
[218] *Id.*
[219] **Ex. 83**, Nov. 24, 2021, Corizon Response to Demand Letter, PLTF00004122.

In the email transmitting Corizon Health's response, Ms. Copeland represented that Corizon Health would "hopefully have more information after the Thanksgiving holiday."[220]

In December 2021, a University representative called Corizon Health regarding the outstanding payments. The Corizon Health representative explained that the claims that Corizon Health processed were "set to pay" but that they were "holding claims payments" due to "financial issues with a few clients."[221] Only five days later, Corizon Health admits that it was paid in full by the MDOC as of December 20, 2021.[222] This is the money Corizon Health told Plaintiffs it intended to pay them. Corizon Health did not do so. Instead, it pocketed the money, and secretly restructured to funnel those dollars, and its other assets, outside of Plaintiffs' reach.

Corizon Health admits that it did not disclose its restructuring to Plaintiffs, nor did it disclose its subsequent name change to Tehum Care Services, Inc.[223] Corizon admits that while "Corizon representatives informed Corizon client(s) of the upcoming changes to Corizon, particularly the divisional merger," on May 13, 2022, Corizon "did not inform Plaintiffs of these upcoming changes, particularly the divisional merger."[224]

In fact, as late as July 2022, Corizon Health continued to act is if it was operational and contemplating payment. After the University emailed the "Customer Services Claims" email address for Corizon in July 2022, an anonymous agent responded two minutes later from "Claims.CustomerService@corizonhealth.com" stating "We do not have an ETA of when payments will be released."[225]

---

[220] **Ex. 84**, Correspondence between Copeland and Cooper Nov. 2021, PLTF00005856-5860.
[221] **Ex. 85**, Correspondence between Burbank and Boggs Dec. 15, 2021, PLTF0004170.
[222] **Ex. 1**, Corizon Health's Response to Pls' 2nd RFAs No. 35; **Ex. 2**, Corizon Health's Responses to Pls' 2nd Irogs No. 15.
[223] Amended Answer ¶¶ 69 ("Corizon admits that it did not inform Plaintiffs of the divisional merger"); 70 (admitting the allegation that "At no point did Corizon Health inform Plaintiffs it was changing its name").
[224] Amended Answer ¶ 111.
[225] **Ex. 19**, 2822 Email Re "CORIZON Info," PLTF00004173.

Even in this litigation, Corizon Health remained elusive. Corizon Health has repeatedly claimed, inconsistent with all representations prior to this litigation, that it "has not paid" Plaintiffs "because of billing discrepancies."[226] It was only recently that Corizon Health admitted it "has insufficient assets" to pay.[227]

## LEGAL STANDARD

Under Missouri law, "[w]hen considering a motion for a preliminary injunction, a court should weigh the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest." *CitiMortgage, Inc. v. Just Mortg., Inc.*, 2013 WL 6538680, at *3 (E.D. Mo. Dec. 13, 2013) (citing *State ex rel. Dir. of Revenue, State of Mo. v. Gabbert*, 925 S.W.2d 838, 839 (Mo.1996)). "A petitioner must make some showing of probability of success on the merits before a preliminary injunction will be issued." *Id.*

To demonstrate likelihood of success on the merits, a movant does not need to show that it ultimately will succeed on its claims, only that the movant's prospects for success is *sufficiently likely* to support the kind of relief it requests. *BancorpSouth Bank v. Hall*, No. 6:10-CV-03390-DGK, 2011 WL 529971, at *4 (W.D. Mo. Feb. 7, 2011) (citing *Noodles Dev., LP. v. Ninth Street Partners, LLP*, 507 F.Supp.2d 1030, 1034 (E.D. Mo. 2007) (emphasis added)). That is, the movant need only show "a fair chance of prevailing." *Id.* (citing *Phelps–Roper v. Nixon*, 509 F.3d 480, 485 (8th Cir. 2007)).

The power to appoint a receiver is within the sound discretion of the trial court. *Riegel v. Jungerman*, 597 S.W.3d 695, 702 (Mo. App. W.D. 2019). An abuse of discretion occurs only when

---

[226] Amended Answer ¶ 145.
[227] **Ex. 1**, Corizon Health's RFA Responses, No. 31.

the trial court's ruling is "clearly against the logic of the circumstances then before the trial court," and is "so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Id.* (citing *Dieser v. St. Anthony's Med. Ctr.*, 498 S.W.3d 419, 436 (Mo. 2016)).

