# EXHIBIT 16

**From:** De Julius, Brandon <Brandon.DeJulius@Yescarecorp.com>
**Sent:** Thursday, June 02, 2022 10:07 AM CDT
**To:** Davies, Karen <Karen.Davies@Yescarecorp.com>; Phillips, Vandelyn <Vandelyn.Phillips@Yescarecorp.com>; Koch, Stacie <Stacie.Koch@Yescarecorp.com>; Mitchell, Darrin <Darrin.Mitchell@Yescarecorp.com>; McMillan, Tasha <Latasha.McMillan@Yescarecorp.com>; O'Neal, Maria <Maria.O'Neal@Yescarecorp.com>; Frias, Elmeada <Elmeada.Frias@Yescarecorp.com>
**Subject:** Fwd: Invoicing Talking Points
**Attachment(s):**
"image001.jpg","image002.png","image003.png","image004.jpg","image005.png","image004.jpg","image002.png","AR Billing Contacts.xlsx"

**Brandon E. De Julius, MBA, CCHP-A, SHRM-SCP, FACHE, FHFMA**
EVP & Chief Administrative Officer
Mobile: **856-904-3755** | eFax: **629-333-7383**

**YesCare**
brandon.dejulius@yescarecorp.com

Sr. Executive Assistant: Martha Stanley
Phone: 615-660-6929
E-mail: martha.stanley@yescarecorp.com

*This communication is considered Patient Safety Work Product by YesCare.  Therefore, the information contained herein is confidential and privileged under the Federal Patient Safety and Quality Improvement Act and applicable state peer review laws.  If you are not the intended recipient, any disclosure, copying, distribution or use is prohibited.  If you have received this email in error, please notify the sender by replying to this email, then deleting it and the reply from your mailbox.*

Begin forwarded message:

> **From:** "Lewis, Dafina" <Dafina.Lewis@yescarecorp.com>
> **Date:** June 2, 2022 at 11:02:50 AM EDT
> **To:** "Sholey, Jeff" <Jeff.Sholey@yescarecorp.com>, "De Julius, Brandon" <Brandon.DeJulius@yescarecorp.com>
> **Cc:** "O'Neal, Maria" <Maria.O'Neal@yescarecorp.com>
> **Subject: RE: Invoicing Talking Points**

Here is the contact list by contract.  Please advise if there are questions.

Thanks.
**Dafina Lewis**
Supervisor, Accounts Receivable
Brentwood, TN
615.376.0642

**From:** Lewis, Dafina
**Sent:** Thursday, June 2, 2022 7:55 AM
**To:** Sholey, Jeff <Jeff.Sholey@Yescarecorp.com>; De Julius, Brandon <Brandon.DeJulius@Yescarecorp.com>
**Cc:** O'Neal, Maria <Maria.O'Neal@Yescarecorp.com>
**Subject:** RE: Invoicing Talking Points

Good morning.
I can get a contact list to you shortly of everyone that we send our invoices to.  Also, our payment address is:**CHS TX, Inc., 12464 Collection Center Drive, Chicago, IL  60693**.  All other remittances and documents should go to the Corporate address (CHS TX, Inc., 205 Powell Place – Suite 104, Brentwood, TN  37027).

I am pasting a snippet of an email from Tracy Bartoli that states all contracts are under CHS TX, Inc. and not CHS TX, LLC.

Thank you.
**Dafina Lewis**
Supervisor, Accounts Receivable
Brentwood, TN
615.376.0642

**From:** Sholey, Jeff <Jeff.Sholey@Yescarecorp.com>

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                                              **YESCARE-CHS-00000446**

**Sent:** Wednesday, June 1, 2022 5:46 PM
**To:** De Julius, Brandon <Brandon.DeJulius@Yescarecorp.com>; Lewis, Dafina <Dafina.Lewis@Yescarecorp.com>
**Cc:** O'Neal, Maria <Maria.O'Neal@Yescarecorp.com>
**Subject:** Re: Invoicing Talking Points

Dafina, see question below re the new invoices.

Jeff

Sent from my iPhone

On Jun 1, 2022, at 16:45, De Julius, Brandon <Brandon.DeJulius@yescarecorp.com> wrote:

Jeff?

**Brandon E. De Julius, MBA, CCHP-A, SHRM-SCP, FACHE, FHFMA**
EVP & Chief Administrative Officer
Mobile: **856-904-3755** | eFax: **629-333-7383**
**YesCare**
brandon.dejulius@yescarecorp.com

Sr. Executive Assistant: Martha Stanley
Phone: 615-660-6929
E-mail: martha.stanley@yescarecorp.com

*This communication is considered Patient Safety Work Product by YesCare. Therefore, the information contained herein is confidential and privileged under the Federal Patient Safety and Quality Improvement Act and applicable state peer review laws. If you are not the intended recipient, any disclosure, copying, distribution or use is prohibited. If you have received this email in error, please notify the sender by replying to this email, then deleting it and the reply from your mailbox.*

**From:** O'Neal, Maria <Maria.O'Neal@Yescarecorp.com>
**Sent:** Wednesday, June 1, 2022 5:26 PM
**To:** De Julius, Brandon <Brandon.DeJulius@Yescarecorp.com>
**Subject:** RE: Invoicing Talking Points

And do we have the Full Remit to Address? I need that for Lexington.

**Maria D. O'Neal MHA CCHP**
Vice President of Operations

www.YesCareCorp.com

**Office:** 678.252.8153
**Fax:** 629.333.7395
**Email**: maria.o'neal@yescarecorp.com

**From:** De Julius, Brandon <Brandon.DeJulius@Yescarecorp.com>
**Sent:** Wednesday, June 1, 2022 4:49 PM
**To:** O'Neal, Maria <Maria.O'Neal@Yescarecorp.com>
**Subject:** Re: Invoicing Talking Points

Great idea!

Brenda, can you provide this?

Maria, please disseminate upon receipt.

**Brandon E. De Julius, MBA, CCHP-A, SHRM-SCP, FACHE, FHFMA**
EVP & Chief Administrative Officer
Mobile: **856-904-3755** | eFax: **629-333-7383**
**YesCare**
brandon.dejulius@yescarecorp.com

Sr. Executive Assistant: Martha Stanley
Phone: 615-660-6929
E-mail: martha.stanley@yescarecorp.com

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                                                    **YESCARE-CHS-00000447**

*This communication is considered Patient Safety Work Product by YesCare. Therefore, the information contained herein is confidential and privileged under the Federal Patient Safety and Quality Improvement Act and applicable state peer review laws.  If you are not the intended recipient, any disclosure, copying, distribution or use is prohibited.  If you have received this email in error, please notify the sender by replying to this email, then deleting it and the reply from your mailbox.*

On Jun 1, 2022, at 3:58 PM, O'Neal, Maria <Maria.O'Neal@yescarecorp.com> wrote:

Brandon, quick question,

Is there a way we can also get from Brenda McKee who submits invoices to share their contact list by contract, so we can include then along with our contacts?

Or will the billing department handle that themselves?

**Maria D. O'Neal MHA CCHP**
Vice President of Operations

www.YesCareCorp.com

**Office:** 678.252.8153
**Fax:** 629.333.7395
**Email**: maria.o'neal@yescarecorp.com

---

**From:** De Julius, Brandon <Brandon.DeJulius@Yescarecorp.com>
**Sent:** Wednesday, June 1, 2022 3:22 PM
**To:** O'Neal, Maria <Maria.O'Neal@Yescarecorp.com>; Phillips, Vandelyn <Vandelyn.Phillips@Yescarecorp.com>; Mitchell, Darrin <Darrin.Mitchell@Yescarecorp.com>; McMillan, Tasha <Latasha.McMillan@Yescarecorp.com>; Koch, Stacie <Stacie.Koch@Yescarecorp.com>; Davies, Karen <Karen.Davies@Yescarecorp.com>; Frias, Elmeada <Elmeada.Frias@Yescarecorp.com>
**Subject:** Invoicing Talking Points

Team,

As a follow-up to our conversation yesterday, below are the bullet points to discuss with your clients. Please follow-up with an email with the following information, and please cc me.

As a follow-up to our announcement on our name change:

- YesCare acquired all the active business of Corizon.  As part of this acquisition, your contract with Corizon is now vested with CHS TX, LLC ("CHS"), a wholly owned subsidiary of YesCare.
- There are no operational changes related to this transaction. Staff, P&P, contract structures, etc. will all remain the same.
- Under our new ownership, we are, for the first time, under the ownership of a healthcare corporation- a structure unique in the industry. This affords our re-branded organization with
  - ownership that understands the delivery of healthcare;
  - backing of a large healthcare conglomerate with multitudes of resources for us to leverage; and
  - strong financial and leadership stability.
- To ensure that payments under the contract continue without interruption, we will be providing you with CHS' FEIN (tax id number) and a W-9 form as part of our next invoice. There will be no change in bank account information at this time, however, that may be updated in the future.
- Because CHS was split from Corizon through a merger transaction, your contract has not been assigned or transferred and no other action with respect to the contract is necessary.
- Any future contracts amendments we will want to reflect that CHS is the successor contracting entity because of the merger transaction.
- The full force of our corporate office remains at your service for any additional information or clarification that you may need.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                    **YESCARE-CHS-00000448**

**Brandon E. De Julius, MBA, CCHP-A, SHRM-SCP, FACHE, FHFMA**

EVP & Chief Administrative Officer

Mobile: **856-904-3755** | eFax: **629-333-7383**

**YesCare**

brandon.dejulius@yescarecorp.com

Sr. Executive Assistant: Martha Stanley

Phone: 615-660-6929

E-mail: martha.stanley@yescarecorp.com

*This communication is considered Patient Safety Work Product by YesCare. Therefore, the information contained herein is confidential and privileged under the Federal Patient Safety and Quality Improvement Act and applicable state peer review laws. If you are not the intended recipient, any disclosure, copying, distribution or use is prohibited. If you have received this email in error, please notify the sender by replying to this email, then deleting it and the reply from your mailbox.*

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                    **YESCARE-CHS-00000449**

# EXHIBIT 17

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697

John B. Scott
Secretary of State

## Office of the Secretary of State

February 09, 2022

Attn: CT CORPORATION SYSTEM

CT Corporation System
701 Brazos Street, Ste. 720
Austin, TX 78701 USA

RE: YesCare Corp.
File Number: 804426741

----

It has been our pleasure to file the certificate of formation and issue the enclosed certificate of filing evidencing the existence of the newly created domestic for-profit corporation.

Unless exempted, the entity formed is subject to state tax laws, including franchise tax laws. Shortly, the Comptroller of Public Accounts will be contacting the entity at its registered office for information that will assist the Comptroller in setting up the franchise tax account for the entity. Information about franchise tax, and contact information for the Comptroller's office, is available on their web site at https://window.state.tx.us/taxinfo/franchise/index.html.