## ARGUMENT

### I. Plaintiffs Have a Fair Chance of Prevailing Under Missouri's Uniform Fraudulent Transfer Act.

In their Motion to Dismiss, YesCare and CHS TX argue this lawsuit "represents an attempt by Plaintiffs to abrogate the laws of another state," alluding to the TBOC's divisional merger provisions. Dfs' SIS of MTD, at p. 7. Not so. The TBOC explicitly states that the merger provisions do not 'abridge any right or rights of any creditor under existing laws. Tex. Bus. Orgs. Code Ann. § 10.901 (West). Curtis Huff, a primary author of the Texas divisional merger statute, has confirmed that the rights of creditors under federal and state fraudulent transfer laws are not abrogated or abridged by such a merger, and that "all laws protecting the rights of creditors with respect to fraudulent conveyances…will remain in full force and apply."[228]

#### A. MUFTA Authorizes Provisional Remedies Against All Defendants.

The Missouri Uniform Fraudulent Transfer Act ("MUFTA" or "the Act") was designed to protect unsecured creditors. *BancorpSouth Bank*, 2011 WL 529971, at *4 (citing *Fleming Companies, Inc. v. Rich*, 978 F. Supp. 1281, 1294 (E.D. Mo. 1997)). MUFTA defines a fraudulent transfer as a transfer made with the "actual intent to hinder[,] delay, or defraud any creditor of the debtor." Mo. Rev. Stat. § 428.024.1(1).

---

[228] *See* Curtis Huff, The New Texas Business Corporation Act Merger Provisions, 21 ST. MARY'S L.J. 109, 110 n.2, 125 (1989) (emphasis added).

MUFTA "provides remedies directly against transferees." *Enter. Fin. Grp., Inc. v. Podhorn*, 930 F.3d 946, 949 (8th Cir. 2019). Specifically, MUFTA allows creditors seeking relief under this provision to seek, among other things, "[a]n injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property," and "[a]ppointment of a receiver to take charge of the asset transferred or of other property of the transferee." Mo. Rev. Stat. § 428.039(3).

### B. Defendants' Restructuring Supports a "Presumption" and "Strong Inference" of Fraudulent Intent.

The preliminary formalities for a MUFTA claim are met, here. Plaintiffs have a "claim" against Corizon Health: the over eleven million dollars in unpaid services they provided for Corizon Health in 2021 and 2022.[229] Further, Corizon Health's allocation of assets to CHS TX, Inc. constitutes a "transfer" under the Act.[230] The remaining question is whether Corizon Health's transfer of assets was done "with actual intent to hinder, delay, or defraud any creditor of the debtor." Mo. Rev. Stat. § 428.024(a)(1).

Because fraudulent intent is rarely proven by direct evidence, MUFTA enumerates an "illustrative list" of factors for the determination of actual intent, including whether:

1) The transfer was to an insider;
2) The debtor retained possession or control of the property transferred after the transfer;
3) The transfer was disclosed or concealed;
4) Before the transfer was made, the debtor had been threatened with suit;
5) The transfer was of substantially all of the debtor's assets;
6) The debtor absconded;
7) The debtor removed or concealed assets;
8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;

---

[229] Under the Act, a "claim" is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Mo. Rev. Stat. § 428.009(2).

[230] Under the Act, a "transfer" is "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien of other encumbrance." Mo. Rev. Stat. § 428.009(12).

9) The debtor was insolvent or became insolvent shortly after the transfer was made;
10) The transfer occurred shortly before or after a substantial debt was incurred;
11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*CitiMortgage, Inc. v. Just Mortg., Inc.*, 2013 WL 6538680, at *2 (E.D. Mo. Dec. 13, 2013) (citing Mo. Rev. Stat. § 428.024.2). "The presence of several badges of fraud raises the presumption that a transfer was fraudulent." *Fink v. Wright (In re Wright)*, 611 B.R. 319, 325 (Bankr. W.D. Mo. 2019); *BancorpSouth Bank*, 2011 WL 529971, at *5 (explaining the presence of several indicia of fraud may indeed give rise to a "strong inference of fraud"). Here, several factors under Mo. Rev. Stat. § 428.024 lend support to Plaintiffs' allegations of fraudulent intent.