The entity formed does not file annual reports with the Secretary of State. Documents will be filed with the Secretary of State if the entity needs to amend one of the provisions in its certificate of formation. It is important for the entity to continuously maintain a registered agent and office in Texas. Failure to maintain an agent or office or file a change to the information in Texas may result in the involuntary termination of the entity.

If we can be of further service at any time, please let us know.

Sincerely,

Corporations Section
Business & Public Filings Division
(512) 463-5555

Enclosure

*Come visit us on the internet at https://www.sos.texas.gov/*

| | | |
|---|---|---|
| Phone: (512) 463-5555 | Fax: (512) 463-5709 | Dial: 7-1-1 for Relay Services |
| Prepared by: Annie Cooper | TID: ███ | Document: 1116160940002 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

YESCARE-CHS-00000001

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697

John B. Scott
Secretary of State

# Office of the Secretary of State

## CERTIFICATE OF FILING
### OF

YesCare Corp.
File Number: 804426741

The undersigned, as Secretary of State of Texas, hereby certifies that a Certificate of Formation for the above named Domestic For-Profit Corporation has been received in this office and has been found to conform to the applicable provisions of law.

ACCORDINGLY, the undersigned, as Secretary of State, and by virtue of the authority vested in the secretary by law, hereby issues this certificate evidencing filing effective on the date shown below.

The issuance of this certificate does not authorize the use of a name in this state in violation of the rights of another under the federal Trademark Act of 1946, the Texas trademark law, the Assumed Business or Professional Name Act, or the common law.

Dated: 01/31/2022

Effective: 01/31/2022



John B. Scott
Secretary of State

*Come visit us on the internet at https://www.sos.texas.gov/*

| | | |
|---|---|---|
| Phone: (512) 463-5555 | Fax: (512) 463-5709 | Dial: 7-1-1 for Relay Services |
| Prepared by: Annie Cooper | TID: ████ | Document: 1116160940002 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

YESCARE-CHS-00000002

Filing#:804426741  Document#:1116160940002  Filed On.1/31/2022 received by Upload

| **Form 201**<br>**(Revised 12/21)**<br><br>Submit in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br><br>**Filing Fee:  $300** | <br>**Certificate of Formation**<br>**For-Profit Corporation** | This space reserved for office use. |
| --- | --- | --- |

## Article 1 – Entity Name and Type

The filing entity being formed is a for-profit corporation.  The name of the entity is:

YesCare Corp.

The name must contain the word "corporation," "company," "incorporated," "limited" or an abbreviation of one of these terms.

## Article 2 – Registered Agent and Registered Office
(See instructions. Select and complete either A or B and complete C.)

☐  A.  The initial registered agent is an organization (cannot be entity named above) by the name of:

**OR**

☑  B.  The initial registered agent is an individual resident of the state whose name is set forth below:

| Sara | | Tirschwell | |
| --- | --- | --- | --- |
| *First Name* | *M.I.* | *Last Name* | *Suffix* |

C.  The business address of the registered agent and the registered office address is:

| 3411 Yoakum Blvd. #2901 | Houston, | TX | 77006 |
| --- | --- | --- | --- |
| *Street Address* | *City* | *State* | *Zip Code* |

## Article 3 – Directors
(A minimum of 1 director is required.)

The number of directors constituting the initial board of directors and the names and addresses of the person or persons who are to serve as directors until the first annual meeting of shareholders or until their successors are elected and qualified are as follows:

| Director 1 | | | | | |
| --- | --- | --- | --- | --- | --- |
| Sara | | Tirschwell | | | |
| *First Name* | *M.I.* | *Last Name* | | | *Suffix* |
| 3411 Yoakum Blvd. #2901 | Houston, | | TX | 77006 | USA |
| *Street or Mailing Address* | *City* | | *State* | *Zip Code* | *Country* |

Form 201                                                                1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

YESCARE-CHS-00000003

| Director 2 | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| *First Name* | | *M.I.* | *Last Name* | | | *Suffix* |
| | | | | | | |
| *Street or Mailing Address* | | *City* | | *State* | *Zip Code* | *Country* |

| Director 3 | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| *First Name* | | *M.I.* | *Last Name* | | | *Suffix* |
| | | | | | | |
| *Street or Mailing Address* | | *City* | | *State* | *Zip Code* | *Country* |

## Article 4 – Authorized Shares

(Provide the number of shares in the space below, then select option A or option B, do not select both.)

The total number of shares the corporation is authorized to issue is: 1,000

☑ A. The par value of each of the authorized shares is: $0.001

**OR**

☐ B. The shares shall have no par value.

If the shares are to be divided into classes, you must set forth the designation of each class, the number of shares of each class, the par value (or statement of no par value), and the preferences, limitations, and relative rights of each class in the space provided for supplemental information on this form.

## Article 5 – Purpose

The purpose for which the corporation is formed is for the transaction of any and all lawful business for which a for-profit corporation may be organized under the Texas Business Organizations Code.

## Initial Mailing Address

(Provide the mailing address to which state franchise tax correspondence should be sent.)

| 3411 Yoakum Blvd. #2901 | Houston, | | TX | 77006 | USA |
|---|---|---|---|---|---|
| *Mailing Address* | *City* | | *State* | *Zip Code* | *Country* |

## Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

Form 201

2

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    YESCARE-CHS-00000004

## Organizer

The name and address of the organizer:

Sara Tirschwell
_____
*Name*

| 3411 Yoakum Blvd. #2901 | Houston, | TX | 77006 |
|---|---|---|---|
| *Street or Mailing Address* | *City* | *State* | *Zip Code* |

## Effectiveness of Filing (Select either A, B, or C.)

A. ☑ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

_____

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned also affirms that, to the best knowledge of the undersigned, the name provided as the name of the filing entity does not falsely imply an affiliation with a governmental entity. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized to execute the filing instrument.

Date:  _____January 26, 2022_____

/s/ Sara Tirschwell
_____
Signature of organizer

Sara Tirschwell
_____
Printed or typed name of organizer

Form 201          3

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**      **YESCARE-CHS-00000005**

# EXHIBIT 18



**Presentation to Board of Directors**

# Corizon Health, Inc.

## Fairness Analysis Pertaining To The Proposed Transaction

**CONFIDENTIAL DISCUSSION DRAFT**



FTI Capital Advisors, LLC is a member of FINRA/SIPC.

May 1, 2022

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**YESCARE-CHS-00000383**



# Certain Disclosures and Other Considerations

This presentation, any supplemental information or documents provided herewith and any attendant oral commentary (collectively, this "Presentation") (i) have been prepared for discussion purposes only by FTI Capital Advisors, LLC ("FTICA"), (ii) are intended solely for use by the Board of Directors (the "Board") of Corizon Health, Inc. ("Corizon" or the "Company"), in connection with the proposed transaction through a series of steps described herein. FTICA has been engaged to render an opinion ("Opinion") in connection with the Company's entry into a divisional merger transaction under Texas law with its direct parent, Valitás Health Services, Inc. ("Valitás") that would separate the Company into two distinct entities ("Proposed Transaction"). This presentation should not be used, considered or relied upon for any other purpose or in connection with any other matter. It is understood that the Opinion and any other advice rendered by FTICA hereunder is solely for the information of the Board (or committee thereof, and not its shareholders, creditors, customers, suppliers, lenders or any other person or entity) in connection with its evaluation of the Proposed Transaction and may not be used for any other purpose without FTICA's prior written consent or as otherwise provided for in the engagement letter between FTICA and the Company dated February 8, 2022 (the "Engagement Letter"). This Presentation is qualified in its entirety by the terms, conditions, limitations, qualifications and disclosures set forth in the Engagement Letter and the Fairness Opinion Letter ("Fairness Opinion Letter") delivered in connection herewith.

Any written materials which comprise this Presentation are incomplete without reference to the attendant oral commentary by FTICA in connection herewith. In the event of any inconsistency between the materials set forth in this Presentation and the matters, disclosures, qualifications or limitations set forth in the Fairness Opinion Letter, the latter shall prevail in each instance. Capitalized terms used herein and not defined shall have the meanings ascribed to them in the Fairness Opinion letter. This Presentation is confidential and proprietary and, without the prior written consent of FTICA or as otherwise provided for in the Engagement Letter, may not be reproduced, disseminated, quoted from or referred to, in whole or in part, at any time, in any manner or for any purpose. This Presentation was not prepared with a view to public disclosure or filing, or to confirm with any disclosure standards, under any U.S. or foreign securities law. If you are not the intended recipient of this Presentation, please immediately delete and destroy all copies in your possession.

2

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                                                                                                                      YESCARE-CHS-00000384



# Certain Disclosures and Other Considerations

The industry, business, financial, legal, regulatory, tax, accounting, actuarial and other information (including, without limitation, any financial projections, other estimates and/or other forward-looking information) (collectively, the "Information" and, specifically with respect to the foregoing parenthetical, the "Forward-Looking Information") contained in or otherwise underlying this Presentation was provided to or discussed with FTICA by (a) senior management of Corizon ("Management") and/or (b) obtained by FTICA from publicly available sources and data suppliers. In preparing this Presentation, FTICA (i) has relied upon and assumed the accuracy, completeness and fair presentation of all such Information (including, without limitation, any Forward-Looking Information), (ii) does not assume any responsibility, obligation or liability (whether direct or indirect, in contract or tort or otherwise) for the accuracy, completeness, reasonableness, achievability or independent verification of, and FTICA has not independently verified, any such Information (including, without limitation, any Forward-Looking Information), (iii) has relied upon the assurances of Management that they are unaware of any facts or circumstances that would make any such Information (including, without limitation, any Forward-Looking Information) incomplete, inaccurate or misleading in any material respect, and (iv) has not performed or obtained any independent appraisal of the assets or liabilities (including any contingent, derivative or off-balance sheet assets and liabilities) of the Company or of the parties to the Proposed Transaction or the entities that may be formed in connection with such transactions, or been provided with any such appraisals. All information, unless specified otherwise, is consolidated information of (A) the Company and its subsidiaries (B) NewCo (as defined herein) and its subsidiaries, or (C) RemainCo (as defined herein) and its subsidiaries (as applicable) and all references to the Company, NewCo or RemainCo include their respective subsidiaries.