Corizon Health transferred its assets to an insider. An insider includes a "director, officer, or person in control of a debtor corporation." Mo. Rev. Stat. § 428.009(7). Corizon Health transferred its assets to CHS TX, organized, directed, and managed by Sara Tirschwell, Corizon Health's former CEO. Tirschwell then sold CHS TX's equity to YesCare Corp., which she also organized and manages. Tirschwell then sold 95% of YesCare Corp.'s equity to YesCare Holdings, LLC, organized by Corizon Health director David Gefner. Each step in this transaction evidences the transfer of Corizon Health's assets to an insider. *See, e.g., Allenspach-Boller v. United Cmty. Bank*, 2021 WL 1738884, at *4 (W.D. Mo. May 3, 2021) (explaining a transfer was to an "insider" where the transferor, Reliable Machine, transferred $1.4 million to the co-owner of Reliable Machine) (citing Mo. Rev. Stat. § 428.009(7)).

For the same reasons, Corizon Health retained possession or control of the assets. Corizon Health director David Gefner controls the company that owns 95% of YesCare Corp.'s equity, of which CHS TX is a wholly-owned subsidiary. Corizon Health director Isaac Lefkowitz retains authority to authorize the disposition of funds in a YesCare Corp. bank account. These facts reveal Corizon Health maintains control over the assets it purported to transfer.

Further, Corizon Health admits it concealed the transfer from Plaintiffs. Even after revealing its "re-branding," and "name-change" to Corizon Health's active contracts, clients, and employees, Corizon Health concealed this information from Plaintiffs, who did not learn of the restructuring until months into this litigation. *See, e.g., Allenspach-Boller*, 2021 WL 1738884, at *4 (explaining this factor was satisfied where the owners of transferor Reliable Machine did not tell plaintiffs about the transfer).

Plaintiffs, moreover, threatened Corizon Health with suit before the transfer was made. After multiple attempts to collect the amounts owed, including an initial demand letter in November 2021, Plaintiffs sent Corizon Health a final demand letter through undersigned counsel on April 19, 2022, stating they would pursue legal action if not paid the amounts owed in seven days. Seven days later, Corizon Health reorganized under Texas law, and completed the remaining combination merger, divisional merger, and equity purchase of CHS TX and YesCare Corp. in a matter of days.

The transfer was of substantially all of Corizon Health's assets. Corizon Health transferred to CHS TX all of its employees, active contracts, and substantially all of its monetary assets. To be sure, as a result of the restructuring, Corizon Health ceased doing business (because YesCare and CHS TX now conduct said business); has no employees (because YesCare and CHS TX employ them); has no headquarters (because YesCare and CHS TX now operate from its headquarters); and has changed its name to "Tehum Care Services, Inc." likely to minimize the negative optics that will result from a future bankruptcy action.

Last, Corizon Health was insolvent, or became insolvent as a result of the transfer. Under MUFTA, a debtor is insolvent if the sum of the debtor's debts exceeds the fair value of its assets. *See* Mo. Rev. Stat. § 428.014 (defining insolvency under Missouri law). In addition, courts

presume a debtor is insolvent under Missouri law if the debtor is not paying its debts as they become due. Mo. Rev. Stat. § 428.014.

The above factors establish a presumption and "strong inference" of fraud, and Plaintiffs have a high likelihood of success on their MUFTA claim. *See, e.g., BancorpSouth Bank*, 2011 WL 529971, at *5 (granting plaintiffs' motion for preliminary injunction, finding plaintiffs were likely to succeed on the merits of their MUFTA claim where four badges of fraud were present); *CitiMortgage, Inc. v. Just Mortg., Inc.*, 2013 WL 6538680, at *4 (E.D. Mo. Dec. 13, 2013) (holding plaintiff was likely to succeed on the merits of its MUFTA claim where "several factors under Mo. Rev. Stat. § 428.024 lend support to plaintiff's allegations of fraudulent intent"); *Allenspach-Boller*, 2021 WL 1738884, at *4 (granting writ of attachment against alleged transferor, finding presence of three MUFTA factors sufficient to establish a fraudulent transfer); *see also Favazza v. Path Media Holdings, LLC*, No. 4:12CV1561 TCM, 2014 WL 1846109, at *10 (E.D. Mo. May 8, 2014) (granting summary judgment for plaintiff on MUFTA claim against Mantra Films for its transfer to GGW where the company "went from Mantra one day to GGW Brands the next day," people employed by Mantra one day were employees of GGW Brands the next; both entities were overseen and run by the same individual; and they continued on the same operations).