Specifically, with respect to all (i) Forward-Looking Information provided to or discussed with FTICA by the Company, FTICA (a) has assumed that such Forward-Looking Information has been reasonably prepared on the bases of reflecting the best currently available estimates and judgments of Management, as the case may be, as to the expected future performance of the Company and (b) has not independently verified and expresses no view, opinion, representation, guaranty or warranty (in each case, express or implied) regarding the reasonableness or achievability of such Forward-Looking Information and (c) has assumed that the financial results reflected in such Forward Looking Information will be achieved at the time and in the amounts projected, (ii) Information obtained by FTICA from public sources and data suppliers, FTICA has assumed that such Information is reasonable and reliable.

In connection with this Presentation, FTICA expresses no view or opinion as to the advisability of consummating the Proposed Transaction. This Presentation does not (i) constitute a recommendation to the Company or the Board in connection with any transaction or (ii) address (a) Company's underlying business or financial decision to pursue any transaction. This Presentation has been prepared and submitted to the Company as of the date on the cover of this Presentation, reflects Information made available to FTICA as of or prior to such date and is based on economic, capital markets and other conditions as of such date.

3

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                                                                YESCARE-CHS-00000385



# Limiting Factors and Assumptions

In accordance with recognized professional ethics, FTICA's fee for its engagement with the Company is not contingent upon the results set forth in this presentation or the Opinion and conclusions we may reach. Further, the FTICA professionals providing services hereunder do not have a present or intended financial interest in the Company.

All analyses contained herein (the "Analyses") and methodologies are predicated on numerous assumptions pertaining to prospective economic and operating conditions. This Presentation is necessarily based on business, general economic, market and other conditions as they exist and can be reasonably evaluated by FTICA as of the date hereof. Subsequent events that could affect the information set forth in this Presentation include adverse changes in industry performance or conditions and changes to the business, financial condition and results of operations of one or more of the Company's business activities. FTICA makes no representation regarding the achievability of any forecasts, projections or other forward-looking matters. Unanticipated events and circumstances may occur and actual results may vary from those assumed. The variations may be material.

The Analyses set forth in this Presentation reflect analytic approaches that FTICA considered appropriate under the circumstances, and represent the Analyses of FTICA based upon information furnished by the Company (including third parties on behalf of the Company) and publicly available sources. FTICA has relied upon the Company's (i) representations that the information provided by it, or on their behalf, is accurate and complete in all material respects, and (ii) agreement to notify us if the Company learns of any material misstatement in, or material omission from, any information previously delivered to FTICA. In each case, FTICA makes no representations regarding the accuracy or completeness of the information provided by the Company (including third parties on behalf of the Company). While all public information (including industry and statistical information) was obtained from sources FTICA believes to be reliable, FTICA makes no representation as to the accuracy or completeness thereof, and has relied upon such public information and all information provided by, or on behalf of the Company without independent verification.

Several analytical methodologies have been employed herein and no one method of analysis should be regarded as critical to the overall conclusion FTICA has reached. Each analytical technique has inherent strengths and weaknesses, and the nature of the available information may further affect the value of particular techniques. FTICA's conclusions are based on all the analyses and factors presented taken as a whole and also on application of our experience and judgement. Such conclusions may involve significant elements of subjective judgement and qualitative analysis. FTICA therefore gives no opinion as to the value or merit standing alone of any one or more parts of the material that follows. FTICA's only opinion shall be as delivered to you orally and confirmed in the Fairness Opinion Letter, as and when the same shall be signed and delivered to you.

4

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                    YESCARE-CHS-00000386



# Limiting Factors and Assumptions

While FTICA is frequently engaged to render transaction, collateral value, tax and other financial reporting opinions to its clients, including ASC 820 fair value opinions, purchase price allocation opinions, goodwill impairment opinions and equity-based incentive opinions, FTICA was not engaged to render any such opinions (or perform any supplemental due diligence and/or analyses that might be customary in connection with such opinions) in connection with this Presentation. As such, the form of this Presentation and/or its analytic output portrayed herein is not appropriate for any such transaction, tax and/or financial reporting purposes.

For purposes of this Presentation, FTICA assumed that the Company has complied and will comply with all applicable national federal, state and local regulations and laws, unless the lack of compliance is specifically noted herein.

Except to the extent specifically disclosed in writing to FTICA, this Presentation also assumes that (i) Management would maintain or enhance the character and integrity of the Company's operations subsequent to the Proposed Transaction and (ii) Company has no undisclosed (a) material contingent assets or liabilities, (b) the Company has no unusual obligations or substantial commitments, other than those incurred in the ordinary course of business, and (c) there is no pending or threatened litigation that would have a material adverse effect on the Company.

This Presentation is for the benefit of the Board to assist with its decision making in connection with the Proposed Transaction.  Except as expressly provided for in the Engagement Letter, FTICA is under no obligation to update, revise or reaffirm this Presentation after the closing of any transaction. Further, FTICA is not required to render any future services regarding the subject matter of this Presentation, except to the extent expressly set forth in our engagement letter with the Company.

This Presentation is intended for the sole use of the addressee, solely for the purpose stated, and may not be relied upon by any other person or for any other purpose without FTICA's prior written consent or as otherwise provided for in the Engagement Letter.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                                                    YESCARE-CHS-00000387



# Table of Contents

| | |
|---|---|
| Engagement & Transaction Overview | 7 |
| Fairness Analysis | 16 |

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**YESCARE-CHS-00000388**

# Engagement & Transaction Overview



FTI Capital Advisors, LLC is a member of FINRA/SIPC.

7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

YESCARE-CHS-00000389



# Engagement and Transaction Overview

## Background

■ On February 8, 2022, FTICA was engaged as an independent financial advisor to the Board to provide certain analyses and render an Opinion in connection with the Proposed Transaction (as defined below). The Proposed Transaction is being analyzed as if it were to close on February 28, 2022 (the "Valuation Date").

■ We understand that the Company is pursuing a divisional merger and related transactions ("Proposed Transaction") that would separate the Company into two distinct entities.  Specifically, we understand that the Proposed Transaction involves the Company's entry into a divisional merger transaction under Texas law with its direct parent, Valitás Health Services, Inc. ("Valitás") and certain subsidiaries, which will result in a surviving corporation and a newly formed corporation ("NewCo"). Related to the completion of the Proposed Transaction, NewCo is:

— being vested with all assets used in, or necessary to, the service of any active and unexpired customer contracts (with the exception of substantially all vendor contracts to which the Company or any of its subsidiaries is a party);

— being vested with all liabilities and obligations to unsecured creditors in connection with such assets, including, but not limited to, all costs, expenses and liabilities in connection with such active customer contracts (e.g., medical malpractice and other litigation claims (whether or not such claims have yet been asserted)), but excluding the trade payables related to trade contracts not being vested in NewCo; and

— assuming all obligations under the senior secured credit facilities provided to the Company pursuant to that certain Third Amended and Restated Credit Agreement dated as of August 17, 2020 (as amended, amended and restated, or otherwise modified from time to time, the "Existing Indebtedness").

— extinguishing obligations under those certain Senior Promissory Notes issued by the Company, dated as of June 26, 2020 prior to the completion of the Proposed Transaction.

8

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER



# Engagement and Transaction Overview (Continued)

## Background (Continued)

- As a result of the Proposed Transaction, the entity that survives the merger will be referred to herein as "RemainCo", and shall:
  - retain specifically enumerated assets that will be scheduled and that include, but are not limited to, a funding agreement with M2 LoanCo, all contracts that have expired or terminated to which the Company or Valitás is a party, substantially all vendor contracts to which the Company or its subsidiaries are a party, and the rights to make claims on any and all of the Company's and Valitás's medical malpractice, general liability or errors and omissions insurance policies solely to the extent such claims relate to liabilities vested in RemainCo, including medical malpractice and other litigation claims in connection with such former contracts;
  - retain all liabilities and obligations to RemainCo Unsecured Creditors 9as defined below) in connection with the foregoing assets, including, but not limited to, all costs, expenses and liabilities in connection with such former contracts (e.g., claims of trade creditors and medical malpractice and other litigation claims (whether or not such claims have yet been asserted)) and liabilities with respect to certain terminated employees of the Company; and
  - have no liability under or in connection with the Existing Indebtedness.
- FTICA have been requested by members of the Board to render our opinion to it as to the fairness of the Proposed Transaction, from a financial point of view, to the unsecured creditors of RemainCo ("RemainCo Unsecured Creditors"), as compared to a scenario in which the Proposed Transaction does not occur and instead there is a restructuring of the Company, whether in or out of court (a "Restructuring").
- Pages 10 and 11 illustrate the organizational structure of the Company prior to and giving effect to the Proposed Transaction.
- Upon completion of the Proposed Transaction, following the divisional merger transaction, NewCo will be sold to YesCare Corp. This step is ***not*** subject to our Opinion. Appendix 3 illustrates the Proposed Transaction, and the additional steps subsequent to the transaction that are ***not*** subject to this Opinion.

9

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                  YESCARE-CHS-00000391



# Engagement and Transaction Overview (Continued)

## Pre-Transaction Organizational Structure



Footnotes:
(1) M2LoanCo has no operations but does hold the receivable side of the Term Loan obligation that is on the books of Valitas;.
(2) Entities marked * will "check the box" and be treated as corporation for Federal tax purposes;
(3) Entities shaded in Green indicate active operating entities; and

10

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

YESCARE-CHS-00000392



# Engagement and Transaction Overview (Continued)

## Post-Transaction Organizational Structure

**M2 HoldCo, LLC***
a Florida limited liability company
FEIN: ▮▮▮▮▮▮▮

**M2 LoanCo, LLC**
a Florida limited liability company
FEIN: ▮▮▮▮▮▮▮

**M2 EquityCo, LLC**
a Florida limited liability company
FEIN: ▮▮▮▮▮▮▮

**Valitás Intermediate Holdings, Inc.**
a Delaware corporation
FEIN: ▮▮▮▮▮▮▮
(50.1% Membership in Pharmacorr M2, LLC)

**NewCo** ☆

**RemainCo**

**See Appendix 2 for M2 Pharmacorr Equity Holdings, LLC Organizational Structure**

**Corizon Health of New Mexico, LLC**
a New Mexico limited liability company
FEIN: ▮▮▮▮▮▮▮

**See Appendix 2 for Inactive Subsidiaries of NewCo**

*Footnotes:*
*(1)  M2LoanCo has no operations but does hold the receivable side of the Term Loan obligation that is on the books of Valitas;.*
*(2)  Entities marked \* will "check the box" and be treated as corporation for Federal tax purposes;*
*(3)  Entities shaded in Green indicate active operating entities; and*
*(4) ☆ Immediately following the completion of the divisional merger, NewCo will be sold. The sale transaction is not subject to the Proposed Transaction and fairness considered herein.*

11

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

YESCARE-CHS-00000393



# FTI Relied Upon Information Obtained from the Company's Management

## Due Diligence Overview

In arriving at our Opinion, FTI reviewed and analyzed, among other things:

- Third Amended and Restated Credit Agreement dated as of August 17, 2020;

- Recent historical financial information of the Company, including (i) the Company's financial statements for the fiscal years ended December 31, 2018 through December 31, 2021;

- Certain internal financial analyses and forecast for the Company for the fiscal years ending December 31, 2022 through December 31, 2026 prepared by management of the Company (the "Forecast");

- A listing of the Identified Contingent Liabilities of the Company as of the date hereof;

- A balance sheet of the Company and RemainCo immediately before and after giving effect to the consummation of the Transaction;

- A draft of the letter from management of the Company to FTICA containing certain representations, including but not limited to representations as to historical financial statements, financial projections and their underlying assumptions, the pro forma schedule of assets and liabilities of each of the Company and of RemainCo immediately before and after giving effect to the consummation of the Transaction and obligations of the Company under existing credit agreements (the "Management Representation Letter");

- Details provided by Management related to the funding agreement to RemainCo by M2LoanCo ("Funding Agreement"), including that $15 million of total funding will be made available, $11 million of which will be exclusively available and utilized to satisfy obligations to the unsecured creditors of RemainCo that were unsecured creditors of Corizon, LLC prior to the Proposed Transaction; and

- A memorandum from White & Case LLP to the Board of Directors of the Company and Valitás, which summarizes the existing indebtedness and the collateral securing such indebtedness.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**YESCARE-CHS-00000394**



# Company Financial Overview – Balance Sheet

***RemainCo and NewCo Balance Sheets does not reflect adjustments necessary for US GAAP compliance***

| | Historical (1) As of February 28, 2022 | | | | | Historical (1) As of Feb 28, 2022 |
|---|---|---|---|---|---|---|
| | Total | Less: PharmaCorr and Endeavor | VHS | NewCo Existing Contracts | RemainCo Inactive Contracts | Corizon LLC |
| **Assets** | | | | | | |
| Current Assets: | | | | | | |
| Cash and cash equivalents | 32,163 | (0) | 32,163 | 31,163 | 1,000 | 22,313 |
| Cash payables | | | | | | (451) |
| Trade receivables, less allowance | 41,013 | (1,326) | 39,687 | 32,759 | 6,928 | 8,033 |
| Other receivables | 1,020 | (794) | 226 | 218 | 8 | 36 |
| Prepaid expenses and other current assets | 6,139 | (264) | 5,875 | 5,790 | 85 | (20) |
| Inventories | 4,103 | (2,218) | 1,885 | 1,885 | 0 | 89 |
| Deferred income taxes | 27,248 | 71 | 27,319 | 27,248 | 71 | - |
| Total Current Assets | 111,686 | (4,532) | 107,153 | 99,062 | 8,091 | 30,000 |
| | | | | | | |
| Non-Current Assets: | | | | | | |
| Property and equipment, net | 5,757 | (3,058) | 2,699 | 2,699 | 0 | 68 |
| Goodwill | 159,223 | - | 159,223 | - | 159,223 | (0) |
| Contract rights, net | 24,776 | - | 24,776 | - | 24,776 | - |
| Other intangibles, net | 8,752 | - | 8,752 | - | 8,752 | - |
| Deferred income taxes | (4,615) | - | (4,615) | (4,615) | - | - |
| Insurance recovery | 29,504 | - | 29,504 | 2,500 | 27,004 | 5,761 |
| Other assets | 9,380 | (4) | 9,376 | 17,855 | (8,479) | - |
| **Total Assets** | **344,463** | **(7,594)** | **336,869** | **117,502** | **219,367** | **35,829** |
| | | | | | | |
| **Liabilities & Stockholders' Equity** | | | | | | |
| Current Liabilities: | | | | | | |
| Accounts payable | 50,280 | (60) | 50,221 | (6,522) | 56,742 | 31,990 |
| Medical claims payable | 43,171 | (2) | 43,170 | 21,875 | 21,294 | 6,499 |
| Accrued payroll and related expenses | 28,783 | (241) | 28,541 | 15,726 | 12,815 | 8,233 |
| Accrued insurance | 1,912 | - | 1,912 | 1,912 | - | - |
| Deferred income | 573 | - | 573 | 573 | - | - |
| Other accrued expenses | 23,672 | (181) | 23,491 | 4,538 | 18,953 | 8,997 |
| Total Current Liabilities | 148,392 | (484) | 147,908 | 38,103 | 109,805 | 55,719 |
| | | | | | | |
| Non-Current Liabilities: | | | | | | |
| Professional liability claim reserves | 90,809 | - | 90,809 | 22,000 | 68,809 | 50,874 |
| Worker's compensation claim reserves | 147 | - | 147 | 147 | - | 147 |
| Other noncurrent liabilities | 1,214 | (5,641) | (4,427) | (5,641) | 1,214 | (51,814) |
| Deferred income taxes | 14,191 | - | 14,191 | 14,191 | - | - |
| Intercompany Note Payable | | | | | | 22,313 |
| Long-term debt | 97,878 | - | 97,878 | 97,878 | - | 92,378 |
| Total Liabilities | 352,631 | (6,125) | 346,506 | 166,678 | 179,828 | 169,616 |
| | | | | | | |
| Stockholders' Equity: | | | | | | |
| Common stock | 39,943 | - | 39,943 | | | |
| Retained earnings | (48,111) | (1,469) | (49,580) | | | |
| Total shareholder's equity (deficit) | (8,168) | (1,469) | (9,637) | (49,176) | 39,539 | (133,787) |
| **Total Liabilities & Stockholders' Equity** | **344,463** | **(7,594)** | **336,869** | **117,502** | **219,367** | **35,829** |

- **All assets of VHS and its subsidiaries that are loan parties under the Existing Indebtedness are encumbered under the terms of the senior secured credit facility, *except the cash held at subsidiary Corizon, LLC***

- **The lenders security interest in this cash balance of $22.3 million is not perfected and is assumed to be available to unsecured creditors of Corizon, LLC in a Restructuring**

13

*Footnotes:*
*(1)    Based on information provided by Management.*

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

YESCARE-CHS-00000395



# Company Financial Overview – Historical and Projected Financial Information Levered Basis

| | Historical (1) | | | Historical (1) LTM | Projected (1) 12 months ending December 31, | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 2018 | 2019 | 2020 | 12/31/2021 | 2022 | 2023 | 2024 | 2025 | 2026 |
| Revenue | 792,090 | 804,545 | 710,772 | 596,256 | 321,929 | 331,624 | 342,114 | 352,266 | 362,748 |
| Less: Staffing and Related Expenses | | | | | (211,394) | (217,644) | (224,496) | (231,800) | (239,375) |
| Less: Offsite and Diagnostic Expenses | | | | | (43,042) | (44,218) | (45,428) | (46,673) | (47,951) |
| Less: Pharmacy Expenses | | | | | (19,725) | (20,595) | (21,509) | (22,468) | (23,474) |
| Less: Malpractice Related Expenses | | | | | (8,482) | (8,746) | (9,019) | (9,304) | (9,599) |
| Less: Medical Supplies and Other Expenses | | | | | (14,321) | (14,592) | (14,870) | (15,158) | (15,285) |
| Total Healthcare Related Expenses | (734,484) | (759,087) | (662,451) | (562,568) | (296,965) | (305,796) | (315,323) | (325,402) | (335,683) |
| Gross Profit | 57,606 | 45,458 | 48,321 | 33,688 | 24,964 | 25,828 | 26,791 | 26,864 | 27,065 |
| *Gross Margin* | *7.3%* | *5.7%* | *6.8%* | *5.6%* | *7.8%* | *7.8%* | *7.8%* | *7.6%* | *7.5%* |
| Less: SG&A Expenses | (41,789) | (39,207) | (40,009) | (34,069) | (20,625) | (21,244) | (21,881) | (22,537) | (23,214) |
| Less: Depreciation Expense | (14,105) | (11,856) | (10,027) | (7,005) | (800) | (800) | (800) | (800) | (800) |
| Less: Non-recurring Expenses (2) | (11,174) | (6,904) | (18,959) | (10,233) | - | - | - | - | - |
| EBIT | (9,462) | (12,509) | (20,674) | (17,619) | 3,539 | 3,785 | 4,110 | 3,527 | 3,051 |
| *EBIT Margin* | *-1.2%* | *-1.6%* | *-2.9%* | *-3.0%* | *1.1%* | *1.1%* | *1.2%* | *1.0%* | *0.8%* |
| Less: Interest Expense, Net | (21,162) | (12,865) | (14,208) | (13,140) | (14,088) | (14,088) | (14,088) | (14,088) | (14,088) |
| Less/ Add: Other Expense/ Income | (17,451) | (38,101) | - | - | - | - | - | - | - |
| Pre-tax Income | (48,075) | (63,475) | (34,882) | (30,759) | (10,548) | (10,303) | (9,978) | (10,561) | (11,036) |
| Less: Provision for Income Taxes | 1,327 | (466) | (268) | 8,305 | 2,826 | 2,760 | 2,673 | 2,829 | 2,957 |
| Net Income | (46,748) | (63,941) | (35,150) | (22,454) | (7,722) | (7,543) | (7,305) | (7,732) | (8,080) |
| *Net Margin* | *-5.9%* | *-7.9%* | *-4.9%* | *-3.8%* | *-2.4%* | *-2.3%* | *-2.1%* | *-2.2%* | *-2.2%* |
| Less: Capital Expenditures | (4,701) | (3,847) | (970) | | (700) | (700) | (700) | (700) | (700) |
| Less: Working Capital Requirements | | | | | (67,135) | (19,975) | (20,777) | (13,242) | (13,396) |
| Add: Depreciation and Amortization | 14,105 | 11,856 | 10,027 | 7,005 | 800 | 800 | 800 | 800 | 800 |
| Cash Flow - Levered | | | | | (74,757) | (27,418) | (27,982) | (20,874) | (21,376) |
| EBITDA | 4,643 | (653) | (10,647) | (10,614) | 4,339 | 4,585 | 4,910 | 4,327 | 3,851 |
| *EBITDA Margin* | *0.6%* | *-0.1%* | *-1.5%* | *-1.8%* | *1.3%* | *1.4%* | *1.4%* | *1.2%* | *1.1%* |
| Adjusted EBIT (3) | 1,712 | (5,605) | (1,715) | (7,386) | 3,539 | 3,785 | 4,110 | 3,527 | 3,051 |
| *Adjusted EBIT Margin* | *0.2%* | *-0.7%* | *-0.2%* | *-1.2%* | *1.1%* | *1.1%* | *1.2%* | *1.0%* | *0.8%* |
| Adjusted EBITDA (3) | 15,817 | 6,251 | 8,312 | (381) | 4,339 | 4,585 | 4,910 | 4,327 | 3,851 |
| *Adjusted EBITDA Margin* | *2.0%* | *0.8%* | *1.2%* | *-0.1%* | *1.3%* | *1.4%* | *1.4%* | *1.2%* | *1.1%* |

Footnotes:
(1)   Based on information provided by Management;
(2)   Comprises of non-recurring corporate restructuring and related expenses and board of director fees; and
(3)   Adjustments to historical EBIT and EBITDA accounts for non-recurring expenses.