## II. Relatedly, Plaintiffs Have a Fair Chance of Prevailing on Their Successor Liability Claims.

### A. This is a Paradigmatic Case of Successor Liability.

In Missouri, a successor company will be liable for the former company's debt when (1) the transferee expressly or impliedly agrees to assume debts and liabilities, (2) the transaction amounts to a consolidation or merger, (3) the transferee is merely a continuation of the seller, or (4) the transaction is entered into fraudulently to escape liability for the debts and liabilities. *State ex rel. Fam. Support Div. v. Steak'm Take'm LLC*, 524 S.W.3d 584, 590 (Mo. App. W. D. 2017).

In *Nat'l Gypsum*, the District of Massachusetts explained that in the context of successor liability, "the pattern is virtually identical:"

> a corporation which is solvent (or if technically insolvent, at least some assets to pay its creditors), transfers its assets in a collusive transaction to another entity in which these same shareholders end up with an equity interest, now unencumbered. The transaction is structured so that the selling corporation is either not paid at all, or is paid with stock which is issued directly to its shareholders. The intended result in all cases is the same, to permit the owners of the selling corporation to avoid paying creditors without losing control of their business. It is this intended result which the successor liability exceptions prevent.

*Nat'l Gypsum Co. v. Cont'l Brands Corp.*, 895 F. Supp. 328, 337–38 (D. Mass. 1995). That is exactly the scenario here: Corizon Health transferred its assets in a collusive transaction to CHS TX (and then YesCare Corp.), so that the companies' common shareholders had an equity interest, now unencumbered.

**B. Missouri Law Applies to the Determination of Successor Liability.**

Defendants seek to avoid application of successor liability principles by arguing that Texas law applies to the determination, citing the "internal affairs" doctrine. The "internal affairs" doctrine is a conflict of laws principle that provides the "law of the state of incorporation should be applied to settle disputes affecting the organic structure or internal administration of a corporation." *Enslein as Tr. for Xurex, Inc. v. Di Mase*, 2019 WL 2505052, at *27 (W.D. Mo. June 17, 2019) (citing *J.Y.C.C. v. Doe Run Res., Corp.*, No. 15-CV-1704, 2019 WL 2211109, at *8 (E.D. Mo. May 21, 2019) (declining to apply the internal affairs doctrine because the matter did not involve any disputes about internal affairs); *Shaffer v. Health Acquisition Co.*, No. 18-CV-601-NKL, 2019 WL 104932, at *6 (W.D. Mo. Mar. 5, 2019) (noting the internal affairs doctrine applies to "matters having to do with the internal regulation of a corporation" and does not apply to an action by shareholders on behalf of a corporation seeking to vindicate its rights against third parties); *Aguilar v. PNC Bank, N.A.*, No. 14-CV-985, 2014 WL 12700618, at *3 n.2 (E.D. Mo.

Nov. 19, 2014) (noting Missouri applied the "most significant relationship test" for resolving choice-of-law questions in tort actions and analyzing a claim of aiding and abetting breach of fiduciary duty under this test)).

The doctrine does not, in contrast, apply to issues relating to the way various entities are operated in relation to one another to avoid obligation to third parties. *See, e.g., A.O.A. v. Rennert*, 350 F. Supp. 3d 818, 835 (E.D. Mo. 2018) (holding the purpose of the internal affairs doctrine would not be served by applying it to the veil-piercing claims at issue because "[t]his is not a case involving a fight among shareholders or over the election of corporate officers. Rather, the veil-piercing issue in this case relates to the way the various entities were operated in relation to one another and to Doe Run Peru"). Indeed, Magistrate Judge Patricia Morris with the Eastern District of Michigan recently rejected YesCare and CHS TX's invocation of the "internal relations" doctrine in the successor liability context explaining "the theories at issue here—successorship liability and piercing of the corporate veil—do not involve internal matters" but are "equitable remedies, intended to empower courts to 'disregard traditional corporate law principles' when necessary to 'provide a source of recovery for injured plaintiffs.'" Order on Plaintiff's Motion for Substitution, Kelly v. Corizon Health, Inc., Case 2:22-cv-10589, ECF No. 43 at 21 (Nov. 1, 2022) (Morris, M.J.) (**Ex. 86**).