14

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

YESCARE-CHS-00000396



# Company Financial Overview – Historical and Projected Financial Information Unlevered Basis

| | Historical (1) | | | Historical (1) LTM | Projected (1) 12 months ending December 31, | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 2018 | 2019 | 2020 | 12/31/2021 | 2022 | 2023 | 2024 | 2025 | 2026 |
| **Revenue** | 792,090 | 804,545 | 710,772 | 596,256 | 321,929 | 331,624 | 342,114 | 352,266 | 362,748 |
| Less: Staffing and Related Expenses | | | | | (211,394) | (217,644) | (224,496) | (231,800) | (239,375) |
| Less: Offsite and Diagnostic Expenses | | | | | (43,042) | (44,218) | (45,428) | (46,673) | (47,951) |
| Less: Pharmacy Expenses | | | | | (19,725) | (20,595) | (21,509) | (22,468) | (23,474) |
| Less: Malpractice Related Expenses | | | | | (8,482) | (8,746) | (9,019) | (9,304) | (9,599) |
| Less: Medical Supplies and Other Expenses | | | | | (14,321) | (14,592) | (14,870) | (15,158) | (15,285) |
| Total Healthcare Related Expenses | (734,484) | (759,087) | (662,451) | (562,568) | (296,965) | (305,796) | (315,323) | (325,402) | (335,683) |
| Gross Profit | 57,606 | 45,458 | 48,321 | 33,688 | 24,964 | 25,828 | 26,791 | 26,864 | 27,065 |
| *Gross Margin* | *7.3%* | *5.7%* | *6.8%* | *5.6%* | *7.8%* | *7.8%* | *7.8%* | *7.6%* | *7.5%* |
| Less: SG&A Expenses | (41,789) | (39,207) | (40,009) | (34,069) | (20,625) | (21,244) | (21,881) | (22,537) | (23,214) |
| Less: Depreciation Expense | (14,105) | (11,856) | (10,027) | (7,005) | (800) | (800) | (800) | (800) | (800) |
| Less: Non-recurring Expenses (2) | (11,174) | (6,904) | (18,959) | (10,233) | - | - | - | - | - |
| **EBIT** | **(9,462)** | **(12,509)** | **(20,674)** | **(17,619)** | **3,539** | **3,785** | **4,110** | **3,527** | **3,051** |
| *EBIT Margin* | *-1.2%* | *-1.6%* | *-2.9%* | *-3.0%* | *1.1%* | *1.1%* | *1.2%* | *1.0%* | *0.8%* |
| Less: Interest Expense, Net | (21,162) | (12,865) | (14,208) | (13,140) | - | - | - | - | - |
| Less/ Add: Other Expense/ Income | (17,451) | (38,101) | - | - | - | - | - | - | - |
| **Pre-tax Income** | **(48,075)** | **(63,475)** | **(34,882)** | **(30,759)** | **3,539** | **3,785** | **4,110** | **3,527** | **3,051** |
| Less: Provision for Income Taxes | 1,327 | (466) | (268) | 8,305 | (948) | (1,014) | (1,101) | (945) | (817) |
| **Net Income** | **(46,748)** | **(63,941)** | **(35,150)** | **(22,454)** | **2,591** | **2,771** | **3,009** | **2,582** | **2,234** |
| *Net Margin* | *-5.9%* | *-7.9%* | *-4.9%* | *-3.8%* | *0.8%* | *0.8%* | *0.9%* | *0.7%* | *0.6%* |
| Less: Capital Expenditures | (4,701) | (3,847) | (970) | | (700) | (700) | (700) | (700) | (700) |
| Less: Working Capital Requirements | | | | | (67,135) | (19,975) | (20,777) | (13,242) | (13,396) |
| Add: Depreciation and Amortization | 14,105 | 11,856 | 10,027 | 7,005 | 800 | 800 | 800 | 800 | 800 |
| **Cash Flow - Unlevered** | | | | | **(64,444)** | **(17,104)** | **(17,668)** | **(10,560)** | **(11,062)** |
| **EBITDA** | **4,643** | **(653)** | **(10,647)** | **(10,614)** | **4,339** | **4,585** | **4,910** | **4,327** | **3,851** |
| *EBITDA Margin* | *0.6%* | *-0.1%* | *-1.5%* | *-1.8%* | *1.3%* | *1.4%* | *1.4%* | *1.2%* | *1.1%* |
| **Adjusted EBIT (3)** | **1,712** | **(5,605)** | **(1,715)** | **(7,386)** | **3,539** | **3,785** | **4,110** | **3,527** | **3,051** |
| *Adjusted EBIT Margin* | *0.2%* | *-0.7%* | *-0.2%* | *-1.2%* | *1.1%* | *1.1%* | *1.2%* | *1.0%* | *0.8%* |
| **Adjusted EBITDA (3)** | **15,817** | **6,251** | **8,312** | **(381)** | **4,339** | **4,585** | **4,910** | **4,327** | **3,851** |
| *Adjusted EBITDA Margin* | *2.0%* | *0.8%* | *1.2%* | *-0.1%* | *1.3%* | *1.4%* | *1.4%* | *1.2%* | *1.1%* |

*Footnotes:*
*(1)    Based on information provided by Management;*
*(2)    Comprises of non-recurring corporate restructuring and related expenses and board of director fees; and*
*(3)    Adjustments to historical EBIT and EBITDA accounts for non-recurring expenses.*

15

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

# Fairness Analysis



FTI Capital Advisors, LLC is a member of FINRA/SIPC.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**YESCARE-CHS-00000398**



# Analytics Summary

> **Based on the analysis presented herein, the Proposed Transaction is fair from a financial point of view to the RemainCo Unsecured Creditors**

- The Company as it exists today does not generate sufficient cash to service its interest-bearing debt obligations (see page 14). Following a restructuring of its balance sheet, if the Company were to right-size its debt obligations to bridge working capital shortfalls arising from ordinary business operations, the Company would still generate insufficient cash (see page 15) to cover its interest-bearing debt. Given this, the Company as it exists today, and as it exists on a restructured debt-basis does not represent a going concern capable of generating free cashflow to equity holders which would allow for a determination of the Company's equity value. Based on FTICA's assessment of the Company's business, and consideration of the markets in which the Company operates, FTICA determined a prospective sale of the Company as unquantifiable and speculative.  Accordingly, FTICA analyzed a potential liquidation recoveries in a Restructuring and compared that to the assets available to the RemainCo Unsecured Creditors under the Proposed Transaction.

- Based on a restructuring analysis of the existing Company:
  - At Corizon, LLC, there is $22.3 million of cash as to which the security interests that secure the Existing Indebtedness are not perfected, and in the event of a bankruptcy filing these funds would be available to all secured and unsecured creditors of that entity (the "Corizon, LLC Unsecured Creditors"), including any deficiency claim by holders of the secured debt; and
    - This assumes that unsecured creditors are successful in challenging the liens on the cash account which is not subject to a deposit account control agreement.  If unsecured creditors of Corizon, LLC were not successful in that challenge, then they would receive no value in a restructuring scenario.
  - There are no other unencumbered assets at the Company or any of its affiliates that is a loan party under the Existing Indebtedness and therefore there would be no other value available to unsecured creditors of those entities because the secured debt owed is in excess of recoverable value.

- Based on the assets and liabilities of RemainCo:
  - There is value available to Corizon, LLC Unsecured Creditors through cash on hand and under the Funding Agreement is in excess of what would be available if the Company were subject to a Restructuring; and
  - Any value available for RemainCo Unsecured Creditors that are not Corizon, LLC Unsecured Creditors would, under the Proposed Transaction, be equal to or greater than the value those creditors would receive if the Company were to be subject to a Restructuring (in which there would be no value for these creditors).

- Therefore, the Proposed Transaction appears to be fair from a financial point of view to the RemainCo Unsecured Creditors.

17

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**YESCARE-CHS-00000399**



# Analytics Summary (continued)

> **Based on the analysis presented herein, the Proposed Transaction is fair from a financial point of view to the RemainCo Unsecured Creditors**

### Corizon, LLC - Restructuring Analysis (Liquidation)

| ($ in thousands) | Low | High |
|---|---|---|
| Liquidation Value of Assets | $ 2,237 | $ 5,482 |
| Less: Wind-down Expenses to Secured Creditors | (1,006) | (142) |
| Amount Available for Secured Debt | $ 1,231 | $ 5,340 |
| Total Secured Debt | 92,378 | 92,378 |
| Total Secured Debt Recovery | $ 1,231 | $ 5,340 |
| Unencumbered Cash Avail. for Unsec. Creditors | 22,313 | 22,313 |
| **Total Value Available for Unsecured Creditors** | **$ 22,313** | **$ 22,313** |
| Less: Wind-down Expenses to Unsecured Creditors | (3,019) | (569) |
| Amount Available for Unsecured Claims | $ 19,294 | $ 21,743 |
| Total Unsecured Claims | 226,011 | 199,590 |
| Total Unsecured Claims Recovery | $ 19,294 | $ 21,743 |
| Deficiency Claim Recovery | 7,781 | 9,482 |
| Senior Notes Recovery | 470 | 599 |
| Outstanding Checks Recovery | 39 | 50 |
| Intercompany Note due to VHS, Inc. Recovery | 1,905 | - |
| Corizon, LLC - NewCo Unsecured Recovery | 717 | 915 |
| Corizon, LLC - RemainCo Unsecured Recovery | 8,382 | 10,697 |
| *% Corizon, LLC - RemainCo Unsecured Claims Recovery* | *8.5%* | *10.9%* |
| **Remaining Value Available** | **$ -** | **$ -** |

### Corizon, LLC RemainCo - Proposed Transaction Analysis

| ($ in thousands) | Low | High |
|---|---|---|
| Cash and Funding Agreement | $ 12,000 | $ 12,000 |
| Less: Administration Costs | - | - |
| Amount Available for Unsecured Claims | $ 12,000 | $ 12,000 |
| Total Unsecured Claims | $ 98,194 | $ 98,194 |
| Total Unsecured Claims Recovery | $ 12,000 | $ 12,000 |
| *% Unsecured Claims Recovery* | *12.2%* | *12.2%* |
| **Remaining Value Available** | **$ -** | **$ -** |

Corizon, LLC Unsecured Creditors would receive more out of the Proposed Transaction than they would under a liquidation of Corizon, LLC.