Instead, Missouri applies the "most significant relationship" test to successor liability determinations. *Osborn v. Prime Tanning Corp.*, 2011 WL 13291159, at *5–6 (W.D. Mo. Apr. 29, 2011) (citing Restatement § 145). The two most significant contacts under Restatement sec. 145 are (1) the place of injury and (2) the place where the conduct causing injury was located. *Osborn*, 2011 WL 13291159, at *6; *see also* Thomas H. Day, *Solution for Conflict of Laws Governing Fraudulent Transfers: Apply the Law That Was Enacted to Benefit the Creditors*, 48 Bus. Law.

889, 894–95 (1993) (explaining "Courts have rejected the location of the transferee as a significant factor" and "The decision to reject the law of the transferee's location is appropriate because the transferee should not be able to choose laws that favor its receipt of a fraudulent transfer to the detriment of third party creditors, nor should a state's legislature enact laws encouraging its transferees to defraud out-of-state creditors").

Here, Missouri bears the most significant relationship to the issue of successor liability for Plaintiffs' claims against Corizon Health. The place of contracting, and consequently of injury, is Missouri; relating to Corizon Health's longstanding Missouri contract with the University of Missouri and Capital Region to provide correctional healthcare to inmates at the Missouri Department of Corrections. While Corizon Health, YesCare, and CHS TX advocate for application of Texas law because they schemed to be shielded by Texas's successor liability laws (despite conducting no business in Texas), they should not be able to "choose laws that favor its receipt of a fraudulent transfer" to Plaintiffs' detriment.

**C. The Restructuring was Enacted to Escape Corizon Health's Liabilities.**

For the same reasons stated above in Section I(B), discovery to date establishes that Corizon Health's restructuring was enacted to frustrate its creditors. *See, e.g., State ex rel. Fam. Support Div. v. Steak'm Take'm LLC*, 524 S.W.3d 584, 591 (Mo. App. W.D. 2017) (affirming judgment against successor company, holding the circuit court "correctly found that Steak'm LLC 'fraudulently transferred' the restaurant to Steak M LLC in January 2013 to avoid paying its debt to the Family Support Division where the evidence showed there was a conveyance to a near relative of all of the debtor's property for inadequate consideration made in anticipation of a lawsuit, and appellants produced no evidence to rebut the suspicious circumstances surrounding the transfer").

**D. CHS TX and YesCare are a Mere Continuation of Corizon Health.**

In determining whether a successor company "is merely a continuation" of the predecessor, and is thus liable for its debts, the factors for the court to consider include: (1) whether there is a common identity of officers, directors, and stockholders; (2) whether the incorporators of the successor also incorporated the predecessor; (3) whether the business operations are identical; (4) whether the transferee uses the same trucks, equipment, labor force, supervisors, and name of the transferor; and (5) whether notice has been given of the transfer to employees or customers. *State ex rel. Fam. Support Div. v. Steak'm Take'm LLC*, 524 S.W.3d 584, 591 (Mo. App. W.D. 2017) (citing *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 804 (8th Cir. 2003). Even if the two companies do not have common ownership, "the court can find successor liability based on the other factors." *Id.* (citing *Roper Elec. Co. v. Quality Castings, Inc.*, 60 S.W.3d 708, 712-13 (Mo. App. S.D. 2001).

Here, all of these factors weigh in favor of finding CHS TX and YesCare are a mere continuation of Corizon Health. First, CHS TX and Corizon Health had common owners before YesCare Corp. purchased CHS TX's equity: Valitas Intermediate Holdings, Inc. All of CHS TX and YesCare's officers and directors were formerly officers and directors of Corizon Health, and the incorporators of each are the same (Tirschwell and attorneys acting on Corizon Health's behalf). Third, the business operations of all three entities are identical–YesCare and CHS TX continued on with all of Corizon Health's active business. Fourth, YesCare and CHS TX used the same labor force, employees, contracts and clients, headquarters, bank accounts, federal ID numbers, and social media sites as Corizon Health. Last, while notice was given to the employees and active contracts of Corizon Health, that notice expressed the evolution from Corizon Health to YesCare was a "name change."