### Total VHS, Inc. (ex. Corizon, LLC) - Restructuring Analysis (Liquidation)

| ($ in thousands) | Low | High |
|---|---|---|
| Liquidation Value of Assets | $ 25,024 | $ 42,479 |
| Less: Wind-down Expenses | (4,975) | (5,288) |
| Amount Available for Secured Debt | $ 20,049 | $ 37,191 |
| Total Secured Debt | 92,378 | 92,378 |
| Total Secured Debt Recovery | $ 20,049 | $ 37,191 |
| **Value Available for Unsecured Creditors** | **$ -** | **$ -** |
| Memo: VHS, Inc. (ex. Corizon, LLC) Unsecured Claims | | |
| VHS, Inc. (ex. Corizon, LLC) Unsecured Claims | $ 131,730 | $ 131,730 |
| Senior Notes | 5,500 | 5,500 |
| Total VHS, Inc. (ex. Corizon, LLC) Unsecured Claims | $ 137,230 | $ 137,230 |

### RemainCo (ex. Corizon, LLC)

| ($ in thousands) | Low | High |
|---|---|---|
| Funding Agreement | $ 4,000 | $ 4,000 |
| Less: Administration Costs | (4,000) | (3,000) |
| **Value Available for Unsecured Creditors** | **$ -** | **$ 1,000** |
| Memo: RemainCo (ex. Corizon, LLC) Unsecured Claims | | |
| RemainCo (ex. Corizon, LLC) Unsecured Claims | $ 80,067 | $ 80,067 |

RemainCo (ex. Corizon, LLC) claims would do no worse under the Proposed Transaction than they would under a liquidation if the Proposed Transaction was not done.

18

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

YESCARE-CHS-00000400



# Corizon, LLC – Restructuring Analysis

| Corizon, LLC - Summary of Assets and Liquidation Proceeds | 2/28/2022 | % Realization | | Value Realization | |
|---|---|---|---|---|---|
| ($ in thousands) | Asset Value | Low | High | Low | High |
| **Current Assets** | | | | | |
| Cash and Cash Equivalents (Encumbered) | $ - | 100.0% | 100.0% | $ - | $ - |
| Trade Receivables | | | | | |
| Ordinary Billings | 2,877 | 40.0% | 80.0% | 1,151 | 2,302 |
| Cap Receivables | 5,156 | 20.0% | 60.0% | 1,031 | 3,093 |
| Total Trade Receivables | $ 8,033 | | | $ 2,182 | $ 5,395 |
| Other Receivables | 36 | 60.0% | 80.0% | 22 | 29 |
| Prepaid Expenses and Other Current Assets | (20) | - | - | - | - |
| Total Inventory | 89 | 30.0% | 50.0% | 27 | 45 |
| **Total Current Assets** | **$ 8,139** | | | **$ 2,231** | **$ 5,469** |
| **Non-Current Assets** | | | | | |
| Total property and equipment, net | $ 68 | 10.0% | 20.0% | $ 7 | $ 14 |
| Goodwill | (0) | - | - | - | - |
| Total Other Non-Current Assets | 5,761 | - | - | - | - |
| **Total Non-Current Assets** | **$ 5,829** | | | **$ 7** | **$ 14** |
| Intercompany Balances Due to Corizon LLC | 38,642 | - | - | - | - |
| **Total Assets** | **$ 52,610** | | | **$ 2,237** | **$ 5,482** |
| **Off-Balance Sheet Items** | | | | | |
| Affirmative Litigation | $ - | - | - | $ - | $ - |
| Preference/Avoidance Actions | - | - | - | - | - |
| **Total Off-Balance Sheet Items** | **$ -** | | | **$ -** | **$ -** |
| **Total Asset Recovery** | | | | **$ 2,237** | **$ 5,482** |

- Assets values are from the Company's most recent balance sheet as of February 28, 2022 for the Corizon, LLC entity.

- Cash is held in a Signature Bank account which is not subject to an account control agreement and is assumed to be available to unsecured creditors in this analysis.

- Accounts receivables consists of ordinary receivables, and receivables which are reimbursements for amounts spent on outside services above a cap (cap receivables).  Company stated that cap receivables are accrued on a GAAP basis based on expenses incurred but are not earned unless those expenses are paid in cash.

- Management has stated ordinary billings could also be challenged by customers in a liquidation scenario if not all outside services have been paid for.

- The company does not own any real estate, all fixed assets are related to fixtures and equipment.

- No value is ascribed to contract rights or other intangibles given the going concern valuation of the company, management also acknowledged there would be little value to these.

- Intercompany recovery is assumed to be $0 as there is no value to unsecured creditors in entities other than Corizon, LLC.

- Non-current assets consists of potential insurance recoveries based on reimbursements for payments above an applicable deductible cap in AZ.  The company has stated that any recoveries under this policy would go directly to reimburse claimholders and their counsel and would not be available for general creditors of the company.

- The company has represented that there are no material affirmative litigation matters, and that over the last two years there have been no dividends or other payments made to parent entities or equity holders.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**



# Corizon, LLC – Restructuring Analysis (cont.)

| Corizon, LLC - Summary of Assets and Liquidation Proceeds (cont.) | Value Realization | |
|---|---|---|
| ($ in thousands) | Low | High |
| **Total Asset Recovery** | **$ 2,237** | **$ 5,482** |
| **I. Wind-Down Expenses** | | |
| Liquidation Costs to Secured Creditors | $ 1,006 | $ 142 |
| **Amount Available for Secured Debt** | **$ 1,231** | **$ 5,340** |
| **II. Secured Debt** | | |
| Total Secured Debt | $ 92,378 | $ 92,378 |
| **Secured Debt Recovery** | **$ 1,231** | **$ 5,340** |
| *Secured Debt Recovery %* | *1.3%* | *5.8%* |
| **Asset Recovery Value Available for Unsecured Creditors** | **$ -** | **$ -** |
| Plus: Unencumbered Cash Available for Unsecured Creditors | 22,313 | 22,313 |
| **Total Asset Recovery Value Available for Unsecured Creditors** | **$ 22,313** | **$ 22,313** |
| **I. Wind-Down Expenses** | | |
| Liquidation Costs to Unsecured Creditors | $ 3,019 | $ 569 |
| **Amount Available for Unsecured Creditors** | **$ 19,294** | **$ 21,743** |
| **II. Unsecured Claims** | | |
| Deficiency Claim | $ 91,147 | $ 87,038 |
| Senior Notes | 5,500 | 5,500 |
| Outstanding Checks | 459 | 459 |
| Intercompany Note due to VHS, Inc. | 22,313 | - |
| Accounts Payable | 31,990 | 31,990 |
| Accrued Payroll and Related Expenses | 8,233 | 8,233 |
| Medical Claims Payable | 6,499 | 6,499 |
| Other Accrued Expenses | 8,997 | 8,997 |
| Professional Liability Claims Reserve | 50,874 | 50,874 |
| Total Unsecured Claims | $ 226,011 | $ 199,590 |
| Corizon, LLC - RemainCo Unsecured Claims | 98,194 | 98,194 |
| Corizon, LLC - NewCo Unsecured Claims | 8,399 | 8,399 |
| **Total Unsecured Claims Recovery** | **$ 19,294** | **$ 21,743** |
| Deficiency Claim Recovery | 7,781 | 9,482 |
| Senior Notes Recovery | 470 | 599 |
| Outstanding Checks Recovery | 39 | 50 |
| Intercompany Note due to VHS, Inc. Recovery | 1,905 | - |
| Corizon, LLC - RemainCo Unsecured Claims Recovery | 8,382 | 10,697 |
| Corizon, LLC - NewCo Unsecured Claims Recovery | 717 | 915 |
| *Unsecured Claims Recovery %* | *8.5%* | *10.9%* |
| **Remaining Asset Recovery Value** | **$ -** | **$ -** |

- Winddown expenses are assumed between $6-9M in a chapter 11 filing for all entities that are obligors/guarantors of the secured debt. Corizon, LLC is allocated a portion of those expenses based on i) non-cash tangible assets in the high scenario, and ii) unsecured claims in the low scenario. Winddown expenses are further allocated between secured and unsecured creditors at Corizon, LLC.

- Unsecured claims are based on the Company's balance sheet, no assumption was made regarding potential contract rejection claims or other damage claims. For purposes of the high analysis the intercompany note claim held by VHS, Inc. was assumed to be disallowed in full.

20

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**YESCARE-CHS-00000402**



# Corizon, LLC RemainCo – Proposed Transaction Analysis

| Corizon, LLC RemainCo - Proposed Transaction Analysis | 2/28/2022 | % Realization | | Value Realization | |
|---|---|---|---|---|---|
| ($ in thousands) | Asset Value | Low | High | Low | High |
| **RemainCo Assets** | | | | | |
| Funding Agreement | $ 11,000 | 100.0% | 100.0% | $ 11,000 | $ 11,000 |
| Cash and Cash Equivalents | 1,000 | 100.0% | 100.0% | 1,000 | 1,000 |
| Trade Receivables | 210 | - | - | - | - |
| Other Receivables | 26 | | | | |
| Prepaid Expenses and Other Current Assets | 0 | - | - | - | - |
| Total Inventory | (0) | - | - | - | - |
| Total property and equipment, net | 0 | - | - | - | - |
| Other Non-Current Assets | 5,761 | - | - | - | - |
| **Total Assets** | **$ 17,997** | | | **$ 12,000** | **$ 12,000** |
| **Total Asset Recovery** | | | | **$ 12,000** | **$ 12,000** |
| **I. Wind-Down Expenses** | | | | | |
| Administration Costs | | | | $ - | $ - |
| **Amount Available for Unsecured Creditors** | | | | **$ 12,000** | **$ 12,000** |
| **II. Unsecured Claims** | | | | | |
| Accounts Payable | | | | $ 31,790 | $ 31,790 |
| Accrued Payroll and Related Expenses | | | | 6,666 | 6,666 |
| Medical Claims Payable | | | | 6,499 | 6,499 |
| Other Accrued Expenses | | | | 7,465 | 7,465 |
| Professional Liability Claims Reserve | | | | 45,774 | 45,774 |
| Total Unsecured Claims | | | | $ 98,194 | $ 98,194 |
| **Unsecured Claims Recovery** | | | | **$ 12,000** | **$ 12,000** |
| *Unsecured Claims Recovery %* | | | | *12.2%* | *12.2%* |
| **Remaining Asset Recovery Value** | | | | **$ -** | **$ -** |

- **Funding Agreement** – represents the $15.0 million funding agreement between RemainCo and M2 LoanCo. Related to this, M2 LoanCo will issue a secured note to RemainCo in the amount of the funding agreement of $15.0 million such that if M2 LoanCo is unable to make a payment under the funding agreement, RemainCo would be able to foreclose on the assets of of M2 LoanCo, including its first-priority loan that is secured by substantially all of the assets of NewCo.