*Med. Shoppe Int'l* is instructive here. In that case, the Eighth Circuit affirmed the district court's finding that defendant company Pill Dr. was a "mere continuation" of predecessor company Cape Fear. *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 804 (8th Cir. 2003) (applying Missouri law). The evidence established (1) both companies had the same sole shareholder and director, an individual who was also the president of both corporations; (2) that same individual incorporated Pill Dr. and her father incorporated Cape Fear; (3) Pill Dr. operated the same type of business in the same location as did Cape Fear; and (4) although Pill Dr. did not use the same equipment and trade name as Cape Fear, it operated with the same phone number, employees, and pharmacist manager. *Id.* at 804-05. The Eighth Circuit explained that the last factor, whether notification was given to employees and customers, "would weigh against a finding of a mere continuation, but for the way in which notice was given: 'Only the name has changed….'" *Id.* at 805. Thus, the Eighth Circuit found that all five factors weighed in favor of finding Pill Dr. was a mere continuation of Cape Fear, and affirmed the district court's conclusion that Pill Dr. may be held liable as Cape Fear's successor in interest. Accordingly, the Eighth Circuit also held the district court did not err in granting plaintiff's motion for preliminary injunction, explaining "the public interest would not be served by permitting a party to avoid contractual obligations through the simple expedient of reincorporation under a new name."

Several other cases illustrate YesCare and CHS TX's status as a mere continuation of Corizon Health. In *Flotte v. United Claims, Inc.,* 657 S.W.2d 387 (Mo. App. E.D. 1983), the Eastern District affirmed judgment that imposed liability on a successor corporation on the basis of "substantially similar shareholders, officers, and [the new corporation] engag[ing] in the same business representing the same two major customers." That case involved a suit against defendant United Claims Services, Inc. and its successor, United Claims, Inc. for unpaid wages. Finding the

record "amply demonstrates the situation where there was a continuation of a prior transferring corporation," the Eastern District explained: "We cannot in fairness, permit the sole shareholder of one corporation to organize another and transfer all the corporate property from the former to the latter without paying all the corporation's debts. The new corporation can only be regarded as a mere continuation of the former under a different name." *Id.* at 389.

The *Flotte* court concluded: "What remained of the old corporation was a shell of its former self, and effectively, a defunct corporation. The fact that the old corporation did not formerly dissolve does not in and of itself make it any the less extinct as an active entity…upon evidence that the newer corporation was for all intent and purposes the same as the older corporation…." *Id.* at 389; *see also Brockmann v. O'Neill*, 565 S.W.2d 796, 797–99 (Mo. App. St. 1978) (reversing trial court and entering judgment in favor of plaintiff in suit to recover debt under successor liability theory, finding a "continuation of a prior transferring corporation" where both the predecessor and successor companies were in the same business, both had directors, officers, and stockholders in common at the time the predecessor became defunct, the successor used the same trucks, equipment, labor force, and supervisors, and the predecessor took over the successor's contracts with no notice to the contractors).

Last, in *Steak'm Take'm*, after the purported transfer of all the restaurant's assets from Steak'm LLC to Steak M LLC, Steak M LLC continued running the restaurant as "Steak'm Take'm!" at the same location, with the same equipment, telephone number, menu, key employees, and customers, and neither company notified customers or creditors of the restaurant's change in ownership. *State ex rel. Fam. Support Div. v. Steak'm Take'm LLC*, 524 S.W.3d 584, 591 (Mo. App. W.D. 2017). Accordingly, the court correctly found that Steak M LLC was a "mere continuation of Steak'm LLC and liable for the debts accrued while Steak'm LLC owned the

restaurant." *Id.* at 591 (affirming judgment against successor company, explaining the "evidence fully supports the circuit court's conclusions" that defendant was a "mere continuation" liable for the former company's debts). *See also Sundance Rehabilitation Corp. v. New Vision Care Assocs. II, Inc.*, No. 04 3571 CV S FJG, 2006 WL 2850556, at *6 (W.D. Mo. Sept. 29, 2006) (granting plaintiff's motion for summary judgment on the issues of successor liability, finding all five factors weighed in favor of find that New Vision was a continuation of Rocky Ridge Manor, Inc. and that C.P. Care Associates, LLC was the mere continuation of New Vision).

The same result is warranted here. The totality of the circumstances establish that YesCare and CHS TX are mere continuations of Corizon Health and liable for its debts to Plaintiffs.

**E. The Restructuring Meets the Elements of a De Facto Merger.**

The elements of a de facto merger are: (1) a continuation of management and personnel and general business operations; (2) a continuity of shareholders resulting from the purchasing corporation paying for the assets with shares of its own stock so the selling corporation stockholders become a constituent part of the purchasing corporation; (3) the seller corporation ceasing ordinary business operation and dissolving as soon as possible; and (4) the purchasing corporation assuming those obligations necessary to continue normal, ordinary business operations. *Harashe v. Flintkote Co.*, 848 S.W.2d 506, 509 (Mo. App. E.D. 1993). It is not necessary to find all elements to find a de facto merger. *Id.* ("While the agreement was delineated as a reorganization through a purchase of assets it contained all the elements of a *de facto* merger" thus "W.R. Grace has successor liability for the liabilities of Zonolite").