- Of the $15M funding agreement, $11M is designated as Tranche A which goes solely to fund the claims that originated at Corizon, LLC prior to the merger (i.e., claims held by Corizon, LLC Unsecured Creditors).

- The Company has represented that no material recovery is expected on any of the receivables at RemainCo.

- Non-current assets consists of potential insurance recoveries for claims in excess of the applicable deductible in AZ. The company has stated that any recoveries under this policy would go directly to reimburse claimholders and their counsel and would not otherwise be available for general creditors of the company.

- Administrative costs for RemainCo are estimated at $1M a year by the Company, however, the funding agreement specifies that the administrative costs are only to be paid from Tranche B, which is allocated $4M of the $15M funding agreement.

21

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

YESCARE-CHS-00000403



# Total VHS, Inc. (ex. Corizon, LLC and Corizon Health of New Mexico) – Restructuring Analysis

**Total VHS, Inc. (ex. Corizon, LLC) - Summary of Assets and Liquidation Proceeds**

| ($ in thousands) | 2/28/2022 Asset Value | % Realization Low | % Realization High | Value Realization Low | Value Realization High |
|---|---|---|---|---|---|
| **Current Assets** | | | | | |
| Cash and Cash Equivalents (Encumbered) | $ 9,850 | 100.0% | 100.0% | $ 9,850 | $ 9,850 |
| Trade Receivables | | | | | |
| Ordinary Billings | 27,843 | 40.0% | 80.0% | 11,137 | 22,274 |
| Cap Receivables | 3,364 | 20.0% | 60.0% | 673 | 2,018 |
| Total Trade Receivables | $ 31,207 | | | $ 11,810 | $ 24,293 |
| Other Receivables | 984 | 60.0% | 80.0% | 590 | 787 |
| Prepaid Expenses and Other Current Assets | 6,159 | - | - | - | - |
| Total Inventory | 4,014 | 30.0% | 50.0% | 1,204 | 2,007 |
| Deferred Income Taxes | 27,248 | - | - | - | - |
| **Total Current Assets** | **$ 79,461** | | | **$ 23,455** | **$ 36,937** |
| **Non-Current Assets** | | | | | |
| Total property and equipment, net | $ 5,688 | 10.0% | 20.0% | $ 569 | $ 1,138 |
| Goodwill | 159,223 | - | - | - | - |
| Contract Rights, net | 24,776 | - | - | - | - |
| Other Intangibles, net | 8,752 | - | - | - | - |
| Deferred Income Taxes | (4,615) | - | - | - | - |
| Other Non-Current Assets | | - | - | | |
| Refundable Deposits for Workers Comp/Surety Bonds | 17,587 | 5.7% | 14.2% | 1,000 | 2,500 |
| Other/Insurance | 15,536 | - | - | - | - |
| Total Other Non-Current Assets | $ 33,123 | | | $ 1,000 | $ 2,500 |
| **Total Non-Current Assets** | **$ 226,947** | | | **$ 1,569** | **$ 3,638** |
| **Total Assets** | **$ 306,408** | | | **$ 25,024** | **$ 40,575** |
| Intercompany Note due from Corizon, LLC | $ 22,313 | - | 8.5% | - | 1,905 |
| **Off-Balance Sheet Items** | | | | | |
| Affirmative Litigation | $ - | - | - | $ - | $ - |
| Preference/Avoidance Actions | - | - | - | - | - |
| **Total Off-Balance Sheet Items** | **$ -** | | | **$ -** | **$ -** |
| **Total Asset Recovery** | | | | **$ 25,024** | **$ 42,479** |
| **I. Wind-Down Expenses** | | | | | |
| Total Liquidation Costs | | | | $ 4,975 | $ 5,288 |
| **Amount Available for Secured Debt** | | | | **$ 20,049** | **$ 37,191** |
| **II. Secured Debt** | | | | | |
| Total Secured Debt | | | | $ 92,378 | $ 92,378 |
| **Secured Debt Recovery** | | | | **$ 20,049** | **$ 37,191** |
| *Secured Debt Recovery %* | | | | *21.7%* | *40.3%* |
| **Asset Recovery Value Available for Unsecured Creditors** | | | | **$ -** | **$ -** |

- Assets values are from the Company's most recent balance sheet as of February 28, 2022 and include all the assets for legal entities that are borrowers or guarantors of the debt other than Corizon, LLC and Corizon Health of New Mexico

- Based on information provided to us by the Company and White Case in the Debt and Collateral Review memo, it is not clear that Corizon Health of New Mexico, LLC is a guarantor of the Company's secured debt. However, Management has represented to FTICA that no unsecured creditors of Corizon Health of New Mexico, LLC will become unsecured creditors of RemainCo so the assets and claims at that entity have been excluded from this analysis

- Cash in these entities is all held in accounts subject to a blocked account control agreement

- Accounts receivables consists of ordinary receivables, and receivables which are reimbursements for amounts spent on outside services above a cap (cap receivables). Company stated that cap receivables are accrued on a GAAP basis based on expenses incurred but are not earned unless those expenses are paid in cash.

- Management has stated ordinary billings could also be challenged by customers in a liquidation scenario if not all outside services have been paid for

- PharmaCorr and Endeavor inventory has liens from two largest suppliers.

- The company does not own any real estate, all fixed assets are related to fixtures and equipment.

- No value is ascribed to contract rights or other intangibles given the going concern valuation of the company, management also acknowledged there would be little value to these.

- Refundable deposits primarily consists of deposits made to support surety bonds for performance guarantees under contracts, and to support workers comp obligations with AIG.

- Insurance recoveries are dependent upon making cash payments on claims which would not be made in a liquidation scenario.

- The company has represented that there are no material affirmative litigation matters, and that over the last two years there have been no dividends or other payments made to parent entities or equity holders.

- Liquidation costs represent administrative costs to realize the asset values and to administer chapter 11 proceedings and are allocated between these entities and Corizon, LLC

22

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

YESCARE-CHS-00000404



**Experts with Impact**™



**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**YESCARE-CHS-00000405**

# EXHIBIT 23



FTI Capital Advisors, LLC is a member of FINRA/SIPC.

May 1, 2022

Board of Directors
Valitás Health Services, Inc.
Corizon Health, Inc.
103 Powell Court
Brentwood, Tennessee 37027

Ladies and Gentlemen:

We understand that Corizon Health, Inc. (the "Company") is contemplating a series of transactions that would separate the Company into two distinct entities (the "Transaction"). Specifically, we understand that the Transaction consists of (a) a multi-party combination merger under the laws of the State of Texas (the "Combination Merger") by and among the Company, Valitás Health Services, Inc., a Texas corporation and the Company's direct parent ("Valitás"), Corizon, LLC, a Missouri limited liability company and a wholly-owned subsidiary of the Company ("Corizon"), and Corizon Health of New Jersey, LLC, a New Jersey limited liability company and a wholly-owned subsidiary of the Company ("Corizon NJ", together with the Company, Valitás, and Corizon are the "Merging Entities") pursuant to which (i) Valitás, Corizon, and Corizon NJ shall terminate upon consummation of the Combination Merger and (ii) the Company shall survive the Combination Merger and continue its existence under the laws of the State of Texas, (b) a divisional merger under the laws of the State of Texas (the "Divisional Merger") immediately following the Combination Merger, pursuant to which: (i) the Company shall survive the Divisional Merger and continue its existence under the laws of the State of Texas ("RemainCo"); (ii) a new corporation shall be created under, and be governed by, the laws of the State of Texas ("NewCo"); and (iii) the assets and liabilities of the Company will be allocated and vested in RemainCo or NewCo as further described below; (c) at the consummation of the Divisional Merger, RemainCo, as payee, will enter into a funding agreement (the "Funding Agreement") with M2 LoanCo, LLC, a Delaware limited liability company and a wholly owned subsidiary of the ultimate parent of the Company ("M2 LoanCo"), as payor; and (d) at the consummation of the Divisional Merger, NewCo will enter into a management services agreement with Geneva Consulting LLC, a Delaware limited liability company.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER   YESCARE-CHS-00000018

Corizon Health, Inc.
May 1, 2022

We understand that NewCo will, as a general matter, among other things: (i) receive all assets used in, or necessary to, the service of any active and unexpired customer contracts (with the exception of substantially all vendor contracts to which the Company or any of its subsidiaries is a party); (ii) receive all liabilities and obligations to unsecured creditors of the Company in connection with the assets referenced in clause (i), including, but not limited to, all costs, expenses and liabilities not allocated to RemainCo in connection with such active customer contracts (*e.g.*, medical malpractice, errors and omissions, and other litigation claims (whether or not such claims have yet been asserted)); and (C) assume all obligations under the senior secured credit facilities provided to the Company pursuant to that certain Third Amended and Restated Credit Agreement dated as of August 17, 2020 (as amended, amended and restated, or otherwise modified from time to time, the "Existing Secured Debt").

We also understand that, as a result of the Transaction, RemainCo will, among other things: (i) be allocated and remain vested with assets that have been disclosed in writing to FTI and that include, but are not limited to, $1.0 million of cash, the right to draw under the Funding Agreement, substantially all vendor contracts to which the Company or any of its subsidiaries is a party, all customer contracts that have expired or terminated to which the Company or any of its subsidiaries is a party, and the rights to make claims on any and all of the Company's and its subsidiaries' medical malpractice, general liability or errors and omissions insurance policies solely to the extent such claims relate to liabilities vested in RemainCo, including medical malpractice and other litigation claims in connection with the foregoing contracts; (ii) be allocated and remain vested with all liabilities and obligations to RemainCo Unsecured Creditors in connection with or arising from or pertaining to the foregoing assets or liabilities, including, but not limited to, all costs, expenses and liabilities in connection with the foregoing contracts (*e.g.*, claims of trade creditors and medical malpractice and other litigation claims (whether or not such claims have yet been asserted)) and liabilities with respect to terminated employees of the Company; and (iii) have no liability under or in connection with the Existing Secured Debt.

We have been requested by members of the Board of Directors of the Company to render our opinion to it as to the fairness of the Transaction, from a financial point of view, to the unsecured creditors of RemainCo ("RemainCo Unsecured Creditors"), as compared to a scenario in which the Transaction does not occur and instead there is a restructuring of the Company, whether in or out of court (a "Restructuring") (the "Fairness of the Transaction").