Here, YesCare and CHS TX have continued on the management, personnel, and business operations of Corizon Health. Corizon Health has ceased its ordinary business operations, and YesCare and CHS TX assumed the obligations necessary to continue the normal, ordinary business

operations. Thus, YesCare and CHS TX were the result of a "de facto merger" with Corizon Health and are liable for Corizon Health's debts under the Agreement.

## III. For the Foregoing Reasons, This Court has Personal Jurisdiction Over All Defendants.

Missouri's long-arm statute authorizes personal jurisdiction over defendants who, *inter alia*, transact business, make a contract, or commit a tort within the state. Mo. Rev. Stat. § 506.500.1. "Missouri courts have interpreted the statute broadly to cover those cases where the Due Process Clause permits the assertion of personal jurisdiction." *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000). At bottom, the question is "whether the assertion of personal jurisdiction would violate the due process clause." *Romak USA, Inc. v. Rick*, 384 F.3d 979, 984 (8th Cir. 2004).

No dispute exists over this Court's jurisdiction over Corizon Health. Corizon Health was the healthcare provider for the MDOC for 29 years, maintaining a regional office in Jefferson City since 1992 to support the contract. Corizon Health contracted with the University of Missouri and Capital Region to provide services in support of its MDOC contract. Corizon Health repeatedly admits this Court has personal jurisdiction over it. Amended Answer ¶¶ 8-9.

YesCare and CHS TX maintain, however, that this Court lacks personal jurisdiction as to them. Not so. Courts have exercised jurisdiction over non-resident defendants-transferees of fraudulent transfers "based on the effects felt by creditors in the creditors' home states." *Nat'l Green Gas, L.L.C. v. Estrategy, Inc.*, 2019 WL 13207472, at *5–6 (W.D. Mo. June 27, 2019) (citing *C.D. Acquisition Holdings, Inc. v. Meinershagen*, 2007 WL 184796, at *4–5 (W.D. Pa. Jan. 22, 2007) ("Where a person or corporation in Tennessee knowingly accepts a fraudulent transfer of assets in Tennessee from a Tennessee judgment debtor, which transfer is intended to defeat a judgment" and "designed to insulate [debtor's] assets from the reach of Pennsylvania creditors

holding a Pennsylvania judgment, [such conduct] could *only* be aimed at Pennsylvania," even if none of defendants' "physical or metaphysical conduct took place in Pennsylvania ....")).

Further, jurisdictional contacts of a corporate predecessor may be imputed to a successor without offending due process; for example, where the transaction was entered into fraudulently to escape liability for the debts of the predecessor corporate (*Koch Supplies, Inc. v. Charles Needham Indus.*, 1990 WL 274485, at *3 (W.D. Mo. Nov. 14, 1990)) or where the successor is "merely a continuation" of its predecessor. *LearSchmidt Inv. Grp., LLC v. AB-Alpine SPE, LLC*, No. 2:19-CV-04053-NKL, 2019 WL 3779521, at *2 (W.D. Mo. Aug. 12, 2019) (citing *Green v. Montgomery Ward & Co.*, 775 S.W.2d 162, 166 (Mo. Ct. App. 1989) ("The rationale for this is quite simple. It would be all too easy for a corporation to immunize itself from liability by utilizing such a device as a change of name.").[231] Here, there is no dispute that Corizon Health had the requisite contacts with the State of Missouri to satisfy Missouri's long-arm statute and due process. Thus, YesCare and CHS TX, as Corizon Health's successors, are likewise subject to this Court's personal jurisdiction. *See, e.g., Stolzenburg v. Biewer Lumber, LLC*, No. 4:14-CV-1533 RLW, 2016 WL 3582032, at *9 (E.D. Mo. June 28, 2016) (denying motion to dismiss Biewer for lack of personal jurisdiction where plaintiff sufficiently alleged claims for alter ego and/or successor liability against Bewier).

[231] Also citing *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 637 (8th Cir. 1975) (explaining that "if the corporation is [the defendant's] alter ego, its contacts are [the defendant's] and due process is satisfied"); *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) ("[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.").