In arriving at our opinion, we reviewed and discussed with the Company and its counsel, among other things:

FTI Capital Advisors, LLC is a wholly owned subsidiary of FTI Consulting, Inc.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                                                                 **YESCARE-CHS-00000019**

Corizon Health, Inc.
May 1, 2022

(i)     Third Amended and Restated Credit Agreement dated as of August 17, 2020 and drafts of the Fourth Amendment and the Fifth Amendment, Assignment, Assumption, Waiver and Release to such Third Amended and Restated Credit Agreement;

(ii)    recent historical financial information of the Company, including (i) the Company's financial statements for the fiscal years ended December 31, 2018 through December 31, 2021;

(iii)   certain internal financial analyses and forecasts for the Company for the fiscal years ending December 31, 2022 through December 31, 2026 prepared by management of the Company and provided to us in writing (the "Forecast");

(iv)    a full and complete schedule of the identified contingent liabilities of the Company as of the date hereof;

(v)     an accurate balance sheet of each of the Company and of RemainCo immediately before and after giving effect to the consummation of the Transaction;

(vi)    detail on the amount of accounts receivable and insurance proceeds of RemainCo that are expected to be collected, as provided by management of the Company;

(vii)   reviewed the letter, dated as of the date hereof, from management of the Company to FTICA containing certain representations, including but not limited to representations as to historical financial statements, financial projections and their underlying assumptions, the pro forma schedule of assets and liabilities of each of the Company and of RemainCo immediately before and after giving effect to the consummation of the Transaction and obligations of the Company under existing credit agreements (the "Management Representation Letter"); and

(viii)  that certain memorandum, dated as of April 30, 2022, from White & Case LLP to the Boards of Directors of Valitás Health Services, Inc. and Corizon Health, Inc., which summarizes the Existing Secured Debt and the collateral securing the obligations thereunder.

In addition, we have had discussions with the management of the Company concerning the Company's business, operations, assets, liabilities, financial condition and prospects and undertaken such other studies, financial analyses and investigations, as we deemed appropriate.

FTI Capital Advisors, LLC is a wholly owned subsidiary of FTI Consulting, Inc.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Corizon Health, Inc.
May 1, 2022

In arriving at our opinion, with relied upon and assumed the accuracy and completeness of the financial and other information and data furnished to or disclosed to us by, or on behalf of, the Company (including any materials prepared by third parties and provided to FTICA by or on behalf of the Company) or that were reviewed by us, and we have not assumed and we do not assume any responsibility or liability for independently verifying such information. In arriving at our Opinion as set forth herein, we have relied upon and assumed the representations of the Company, including management of the Company, as set forth in greater detail in the Management Representation Letter, including but not limited to the representations of management that they are not aware of any facts or circumstances that would make such information inaccurate or misleading.  We have assumed that the Forecast has been reasonably prepared on a basis reflecting the best currently available estimates and judgments of the management of the Company. We assume no responsibility for, and we express no view as to, the Forecast, estimates or the assumptions on which it is based, or any other representation from management or from the Company. In arriving at our opinion, we have not conducted a physical inspection of the properties and facilities of the Company or any subsidiaries and have not made or obtained any valuations or appraisals of the assets or liabilities of the Company or any subsidiaries. Our opinion necessarily is based upon financial, market, economic and other conditions as they exist on, and can be evaluated as of, the date of this opinion. We assume no responsibility for updating or revising our opinion based on events or circumstances that may occur after the date of this opinion.  Furthermore, we have not evaluated, and are not opining on, the solvency of the Company and its subsidiaries under any laws relating to bankruptcy, insolvency or similar matters.

With respect to the Existing Secured Debt, we have assumed that (i) it is valid and enforceable in accordance with its terms, substantially all of the assets of the Company are pledged to the holders of the Existing Secured Debt; (ii) the liens and security interests of the holders of the Existing Secured Debt on substantially all of the assets of the Company are attached, perfected, valid and enforceable except as otherwise expressly stated herein; (iii) except for the account held by Corizon at Signature Bank (the "Account"), all material bank accounts have perfected liens and blocked account control agreements; and (iv) the lien rights of the Existing Secured Debt holders are senior to all other liabilities of the Company and are not subject to any defenses or set offs.

We have relied on and assumed that the composition of assets and liabilities to be contributed to RemainCo in the Transaction will be as set forth in the information provided to us in writing by the Company. With respect to the Funding Agreement, we  have assumed and relied on representations from management of the Company, that M2 LoanCo has or will have at the consummation of the Divisional Merger sufficient unrestricted and unencumbered cash available to it to fully fund up to $15 million to RemainCo;  that when called upon to fund RemainCo, M2

FTI Capital Advisors, LLC is a wholly owned subsidiary of FTI Consulting, Inc.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Corizon Health, Inc.
May 1, 2022

LoanCo will promptly meet its funding commitments to RemainCo, and that such funding will be available to RemainCo to be applied to RemainCo working capital requirements as well as for the benefit of RemainCo Unsecured Creditors; and that there are no conditions imposed on RemainCo that would materially restrict RemainCo's right to draw on the Funding Agreement.

We have assumed that (i) in the event of a Restructuring in which the Company's subsidiary, Corizon, became a debtor in a bankruptcy case, if the assets of Corizon available to satisfy the existing secured debt would not be adequate to fully satisfy the secured debt, the secured creditors would have a deficiency claim that would be treated as an unsecured liability of Corizon; (ii) in such event, the aforesaid deficiency claim, as an unsecured liability, would be added to the total amount of other unsecured claims against Corizon; (iii) such additional unsecured claims of the secured creditors therefore would dilute what might otherwise be available to the other unsecured creditors of Corizon in the absence of such a deficiency claim; and (iv) in the event of such a Restructuring, cash from the Account would be available and used, in whole or in part, to pay administrative expenses of the Restructuring and to satisfy creditor claims against Corizon.

We have also assumed  that (i) none of the Company, any of the Company's affiliates (other than Corizon), or any unsecured creditors of the Company or its affiliates  (other than unsecured creditors of Corizon) have or will have a valid claim to recover against the cash in the Account, including but not limited to claims in the nature of claw-backs, fraudulent or preferential transfers, recharacterization, equitable subordination, or other avoidance or similar proceedings; (ii) that following the Transaction RemainCo will no longer have any material secured creditors; (iii) the Transaction will not adversely impact the availability of insurance coverage under the Company's medical malpractice, general liability or errors and omissions insurance policies or impair RemainCo's rights or the rights of RemainCo's unsecured creditors to rely on and obtain recovery pursuant to such insurance policies; and (iv) RemainCo will need to fund its own operations for no longer than three to four years following the completion of the Transaction.

We have also assumed that all material governmental, regulatory and third-party approvals, consents and authorizations and releases necessary for the consummation of the Transaction will be obtained prior to completion of the Transaction and within the time frames reasonably contemplated by the parties to the Transaction.  We do not express any opinion as to legal, regulatory, tax or accounting matters, as to which we understand the Company has obtained such advice as it deemed necessary from qualified professionals.

We have been informed that NewCo intends to enter into a subsequent transaction immediately following the consummation of the Transaction, which subsequent transaction is likely to be structured as an acquisition of NewCo, and that the consideration for such subsequent

FTI Capital Advisors, LLC is a wholly owned subsidiary of FTI Consulting, Inc.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                                                                                 **YESCARE-CHS-00000022**

Corizon Health, Inc.
May 1, 2022

transaction is likely to be comprised primarily of the assumption of the obligations and liabilities of NewCo (the "Subsequent Transaction").  The scope of our engagement does not include a review or evaluation of the Subsequent Transaction or any other possible subsequent transaction involving NewCo or its assets and liabilities. Without limitation to the foregoing, our opinion is rendered as of the moment in time when the Transaction is consummated, and prior to the consummation of any other transaction, including the Subsequent Transaction. We have not provided any advice, recommendations, or opinion with respect to the possible Subsequent Transaction.

Other than the Fairness of the Transaction, we express no view as to, and our opinion does not address, any terms or other aspects or implications of the Transaction or any aspect or implication of any other agreement, arrangement or understanding entered into or to be entered into in connection with the Transaction, including, without limitation, the fairness of the amount or nature of the compensation resulting from the Transaction to any officers, directors or employees of the Company, or any class of such persons.  In addition, we express no view as to, and our opinion does not address, the current or future price or current or future value of any equity interests in the Company or of any assets of the Company, the underlying business decision of the Company to proceed with or effect the Transaction nor does our opinion address the relative merits of the Transaction as compared to any alternative business strategies (other than any Restructuring, solely in respect of the Fairness of the Transaction) that might exist for the Company or the effect of any other transaction (other than any Restructuring, solely in respect of the Fairness of the Transaction) in which the Company may engage. Where, in this opinion, we state that we assume certain matters or that our opinion is based on certain assumptions, in each instance, such assumptions by us are made with your acknowledgement and without independent verification by us.

Based upon and subject to the foregoing, we are of the opinion that the Transaction is fair, from a financial point of view, to the RemainCo Unsecured Creditors as compared to a scenario in which the Transaction does not occur and instead there is a Restructuring.  Our opinion is based on the terms described to us by the Company.  Other than the Fairness of the Transaction, we express no opinion on any definitive transaction documents.

Pursuant to and subject to the terms of our engagement letter, we will receive a fee for our services in connection with this opinion, a portion of which is payable upon rendering this opinion, and the Company has agreed to reimburse our expenses and indemnify us for certain liabilities that may arise out of our engagements.  FTI Capital Advisors is a wholly-owned subsidiary of FTI Consulting, Inc. ("FTI").  Neither FTICA nor FTI has performed any services to the Company or its affiliates during the past two years.

FTI Capital Advisors, LLC is a wholly owned subsidiary of FTI Consulting, Inc.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Corizon Health, Inc.
May 1, 2022

FTI, its subsidiaries, including FTICA, and its affiliates engage in a wide range of businesses from financial restructuring, transaction advisory, investment banking, asset management and other financial and non-financial advisory services. In the ordinary course of our business, we and our affiliates may actively advise our customers with respect to trades or other transactions in equity, debt and/or other securities (and any derivatives thereof) and financial instruments (including loans and other obligations).

This opinion, the issuance of which has been approved by our Fairness Committee, is strictly for the use and benefit of the Board of Directors of the Company and is rendered to such Board of Directors in connection with its consideration of the Transaction.  This opinion is not intended to be and does not constitute a recommendation to any equity-holder or noteholder of the Company as to how such equity-holder or noteholder should proceed with respect to the Transaction.

Very truly yours,

*FTI Capital Advisors, LLC*

FTI Capital Advisors, LLC

FTI Capital Advisors, LLC is a wholly owned subsidiary of FTI Consulting, Inc.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                **YESCARE-CHS-00000024**