## IV. Plaintiffs Will Suffer Irreparable Harm Absent Provisional Relief.

To demonstrate a sufficient threat of irreparable harm the moving party must show that there is no adequate remedy at law, that is, that an award of damages cannot compensate the movant for the harm. *BancorpSouth Bank*, 2011 WL 529971, at *5 (citing *Noodles Dev.*, 507 F.Supp.2d at 1036–37).

The signs of fraudulent intent described above "render additional transfers even more likely than in the typical case." *See CitiMortgage, Inc.*, 2013 WL 6538680, at *4. If a preliminary injunction is not issued, Defendants will be free to transfer their assets, and could make it difficult, if not impossible, for Plaintiffs to recover at the conclusion of the litigation if Plaintiffs prevail. Plaintiffs will suffer irreparable harm due to the increased difficulty of recovery caused by any additional transfers. *See BancorpSouth Bank*, 2011 WL 529971, at *6 (finding a threat of irreparable harm if the Court failed to enter an injunction where defendants would be otherwise free to create and transfer preferred shares, destroying the control premium associated with owning common stock). Absent provisional relief, efforts to collect a judgment in Plaintiffs' favor "would likely meet the same fate" as Plaintiffs' efforts to collect the amounts owed under the Agreement in the first place. *See CitiMortgage, Inc.*, 2013 WL 6538680, at *4. Thus, the factor of irreparable harm weighs in Plaintiffs' favor. *See id.* (citing *BancorpSouth Bank v. Hall*, 2011 WL 529971, *6 (W.D. Mo. 2011); *Rodriguez v. Lawns of Distinction, Ltd.*, 2008 WL 4552973, *1 (E.D. Mo. 2008)).

## V. The Threat of Irreparable Harm to Plaintiffs Outweighs any Risk of Injury Granting the Injunction Will Inflict on Defendants—so Does the Public Interest.

The threat of irreparable harm to Plaintiffs outweighs any risk to Defendants. Prohibiting Defendants from transferring funds during the pendency of this litigation will leave them in the same position as they are in currently, thus, there is no risk of injury to them. *See BancorpSouth*

*Bank*, 2011 WL 529971, at *6. Further, the public has an interest in ensuring that debtors are not allowed to frustrate legitimate collection efforts by creditors. *BancorpSouth Bank*, 2011 WL 529971, at *6 ("to the degree the public interest will be effected one way or the other, the public interest weighs in favor of issuing the injunction").

**VI. Plaintiffs' Requested Relief.**

Plaintiffs request this Court employ the remedies available to Plaintiffs under Section 428.039.1, including the appointment of a receiver. Section 428.039.1(3)(c) "expressly grants courts the authority to employ the full array of remedial measures insofar as they are warranted under the particular facts of the case." *Volk Const. v. Wilmescherr Drusch Roofing*, 58 S.W.3d 897, 900 (Mo. App. E.D. 2001). Because of the highly unusual and compelling circumstances of this case, including Defendants' history of fraudulent transfers, and the express and complicit participation by all Defendants, Plaintiffs request that a receiver be appointed to take charge and manage Defendants' assets. Section 428.039.1(3)(c) authorizes the appointment of a receiver as an "interim remedy during the pendency of litigation on a fraudulent transfer claim." *Riegel v. Jungerman*, 597 S.W.3d 695, 703 (Mo. App. W.D. 2019) (explaining that prior to the enactment of the Act, Missouri courts recognized that a court could appoint a receiver "during the pendency of litigation where there was a likelihood of dissipation of assets during the pendency of the litigation, and a reasonable likelihood that the plaintiff would succeed on the merits). The power to appoint a receiver is within this court's "sound discretion." *Id.* at 702 (citing *Sangamon Assocs., Ltd. v. Carpenter 1985 Family P'ship, Ltd.*, 165 S.W.3d 141, 146 (Mo. 2005)). At the Court's request, Plaintiffs are prepared to provide a list of proposed receivers.

## CONCLUSION

For the foregoing reasons, Plaintiffs request this Court grant their motion for preliminary injunction, and set a hearing for December 28, 2022, and afford any and all relief as the Court deems just and proper.

Dated: December 20, 2022

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

*/s/ Patrick J. Stueve*

Patrick J. Stueve MO Bar # 37682
Ethan M. Lange MO Bar # 67857
Jordan A. Kane MO Bar # 71028
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
816-714-7100 (p)
816-714-7101 (f)
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

**COUNSEL FOR PLAINTIFFS THE CURATORS OF THE UNIVERSITY OF MISSOURI AND CAPITAL REGION MEDICAL CENTER**