# EXHIBIT 25



## MANAGEMENT REPRESENTATION LETTER

May 1, 2022

**<u>Confidential</u>**

FTI Capital Advisors, LLC
1800 Century Park East, Suite 450
Los Angeles, CA 90067

Dear FTI Capital Advisors, LLC:

This letter is being delivered in connection with your analyses in preparing, and the determinations contained in, the Opinion Letter, dated May 1, 2022, from FTI Capital Advisors, LLC ("<u>FTICA</u>" or "<u>you</u>"), who is providing services to White & Case LLP, on behalf of Corizon Health, Inc. (the "<u>Company</u>") for the benefit of the Company's board of directors (the "<u>Board</u>") in connection with the Transaction.  Capitalized terms used herein that are not defined herein have the meanings given to them in the Opinion Letter.

I hereby certify, solely in my capacity as a member of management of the Company ("<u>Management</u>"), and not in my individual capacity, and in each case to my actual knowledge after reasonable inquiry of other members of management of the Company at the Vice President or more senior level, as follows:

1. Management has made available to you all material information in the Company's possession that you have requested as relevant to your analyses in preparing the Opinion Letter, including but not limited to financial projections.  Except to the extent subsequently updated or corrected, all documents and information provided to you by Management were, at the time they were provided, accurate, complete and fairly presented the information contained therein in all material respects.  With respect to any documents or information provided to you that were subsequently updated or corrected, such documents or information, as updated or corrected were, at the time of such updates or corrections, accurate, complete and fairly presented the information contained therein in all material respects. Except to the extent disclosed to you in writing, Management is not aware of any facts or circumstances that would make any of the information provided to you by the Company, taken as a whole, as being inaccurate or misleading in any material respect as of the date of the Opinion Letter.

2. Attached hereto as Exhibit A are true, complete and correct copies of the Company's unaudited historical financial statements for the years ended December 31, 2017 through 2021 for the Company, which are the most current financial statements available.  I know of no facts or circumstances that have occurred that

would lead me to believe that such information, taken as a whole, is misleading, incomplete or inaccurate in any material respect, or needs to be updated to be accurate in all material respects.

3. Attached hereto as Exhibit B are the financial projections for the years ending December 31, 2022 through 2026 for the Company ("Management Projections") which represent the continued operations of the Company as it exists prior to the Transaction.  The Management Projections have been reasonably and prudently prepared and reflect the best currently available estimates and good faith judgments of Management as to the future financial performance of the Company based on the information reasonably available to Management.  The assumptions upon which the Management Projections are based are reasonable in all material respects given the information reasonably available to Management. The Management Projections are consistent in all material respects with the accounting principles expected to be used by the Company during the forecast period. As of the date of this letter and except to the extent disclosed to you in writing, there have been no material changes, revisions or updates to the Management Projections. The Management Projections are consistent with expected operations of the Company during the forecast period.

4. Attached hereto as Exhibit C are (a) a listing of the identified contingent liabilities of the Company as of the date hereof, (b) a balance sheet of the Company immediately before and after giving effect to the consummation of the Transaction, and (c) detail on the amount of accounts receivable and insurance proceeds (i) that will be allocated to and remain vested in RemainCo under the Plan of Divisive Merger and (ii) that Management reasonably expects to be collected by RemainCo following consummation of the Transaction (the "Financial Schedules").  The Financial Schedules have been reasonably and prudently prepared and reflect the best available estimates as of their applicable dates.  I know of no facts or circumstances that have occurred that would lead me to believe that such information, taken as a whole, is misleading, incomplete or inaccurate in any material respect, or needs to be updated to be accurate in all material respects.

Following completion of the Transaction, NewCo will, among other things (A) receive all assets used in, or necessary to, the conduct of the continuing business of the Company, Valitás Health Services, Inc. ("Valitás"), or the service of any active and current customer contracts (with the exception of substantially all vendor contracts to which the Company or any of its subsidiaries is a party); (B) receive all liabilities and obligations to unsecured creditors in connection with the assets referenced in clause (A), including, but not limited to, all costs, expenses and liabilities not allocated to RemainCo in connection with such active customer contracts (e.g., medical malpractice and other litigation claims (whether or not such claims have yet been asserted)); and (C) assume all obligations under the senior secured credit facilities provided to the Company pursuant to that certain Third

2

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER   YESCARE-CHS-00000423

Amended and Restated Credit Agreement dated as of August 17, 2020 (as amended, amended and restated, or otherwise modified from time to time, the "Existing Secured Debt").

Following completion of the Transaction, RemainCo will, among other things, (x) be allocated and remain vested with assets and liabilities as described on Exhibit C, which include, but are not limited to, $1.0 million of cash, the right to draw on a funding commitment (the "Funding Agreement") provided by M2 LoanCo, LLC ("M2 LoanCo"), substantially all vendor contracts to which the Company or any of its subsidiaries is a party, all customer contracts that have expired or terminated to which the Company or any of its subsidairies is a party, and the rights to make claims on any and all of the Company's and Valitás's medical malpractice, general liability or errors and omissions insurance policies solely to the extent such claims relate to liabilities that remain vested in RemainCo, including medical malpractice and other litigation claims in connection with the foregoing contracts; (y) be allocated and remain vested with all liabilities and obligations to RemainCo Unsecured Creditors in connection with the foregoing assets and liabilities, including, but not limited to, all costs, expenses and liabilities in connection with the foregoing contracts (e.g., claims of trade creditors and medical malpractice and other litigation claims (whether or not such claims have yet been asserted)); and (z) have no liability under or in connection with the Existing Secured Debt.

5.  Under the Transaction, NewCo will receive 100% of the membership interests in Corizon Health of New Mexico, LLC ("Corizon NM"). Following completion of the Transaction, ownership of the assets of Corizon NM will remain solely with Corizon NM, and responsibility for the liabilities of Corizon NM shall remain solely with Corizon NM; none of Corizon NM's assets or liabilities will be assigned or transferred to NewCo or RemainCo, or assumed by NewCo or RemainCo..

6.  Valitás Intermediate Holdings, Inc., M2 EquityCo, LLC, and M2 HoldCo, LLC hold no assets other than equity in their respective subsidiaries and no liabilities other than as disclosed to FTICA in writing. M2 LoanCo holds no assets other than the Existing Secured Debt receivable and no liabilities other than the Funding Agreement, as defined below. Other than claims related to the Existing Secured Debt, there are no material secured claims against the Company.

7.  As part of the Transaction, RemainCo will receive the right to draw on the Funding Agreement. M2 LoanCo has or will have at the closing sufficient source of cash (on its own balance sheet and/or from its affiliates) available to it to fully fund the full $15 million of funding to RemainCo contemplated under the Funding Agreement; when called upon to fund RemainCo, M2 LoanCo will be obligated to fund and capable of promptly meeting its funding commitments to RemainCo, and that such funding will be available to RemainCo to be applied to RemainCo

3

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

YESCARE-CHS-00000424

working capital requirements as well as for the benefit of RemainCo Unsecured Creditors; and there are no conditions imposed on RemainCo that would materially restrict RemainCo's right to draw on the M2 Funding. Of the $15 million of funding, $11 million will be exclusively available and utilized to satisfy, in whole or in part, obligations to the unsecured creditors of RemainCo that were unsecured creditors of Corizon, LLC prior to the Transaction.

8. As of February 28, 2022, the Company's subsidiary Corizon, LLC held cash of approximately $22.3 million in a bank account that is not subject to a deposit account control agreement in favor of the collateral agent under the Existing Secured Debt. Corizon, LLC, as a borrower, is an obligor under the Existing Secured Debt.

9. Following the completion of the Transaction, RemainCo is estimated to incur annual administrative expenses of approximately $1.0 million.

10. As of the date hereof, the Company does not intend to engage in any business, other than the business in which it is currently engaged as disclosed in writing to FTICA.

11. The Company is not engaged in discussions concerning any capital raise, acquisition or divestiture transaction, or other material transaction, and has no plans or offers with respect to effecting any such transaction or transactions, except as disclosed in writing to FTICA.

12. I understand that, if there are any material changes made to the facts, circumstances or underlying assumptions, both as expressed in this letter or in any other discussion with Management that is subsequently reduced to writing, your Opinion could change, and this change may be material. As of the date hereof and except (a) to the extent disclosed to you in writing, or (b) as have occurred in the ordinary course of business consistent with past practice, there have been no material changes in the assets, liabilities, financial conditions, results of operations, business or prospects of the Company since the date of the most recent financial statements attached hereto as Exhibit A, and there has been no change in the recorded liabilities of the Company set forth on the most recent balance sheet in Exhibit C.

13. I am not aware of any fraud or irregularities involving Management or employees of the Company or its representatives, who have significant roles in the system of internal accounting control that would have a material adverse effect on the Management Projections or the financial position and results of operations reflected in the Cash Flow Statements. To my actual knowledge (as qualified herein), there have been no communications received by the Company from regulatory agencies or from the Company's auditors concerning material non-compliance with or deficiencies in financial reporting practices that have not been disclosed to you that could have a material adverse effect on the financial position and results of operations reflected in the Cash Flow Statements. To my actual knowledge (as

4

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    YESCARE-CHS-00000425

qualified herein), the Company has complied with all material contractual agreements that would have a material effect on the Management Projections and the financial position and results of operations reflected in the Cash Flow Statements in the event of non-compliance.

14. I acknowledge and agree that the information and documents referenced herein are not the only information and documents that Management has provided to you and that in rendering the opinion you will be relying on other written information, documentation and other statements from Management and other sources.

15. I understand that you are relying on the truth and material accuracy of the foregoing in connection with your opinion, and represent that the foregoing information is true and correct in all material respects, and execute this letter as of the date hereof.

*[Remainder of Page Intentionally Left Blank]*

5

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                                                    **YESCARE-CHS-00000426**

Each of the above statements is made solely in my capacity as a member of Management of the Company on a combined and consolidated basis (and not in my individual capacity) and in each case to my actual knowledge.

Sincerely,

F. Jeffrey Sholey

Signature: _____          Title: <u>SVP, Chief Financial Officer</u>

*[Signature Page to Management Representation Letter]*

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                    **YESCARE-CHS-00000427**

**Exhibit A: Historical Financial Information**

<u>Income Statement for the years ended December 31, 2017 through 2020</u>

| | Year Ended December 31, | | Year Ended December 31, | |
| --- | --- | --- | --- | --- |
| | 2020 | 2019 | 2018 | 2017 |
| Healthcare revenues | $ 710,772 $ | 804,545 $ | 792,090 $ | 896,685 |
| Operating costs and expenses: | | | | |
| Healthcare expenses | 662,451 | 759,087 | 734,484 | 852,883 |
| Selling, general, and administrative expenses | 40,009 | 39,207 | 41,789 | 46,387 |
| Corporate restructuring and related expenses | 18,959 | 6,904 | 11,174 | 9,360 |
| Depreciation and amortization | 10,027 | 11,856 | 14,105 | 16,780 |
| | 731,446 | 817,054 | 801,552 | 925,410 |
| Operating loss | (20,674) | (12,509) | (9,462) | (28,725) |
| Impairment of goodwill | - | 38,101 | 17,534 | 103,300 |
| Gain on warrant revaluation | - | - | (83) | (8,586) |
| Gain on recapitalization | - | - | - | (213,920) |
| Interest expense, net | 14,208 | 12,865 | 21,162 | 30,342 |
| Loss before income taxes | (34,882) | (63,475) | (48,075) | 60,139 |
| Income tax benefit (expense) | 268 | 466 | (1,327) | (1,266) |
| Net loss | $ (35,150) $ | (63,941) $ | (46,748) $ | 61,405 |

<u>Income Statement for the year ended December 31, 2021</u>

Exhibit A

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

YESCARE-CHS-00000428

| | Calendar year 2021 | |
|---|---|---|
| Healthcare revenue | $ | 596,256 |
| Costs and expenses: | | |
| Healthcare expenses | | 562,568 |
| Gross margin | | 33,688 |
| Selling, general and administrative expenses | | 34,069 |
| Board of Director fees | | 4,725 |
| Corporate restructuring expenses and other | | 5,508 |
| Gain on recapitalization transaction | | - |
| Depreciation and amortization | | 7,005 |
| | | 51,307 |
| Operating loss | | (17,619) |
| Impairment of goodwill | | - |
| Gain on warrant revaluation | | - |
| Gain on recapitalization transaction | | - |
| Interest expense | | 13,140 |
| Loss before income taxes | | (30,759) |
| Benefit for income taxes | | (8,305) |
| Consolidated net loss | $ | (22,454) |
| Net income attributable to noncontrolling interest | | 144 |
| Net income (loss) | $ | (22,598) |
| EBITDA reconciliation: | | |
| Operating loss | $ | (17,619) |
| Board of Director fees | | 4,725 |
| Corporate restructuring expenses and other | | 5,508 |
| Depreciation and amortization | | 7,005 |
| EBITDA | $ | (381) |

## Balance Sheet as of December 31, 2017 through 2020

Exhibit A

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                    **YESCARE-CHS-00000429**

| | December 31, 2020 | December 31, 2019 | December 31, 2018 | December 31, 2017 |
|---|---|---|---|---|
| **Assets** | | | | |
| Current assets: | | | | |
| Cash and cash equivalents | $ 13,761 | $ 21,107 | $ 9,531 | $ 14,211 |
| Accounts receivable, less allowances of $875 and $367, respectively | 60,380 | 63,935 | 62,234 | 57,748 |
| Inventories | 6,762 | 6,939 | 6,453 | 8,625 |
| Prepaid expenses and other current assets | 15,091 | 18,474 | 19,822 | 19,832 |
| Total current assets | 95,994 | 110,455 | 98,040 | 100,416 |
| Property and equipment, net | 7,963 | 12,017 | 14,201 | 16,167 |
| Goodwill | 159,223 | 142,567 | 180,668 | 198,202 |
| Customer contracts and relationships, net | 28,280 | 43,287 | 49,513 | 56,481 |
| Other intangibles, net | 10,161 | - | - | - |
| Other assets, net | 49,572 | 71,983 | 76,955 | 70,020 |
| Total assets | $ 351,193 | $ 380,309 | $ 419,377 | $ 441,286 |
| | | | | |
| **Liabilities and shareholder's equity (deficit)** | | | | |
| Current liabilities: | | | | |
| Accounts payable | $ 39,386 | $ 53,444 | $ 44,761 | $ 43,014 |
| Accrued medical claims liability | 30,008 | 26,256 | 29,672 | 35,852 |
| Accrued expenses | 72,353 | 66,232 | 73,498 | 68,653 |
| Deferred revenue | 1,320 | 914 | 840 | 1,818 |
| Current portion of long-term debt | 6,096 | 3,310 | 1,020 | 1,696 |
| Total current liabilities | 149,163 | 150,156 | 149,791 | 151,033 |
| Noncurrent portion of accrued expenses | 103,372 | 122,247 | 130,758 | 134,469 |
| Noncurrent deferred tax liabilities | 1,162 | 977 | 541 | 2,325 |
| Long-term debt | 80,375 | 111,782 | 79,199 | 155,655 |
| | | | | |
| Warrants | - | - | - | 83 |
| | | | | |
| Common stock, par value $0.001 per share; 1,000 shares authorized, issued, and outstanding at December 31, 2020 and 2019 | - | - | - | - |
| Paid-in capital | 39,943 | 372,065 | 372,065 | 263,950 |
| Accumulated deficit | (22,822) | (376,918) | (312,977) | (266,229) |
| Total shareholder's equity (deficit) | 17,121 | (4,853) | 59,088 | (2,279) |
| Total liabilities and shareholder's equity (deficit) | $ 351,193 | $ 380,309 | $ 419,377 | $ 441,286 |

Exhibit A

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

## Statement of Cash Flows for the years ended December 31, 2017 through 2020

| | Year Ended December 31, | | Year Ended December 31, | |
|---|---|---|---|---|
| | 2020 | 2019 | 2018 | 2017 |
| **Operating activities** | | | | |
| Net loss | $ (35,150) $ | (63,941) $ | (46,748) $ | 61,405 |
| Adjustments to reconcile net loss to net cash used in operating activities: | | | | |
| Depreciation and amortization | 10,027 | 11,856 | 14,105 | 16,780 |
| Finance cost amortization | - | - | - | 2,061 |
| Gain on debt recapitalization | - | - | - | (213,920) |
| Gain on fair value of warrants | - | - | (83) | (8,586) |
| Gain on retirement of fixed assets | 7 | 236 | 2 | 368 |
| Impairment of goodwill | - | 38,101 | 17,534 | 103,300 |
| Deferred income tax | 185 | 436 | (1,784) | (1,137) |
| Unit compensation | - | - | - | 226 |
| Paid-in-kind interest and fees | 12,735 | 10,454 | 6,843 | 7,585 |
| Changes in operating assets and liabilities: | | | | |
| Receivables | 3,555 | (1,701) | (4,486) | 10,697 |
| Inventories and other current assets | 3,560 | 862 | 2,182 | 8,904 |
| Accounts payable and accrued expenses | (21,117) | (10,510) | (3,142) | (17,461) |
| Other operating activities | 22,822 | 5,047 | (7,914) | (7,174) |
| Net cash used in operating activities | (3,376) | (9,160) | (23,491) | (36,952) |
| | | | | |
| **Investing activities** | | | | |
| Capital expenditures, net | (970) | (3,847) | (4,701) | (4,740) |
| Net cash used in investing activities | (970) | (3,847) | (4,701) | (4,740) |
| | | | | |
| **Financing activities** | | | | |
| Proceeds from long-term debt | - | 32,305 | 23,512 | 54,225 |
| Repayments of long-term debt | (3,000) | (7,722) | - | - |
| Debt issuance costs | - | - | - | (11,698) |
| issued, and outstanding at December 31, 2020 and 2019 | (3,000) | 24,583 | 23,512 | 42,527 |
| | | | | |
| Net increase (decrease) in cash and cash equivalents | (7,346) | 11,576 | (4,680) | 835 |
| Cash and cash equivalents, beginning of year | 21,107 | 9,531 | 14,211 | 13,376 |
| Cash and cash equivalents, end of year | $ 13,761 $ | 21,107 $ | 9,531 $ | 14,211 |

Exhibit A

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                                                                                              **YESCARE-CHS-00000431**

**Exhibit B: Management Projections**

<u>Income Statement and Cash Flows for the years ending December 31, 2022 through 2026</u>

**Income statements**

| | Projection | | | | |
|---|---|---|---|---|---|
| | **Year 1** | **Year 2** | **Year 3** | **Year 4** | **Year 5** |
| Revenue | $ 321,929 | $ 331,624 | $ 342,114 | $ 352,266 | $ 362,748 |
| Staffing | 211,394 | 217,644 | 224,496 | 231,800 | 239,375 |
| Off-site | 43,042 | 44,218 | 45,428 | 46,673 | 47,951 |
| Pharmacy | 19,725 | 20,595 | 21,509 | 22,468 | 23,474 |
| PLI | 8,482 | 8,746 | 9,019 | 9,304 | 9,599 |
| Other costs | 14,321 | 14,592 | 14,870 | 15,158 | 15,285 |
| Margin | 24,964 | 25,828 | 26,791 | 26,864 | 27,065 |
| SGA | (20,625) | (21,244) | (21,881) | (22,537) | (23,214) |
| Depreciation | (800) | (800) | (800) | (800) | (800) |
| Interest | (14,088) | (14,088) | (14,088) | (14,088) | (14,088) |
| Pre-tax income | (10,548) | (10,303) | (9,978) | (10,561) | (11,036) |
| Income tax at 26.79% | (2,826) | (2,760) | (2,673) | (2,829) | (2,957) |
| Net income | $ (7,722) $ | (7,543) $ | (7,305) $ | (7,732) $ | (8,080) |

**Cash Flows**

| | Projection | | | | |
|---|---|---|---|---|---|
| | **Year 1** | **Year 2** | **Year 3** | **Year 4** | **Year 5** |
| Net income | $ (7,722) $ | (7,543) $ | (7,305) $ | (7,732) $ | (8,080) |
| Depreciation | 800 | 800 | 800 | 800 | 800 |
| Changes in: | | | | | |
| Accounts receivable | (1,804) | (1,352) | (1,463) | (1,416) | (1,462) |
| Inventory | (17) | (85) | (90) | (94) | (99) |
| Deferred tax assets | (2,826) | (2,760) | (2,673) | (2,829) | (2,957) |
| Other assets | 3,600 | 5,100 | 3,600 | 5,100 | 3,600 |
| Accounts payable | (7,065) | (812) | 129 | 133 | 98 |
| Accrued payroll | 2,755 | 926 | 1,015 | 1,082 | 1,122 |
| Medical Claims payable | (45,878) | (5,091) | (5,394) | 682 | 700 |
| Other accrued expenses | (15,900) | (15,900) | (15,900) | (15,900) | (14,400) |
| | (74,057) | (26,718) | (27,282) | (20,174) | (20,676) |
| Investing activities | | | | | |
| Capital expenditures | (700) | (700) | (700) | (700) | (700) |
| Financing activities | | | | | |
| Debt issuance (payments) | - | - | - | - | - |
| Change in cash | (74,757) | (27,418) | (27,982) | (20,874) | (21,376) |
| Beginning cash | 30,919 | (43,838) | (71,256) | (99,237) | (120,111) |
| Ending cash | $ (43,838) $ | (71,256) $ | (99,237) $ | (120,111) $ | (141,487) |

Exhibit B

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**YESCARE-CHS-00000432**

## Balance Sheet as of December 31, 2022 through 2026

**2021-12-31**

| | Projection | | | | |
|---|---|---|---|---|---|
| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
| **Assets** | | | | | |
| Current assets: | | | | | |
| Cash and cash equivalents | $ (43,838) | $ (71,256) | $ (99,237) | $ (120,111) | $ (141,487) |
| Accounts receivable | 44,894 | 46,246 | 47,709 | 49,125 | 50,587 |
| Prepaid expenses and other current assets | 5,295 | 5,295 | 5,295 | 5,295 | 5,295 |
| Inventory | 1,937 | 2,022 | 2,112 | 2,206 | 2,305 |
| Deferred income taxes | | | | | |
| Total current assets | 8,288 | (17,693) | (44,122) | (63,485) | (83,301) |
| | | | | | |
| Property and equipment: | 30,257 | 30,957 | 31,657 | 32,357 | 33,057 |
| Less accumulated depreciation | (27,339) | (28,139) | (28,939) | (29,739) | (30,539) |
| Total property and equipment, net | 2,918 | 2,818 | 2,718 | 2,618 | 2,518 |
| | | | | | |
| Goodwill and intangible assets | 193,453 | 193,453 | 193,453 | 193,453 | 193,453 |
| Deferred income taxes | 9,897 | 12,657 | 15,330 | 18,159 | 21,116 |
| Other | 41,103 | 36,003 | 32,403 | 27,303 | 23,703 |
| ***Total assets*** | $ 255,659 | $ 227,239 | $ 199,783 | $ 178,048 | $ 157,489 |
| | | | | | |
| **Liabilities and shareholders' equity (deficit)** | | | | | |
| Current liabilities: | | | | | |
| Accounts payable | $ 6,247 | $ 5,435 | $ 5,563 | $ 5,697 | $ 5,795 |
| Accrued payroll and related expenses | 31,313 | 32,239 | 33,253 | 34,335 | 35,457 |
| Medical claims payable | 35,377 | 30,287 | 24,892 | 25,574 | 26,275 |
| Other accrued expenses | 22,219 | 20,719 | 19,219 | 17,719 | 17,719 |
| Total current liabilities | 95,157 | 88,679 | 82,928 | 83,325 | 85,246 |
| | | | | | |
| Non current accrued liabilities | 75,834 | 61,434 | 47,034 | 32,634 | 18,234 |
| Deferred income taxes | | | | | |
| Long-term debt | 97,878 | 97,878 | 97,878 | 97,878 | 97,878 |
| Total liabilities | 268,869 | 247,992 | 227,841 | 213,838 | 201,359 |
| Shareholders' equity (deficit) | (13,210) | (20,753) | (28,058) | (35,790) | (43,869) |
| ***Total liabilities & shareholders' equity*** | $ 255,659 | $ 227,239 | $ 199,783 | $ 178,048 | $ 157,489 |

Exhibit B

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER** **YESCARE-CHS-00000433**

## Exhibit C: Contingent Liabilities & Balance Sheet
### Balance Sheet as of February 28, 2022

| 2022-02-28 | Total | Less PharmaCorr and Endeavor | VHS | NewCo | RemainCo Inactive contracts |
|---|---|---|---|---|---|
| **Assets** | | | | | |
| Current assets: | | | | | |
| Cash and cash equivalents | 32,163,030 | 300 | 32,162,730 | 31,162,730 | 1,000,000 |
| Trade receivables, less allowance | 41,012,806 | 1,326,269 | 39,686,537 | 32,758,794 | 6,927,743 |
| Other receivables | 1,020,002 | 794,262 | 225,740 | 218,116 | 7,624 |
| Prepaid expenses and other current assets | 6,139,073 | 264,157 | 5,874,917 | 5,790,165 | 84,752 |
| Inventory | 4,102,890 | 2,218,190 | 1,884,700 | 1,884,700 | 0 |
| Deferred income taxes | 27,247,726 | (70,979) | 27,318,705 | 27,247,726 | 70,979 |
| Total current assets | 111,685,527 | 4,532,198 | 107,153,328 | 99,062,230 | 8,091,098 |
| Total property and equipment, net | 5,757,028 | 3,057,804 | 2,699,225 | 2,699,224 | 0 |
| Goodwill | 159,222,569 | - | 159,222,569 | - | 159,222,569 |
| Contract rights, net | 24,776,399 | - | 24,776,399 | - | 24,776,399 |
| Other intangibles, net | 8,752,361 | - | 8,752,361 | - | 8,752,361 |
| Investment in Corizon Health, Inc. | - | - | - | - | - |
| Deferred financing costs | - | - | - | - | - |
| Deferred income taxes | (4,615,340) | - | (4,615,340) | (4,615,340) | - |
| Other | 38,884,236 | 3,906 | 38,880,330 | 20,355,411 | 18,524,919 |
| *Total assets* | *344,462,780* | *7,593,908* | *336,868,872* | *117,501,525* | *219,367,347* |
| | | | | | |
| **Liabilities and shareholders' equity (deficit)** | | | | | |
| Current liabilities: | | | | | |
| Short term debt | - | - | - | - | - |
| Accounts payable | 50,280,440 | 59,844 | 50,220,596 | (6,372,380) | 56,592,976 |
| Accrued payroll and related expenses | 28,782,823 | 241,496 | 28,541,327 | 15,726,104 | 12,815,222 |
| Medical claims payable | 43,171,182 | 1,624 | 43,169,558 | 21,884,586 | 21,284,973 |
| Accrued insurance | 1,912,367 | - | 1,912,367 | 1,912,367 | - |
| Deferred income | 573,175 | - | 573,175 | 573,175 | - |
| Net current liabilities of disc ops | - | - | - | - | - |
| Other accrued expenses | 23,671,849 | 181,139 | 23,490,710 | 4,731,397 | 18,759,313 |
| Total current liabilities | 148,391,836 | 484,103 | 147,907,733 | 38,455,249 | 109,452,484 |
| Professional liability claim reserves | 90,808,609 | - | 90,808,609 | 22,000,000 | 68,808,609 |
| Worker's compensation claim reserves | 146,543 | - | 146,543 | 146,543 | - |
| Net noncurrent liabilities of disc ops | - | - | - | - | - |
| Other noncurrent liabilities | 1,214,306 | 5,640,827 | (4,426,521) | (5,640,827) | 1,214,306 |
| Deferred income taxes | 14,191,068 | - | 14,191,068 | 14,191,068 | - |
| Long-term debt | 97,878,266 | - | 97,878,266 | 97,878,266 | - |
| Total noncurrent liabilities | 204,238,792 | 5,640,827 | 198,597,965 | 128,575,050 | 70,022,915 |
| Shareholders' equity (deficit) | | | | | |
| Preferred stock | - | - | - | - | - |
| Common stock | 39,943,096 | - | 39,943,096 | - | 39,943,096 |
| Capital surplus | - | - | - | - | - |
| Retained earnings - beginning balance | (30,502,541) | 289,604 | (30,792,145) | - | (30,792,145) |
| Retained earnings - dividends | - | - | - | - | - |
| Retained earnings - current balance | - | - | - | - | - |
| Current year net income (loss) | (17,608,403) | 1,179,375 | (18,787,778) | 1,498,214 | (20,285,991) |
| Total retained earnings | (48,110,944) | 1,468,979 | (49,579,923) | 1,498,214 | (51,078,136) |
| Total shareholders' equity | (8,167,848) | 1,468,979 | (9,636,826) | 1,498,214 | (11,135,040) |
| *Total liabilities & shareholders' equity* | *344,462,780* | *7,593,908* | *336,868,872* | *168,528,513* | *168,340,359* |

Exhibit C

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**YESCARE-CHS-00000434**

## Balance Sheet as of February 28, 2022

| 2022-02-28 | Corizon LLC CM001 Actual Current Year | New Co | RemainCo |
|---|---|---|---|
| **Assets** | | | |
| Cash and cash equivalents | 21,861,116 | 20,861,116 | 1,000,000 |
| Trade receivables, less allowance | 8,033,115 | 7,823,534 | 209,581 |
| Other receivables | 36,090 | 9,742 | 26,347 |
| Prepaid expenses and other current assets | (19,692) | (19,693) | 0 |
| Inventory | 89,328 | 89,328 | (0) |
| Deferred income taxes | 0 | - | - |
| Total current assets | 29,999,955 | 28,764,027 | 1,235,928 |
| | | | |
| Total property and equipment, net | 67,916 | 67,914 | 1 |
| Goodwill | (0) | | |
| Contract rights, net | 0 | | |
| Other intangibles, net | 0 | | |
| Investment in Corizon Health, Inc. | 0 | | |
| Deferred financing costs | 0 | | |
| Deferred income taxes | 0 | | |
| Insurance Recovery | 5,761,000 | - | 5,761,000 |
| | | | |
| **Total assets** | **35,828,871** | **28,831,941** | **6,996,929** |
| | | | |
| **Liabilities and shareholders' equity (deficit)** | | | |
| Current Portion of Long Term Debt | 0 | | |
| Accounts payable | 31,990,200 | 200,000 | 31,790,200 |
| Accrued payroll and related expenses | 8,232,626 | 1,566,891 | 6,665,735 |
| Medical claims payable | 6,499,195 | 0 | 6,499,195 |
| Accrued insurance | 0 | - | - |
| Deferred income | 0 | - | - |
| Net current liabilities of disc ops | 0 | - | - |
| Other accrued expenses | 8,996,602 | 1,532,084 | 7,464,519 |
| Total current liabilities | 55,718,623 | 3,298,975 | 52,419,649 |
| Professional liability claim reserves | 50,874,189 | 5,100,000 | 45,774,189 |
| Worker's compensation claim reserves | 146,543 | 146,543 | - |
| Net noncurrent liabilities of disc ops | 0 | | |
| Other noncurrent liabilities | (51,813,935) | - | (51,813,935) |
| Deferred income taxes | 0 | - | - |
| Note Payable to Valitas Health Services | 22,312,583 | | 22,312,583 |
| Long-term debt | 92,378,266 | - | 92,378,266 |
| Total noncurrent liabilities | 113,897,647 | 5,246,543 | 108,651,103 |
| Shareholders' equity (deficit) | | | |
| Noncontrolling Interest | 0 | | |
| Preferred stock | 0 | | |
| Common stock | 0 | | |
| Capital surplus | 0 | | |
| Retained earnings - beginning balance | 6,290,204 | | |
| Retained earnings - dividends | 0 | | |
| Current year net income (loss) | | | |
| Total retained earnings | 6,619,358 | | |
| Less treasury stock at cost: | 12,909,562 | | |
| Preferred stock | 12,909,562 | | |
| Common stock | 0 | | |
| Total shareholders' equity | 12,909,562 | | |
| **Total liabilities & shareholders' equity** | **182,525,832** | | |

Exhibit C

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

YESCARE-CHS-00000435

Recoverability Summary as of February 28, 2022

| | Balance allocate | Estimated recovery % | Estimated recovered balances |
|---|---|---|---|
| Cash | $ 1,000,000 | 100% | $ 1,000,000 |
| A/R | 6,927,743 | 20% | 1,385,549 |
| Prepaid | 84,752 | 0% | - |
| Insurance | 18,524,919 | 31% | 5,761,000 |
| | $ 26,537,414 | | $ 8,146,549 |

Exhibit C

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

YESCARE-CHS-00000436

## REMAINCO ASSETS

1. The Company Signature Account and Corizon Signature Account, which will retain a balance of $1,000,000 of cash at the Effective Time.

2. 100% of the membership interests in the following entities (the "**RemainCo Subs**"):
   a. Corizon Health of Maryland, LLC
   b. Corizon Health of Ohio, LLC
   c. Corizon Health of Alabama, LLC
   d. Corizon Health of Kansas, LLC
   e. PHS Community Care LLC
   f. Corizon Health Clinical Solutions, LLC
   g. Corizon Health of Mississippi, LLC
   h. Corizon Health of Florida, LLC
   i. Corizon Health of Pennsylvania, LLC
   j. Corizon Health of California, LLC
   k. Corizon Health of Virginia, LLC
   l. Corizon Health of Tennessee, LLC
   m. Corizon Health of Maryland, LLC
   n. Corizon Health of Arizona, LLC

3. All former and current contracts of the Company that are not NewCo Contracts, including those listed on Schedule 3.01(b)(RC) (the "**RemainCo Contracts**").

4. All claims or counterclaims against third parties to the extent relating to RemainCo Assets or RemainCo Liabilities.

5. All receivables and other current assets of the Company to the extent relating to RemainCo Assets.

6. Copies of all Books and Records of the Company to the extent relating to RemainCo Assets or RemainCo Liabilities.

7. All permits and licenses not required or needed to conduct the operations of NewCo or for the NewCo Assets.

8. All assets of the Company not set forth on Schedule 3.01(a).

9. All rights of the Company or any of its affiliates under the NewCo Insurance Policies for coverage and/or defense of claims for RemainCo Liabilities.

10. Any recovery under the NewCo Insurance Policies of insurance proceeds for RemainCo Liabilities, net of any costs of recovery (including any legal fees or

Exhibit C

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                   YESCARE-CHS-00000437

expenses), deductibles, retentions, premium adjustments, retroactively rated premiums or other self-insurance features paid by NewCo, if any.

11. All rights of the Company or any of its affiliates under the AZ Policies for coverage and/or defense of claims for RemainCo Liabilities.

12. Lawsuit against Coverys regarding claim #2021CL11296.

## REMAINCO LIABILITIES

1. Any lawsuits, claims, liabilities, costs, expenses or losses arising from, related to, or in connection with the RemainCo Contracts or the services provided thereunder whether arising prior to, at or after the Effective Time, including all lawsuits and claims listed on the attached Schedule 4.01(b)(RL).

2. Any deferred payment obligations, lawsuits, claims, liabilities, costs, expenses or losses arising from, related to, or in connection with any employee, contractor or consultant terminated by any Combination Merger Entity prior to the Effective Time, in each case, including severance and similar obligations, except for the Company's obligations under the 401k plan or COBRA health insurance.

3. All obligations under any long term incentive plans of the Company.

4. Any liabilities, costs, expenses or losses arising from, related to, or in connection with any person's or entity's lawsuits or claims in connection with the Merger or related transactions, including any alleged breach of duties by the board or managers of any Combination Merger Entity.

5. (i) all liabilities and obligations of every kind and character to the extent arising from, related to or in connection with the RemainCo Assets, whether arising before, at or after the Effective Time and (ii) all liabilities and obligations of every kind and character owed to any vendor or service provider in connection with any RemainCo Assets or any NewCo Assets, in each case, arising prior to the Effective Time.

6. All liabilities of the Company not set forth on Schedule 4.01(a).

7. All liabilities and obligations under the AZ Policies and NewCo Insurance Policies for deductibles, retentions, premium adjustments, retroactively rated premiums or other self-insurance features incurred or paid on account of any RemainCo Liabilities or RemainCo Assets.

Exhibit C

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER YESCARE-CHS-00000438

Exhibit C

8. Any settlement payment obligations of the Company relating to lawsuits, claims, liabilities, costs, expenses, relating to or in connection with the RemainCo Contracts, including those on Schedule 4.01(b)(SPO).

Exhibit C

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

YESCARE-CHS-00000439

# EXHIBIT 26

**UNANIMOUS WRITTEN CONSENT**

**OF**

**THE BOARD OF DIRECTORS**

**OF**

**YESCARE CORP.**

The undersigned, being all of the directors of YesCare Corp., a Texas corporation (the "**Corporation**"), acting by written consent pursuant to Sections 6.201 and 21.415 of the Texas Business Organizations Code, do hereby consent to the adoption of the following resolutions and direct that this consent be filed with the minutes of the proceedings of the board of directors of the Corporation on this day of May 1, 2022:

**WHEREAS**, the board of directors deems it advisable and in the best interest of the Corporation to ratify the actions of the incorporator of the Corporation taken prior to the date of this consent;

**WHEREAS**, the board of directors deems it advisable and in the best interest of the Corporation to adopt the bylaws attached hereto as <u>Exhibit A</u> to be the bylaws of the Corporation;

**WHEREAS**, the board of directors deems it advisable to appoint officers of the Corporation;

**NOW THEREFORE LET IT BE:**

**RESOLVED**, that any actions taken by the incorporator of the Corporation prior to the date of this written consent are hereby ratified, confirmed, approved, and adopted as actions of the Corporation; and further

**RESOLVED**, that the bylaws attached hereto as <u>Exhibit A</u> are hereby ratified, confirmed, approved, and adopted as the bylaws of the Corporation; and further

**RESOLVED**, that the following person be and hereby is elected to the offices set forth opposite their name below, to hold office until the earlier election and qualification of their respective successors or until their earlier resignation or removal:

| <u>Name</u> | <u>Offices</u> |
|---|---|
| Sara Tirschwell | President and Secretary |

**RESOLVED**, that the officers of the Corporation be, and each them individually hereby is, authorized and empowered to do and perform or cause to be done and performed all such acts, deeds and things, and to make, execute and deliver, or cause to be made, executed and delivered, all such agreements, undertakings, documents, instruments or certificates in the name of the

1

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                **YESCARE-CHS-00000006**

Corporation and to retain such counsel, agents and advisors and to incur and pay such expenses, fees and taxes as shall, in the opinion of the officers of the Corporation executing the same, be deemed necessary or advisable (such necessity or advisability to be conclusively evidenced by the execution thereof) to effectuate or carry out fully the purpose and interest of all of the foregoing resolutions; and that any and all such actions heretofore or hereafter taken by the officers relating to and within the terms of these resolutions be, and they hereby are, adopted, affirmed, approved and ratified in all respects as the act and deed of the Corporation; and

**RESOLVED**, that an executed copy of this Unanimous Written Consent shall be filed with the minutes of the proceedings of the board of directors.

[*Signature Page Follows*]

2

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**    **YESCARE-CHS-00000007**

**IN WITNESS WHEREOF**, the undersigned director has duly executed this Unanimous Written Consent as of the date first above written.

_____
Sara Tirschwell

[YesCare Corp. – Initial Unanimous Consent of Board Signature Page]

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                                    YESCARE-CHS-00000008

## Exhibit A

## BYLAWS

[See attached.]

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

# BYLAWS
# OF
# YESCARE CORP.

### ARTICLE I
### OFFICES

**Section 1.01   REGISTERED OFFICE AND AGENT.** The registered office and registered agent of the Corporation shall be as set forth in the Corporation's Certificate of Formation. The registered office or registered agent may be changed by resolution of the Board of Directors, upon making the appropriate filing with the Secretary of State.

**Section 1.02   PRINCIPAL OFFICE.** The principal office of the Corporation shall be located at such place within or without the State of Texas as shall be fixed from time to time by the Board of Directors.

**Section 1.03   OTHER OFFICES.** The Corporation may also have other offices at any places, within or without the State of Texas, as the Board of Directors may designate, or as the business of the Corporation may require or as may be desirable.

**Section 1.04   BOOKS AND RECORDS.** All records maintained by the Corporation in the regular course of its business, including its share transfer ledger, books of account, and minute books, may be maintained in written paper form or another form capable of being converted to written paper form within a reasonable time. The Corporation shall convert any records so kept upon the request of any person entitled to inspect the records pursuant to applicable law.

### ARTICLE II
### SHAREHOLDERS

**Section 2.01   PLACE OF MEETING.** All meetings of the shareholders shall be held either at the principal office of the Corporation or at any other place, either within or without the State of Texas, as shall be designated in the notice of the meeting or duly executed waiver of notice. The meeting may be held solely by means of remote communication as set out in Section 2.02 below.

**Section 2.02 MEETINGS OF SHAREHOLDERS BY REMOTE COMMUNICATION**. Subject to any guidelines and procedures adopted by the Board of Directors, shareholders not physically present at a shareholders' meeting may participate in the meeting by means of remote communication and may be considered present in person and may vote at the meeting, whether held at a designated place or solely by means of remote communication, subject to the conditions imposed by applicable law.

**Section 2.03   ANNUAL MEETING.** An annual meeting of shareholders shall be held on the date and time set by the Board of Directors and stated in the notice of the meeting for the

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

purpose of electing directors and transacting any other business as may be brought properly before the meeting.

Failure to hold the annual meeting at the designated time does not result in the winding up or termination of the Corporation. If the Board of Directors fails to call the annual meeting, any shareholder may make written demand to any officer of the Corporation that an annual meeting be held.

**Section 2.04   SPECIAL SHAREHOLDERS' MEETINGS.** Special meetings of the shareholders may be called by the President, the Board of Directors, or by the holders of at least ten percent (10%) of all the shares entitled to vote at the proposed special meeting. The record date for determining shareholders entitled to call a special meeting is the date the first shareholder signs the notice of that meeting. Only business within the purpose or purposes described in the notice or executed waiver of notice may be conducted at a special meeting of the shareholders.

**Section 2.05   QUORUM OF SHAREHOLDERS**. The presence in person or by proxy of the holders of a majority of the shares entitled to vote constitutes a quorum for a meeting of the shareholders. Unless otherwise required by the Texas Business Organizations Code, the Certificate of Formation, or these Bylaws:

(a)   The affirmative vote of the holders of a majority of the shares represented at a meeting at which a quorum is present shall be the act of the shareholders.

(b)   The shareholders represented in person or by proxy at a meeting at which a quorum is present may conduct any business properly brought before the meeting until adjournment, and the subsequent withdrawal from the meeting of any shareholder or the refusal of any shareholder represented in person or by proxy to vote shall not affect the presence of a quorum at the meeting.

If a quorum is not present, the shareholders represented in person or by proxy may adjourn the meeting until a time and place determined by a vote of the holders of a majority of the shares represented in person or by proxy at that meeting. At such adjourned meeting at which the required number of voting shares shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally noticed.

**Section 2.06   CONDUCT OF MEETINGS**. The Board of Directors may adopt by resolution rules and regulations for the conduct of meetings of the shareholders as it shall deem appropriate. At every meeting of the shareholders, the President, or in his or her absence or inability to act, the Vice President, or, in his or her absence or inability to act, a director or officer designated by the Board of Directors, shall act as chairman of, and preside at, the meeting. The Secretary or, in his or her absence or inability to act, the person whom the chairman of the meeting shall appoint secretary of the meeting, shall act as secretary of the meeting and keep the minutes thereof.

**Section 2.07   VOTING OF SHARES.** Each outstanding share, regardless of class or series, shall be entitled to one vote on each matter submitted to a vote at a meeting of shareholders, except to the extent that the Certificate of Formation provides for more or less than one vote per share or limits or denies voting rights to the holders of the shares of any class or series. Unless

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

otherwise required by the Texas Business Organizations Code, the Certificate of Formation, or these Bylaws, any matter, other than the election of directors, brought before any meeting of shareholders at which a quorum is present shall be decided by the affirmative vote of the holders of the majority of shares present in person or represented by proxy at the meeting and entitled to vote on the matter.

Unless otherwise required by the Certificate of Formation, the election of directors shall be decided by a plurality of the votes cast by the holders of shares entitled to vote in the election at a meeting of the shareholders at which a quorum is present.

Shareholders are prohibited from cumulating their votes in any election of directors of the Corporation.

Any vote may be taken by voice or show of hands unless a shareholder entitled to vote, either in person or by proxy, objects, in which case written ballots shall be used.

**Section 2.08 WRITTEN CONSENT OF SHAREHOLDERS WITHOUT A MEETING.** Any action required by the Texas Business Organizations Code to be taken at any annual or special meeting of shareholders, or any action which may be taken at any annual or special meeting of shareholders, may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing, setting forth the action so taken, shall have been signed by the holder or holders of shares having not less than the minimum number of votes that would be necessary to take the action at a meeting at which holders of all shares entitled to vote on the action were present and voted. Prompt notice of the taking of any action by shareholders without a meeting by less than unanimous written consent shall be given to those shareholders who did not consent in writing to the action.

## ARTICLE III
## DIRECTORS

**Section 3.01   BOARD OF DIRECTORS.** The business and affairs of the Corporation shall be managed under the direction of the Board of Directors of the Corporation. Directors need not be residents of the State of Texas or shareholders of the Corporation.

**Section 3.02   NUMBER OF DIRECTORS.** The number of directors shall be one (1), provided that the number may be increased or decreased from time to time by an amendment to these Bylaws or by resolution adopted by the Board of Directors. No decrease in the number of Directors shall have the effect of shortening the term of any incumbent director.

**Section 3.03   TERM OF OFFICE.** At the first annual meeting of shareholders and at each annual meeting thereafter, the holders of shares entitled to vote in the election of directors shall elect directors, each of whom shall hold office until a successor is duly elected and qualified or until the director's earlier death, resignation, disqualification, or removal.

**Section 3.04   VACANCIES AND NEWLY CREATED DIRECTORSHIPS.** Any vacancy occurring in the Board of Directors may be filled by election at an annual or special meeting of shareholders called for that purpose, or may be filled by the affirmative vote of a

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

majority of the remaining directors even when the majority of the remaining directors is less than a quorum of the total number of directors specified in the Certificate of Formation or the Bylaws. A director elected to fill a vacancy shall be elected for the unexpired term of his or her predecessor in office.

A directorship to be filled by reason of an increase in the number of directors may be filled by election at an annual or special meeting of shareholders called for that purpose, or may be filled by the Board of Directors for a term of office continuing only until the next election of one or more directors by the shareholders; provided that the Board of Directors may not fill more than two (2) directorships during the period between any two (2) successive annual meetings of shareholders.

**Section 3.05   REMOVAL.** Any director or the entire Board of Directors may be removed, with or without cause, by a vote of the holders of a majority of the shares then entitled to vote at an election of the director or directors, at any meeting of shareholders called expressly for that purpose.

**Section 3.06   RESIGNATION**. A director may resign by providing written notice to the Corporation. The resignation shall be effective upon the later of the date of receipt of the notice of resignation or the effective date specified in the notice. Acceptance of the resignation shall not be required to make the resignation effective.

**Section 3.07   REGULAR MEETINGS OF DIRECTORS.** A regular meeting of the newly-elected Board of Directors shall be held without other notice immediately following each annual meeting of shareholders, at which the board shall elect officers and transact any other business as shall come before the meeting. The board may designate a time and place for additional regular meetings, by resolution, without notice other than the resolution.

**Section 3.08   SPECIAL MEETINGS OF DIRECTORS.** The Chairman may call a special meeting of the Board of Directors at a time or place determined by the Chairman. The Chairman shall call a special meeting at the written request of two (2) or more directors.

**Section 3.09   NOTICE OF DIRECTORS' MEETINGS.** All special meetings of the Board of Directors shall be held upon not less than three (3) days' written notice stating the date, place, hour, and purpose of the meeting delivered to each director either personally or by mail. Notice of a regular or special meeting of the Board of Directors may be provided to a director by electronic transmission on consent of the director. The director may specify the form of electronic transmission to be used to communicate notice.

A written waiver of the required notice signed by a director entitled to the notice, before or after the meeting, is the equivalent of giving notice to the director who signs the waiver. A director's attendance at any meeting shall constitute a waiver of notice of the meeting, except where the directors attends a meeting for the express purpose of objecting to the transaction of any business on the grounds that the meeting is not lawfully called or convened.

**Section 3.10   QUORUM AND ACTION BY DIRECTORS.** A majority of the number of directors shall constitute a quorum for the transaction of business. The act of the majority of the directors present at a meeting at which a quorum is present at the time of the act shall be the act of the Board of Directors, unless the act of a greater number is required by law, the Certificate of

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Formation, or these Bylaws. The directors at a meeting for which a quorum is not present may adjourn the meeting until a time and place as may be determined by a vote of the directors present at that meeting.

**Section 3.11   COMPENSATION.** Directors, as such, shall not receive any stated salary for their services, but by resolution of the Board of Directors a fixed sum and expenses of attendance, if any, may be allowed for attendance at any meeting of the Board of Directors or committee thereof. A director shall not be precluded from serving the Corporation in any other capacity and receiving compensation for services in that capacity.

**Section 3.12   ACTION BY DIRECTORS WITHOUT A MEETING.** Unless otherwise restricted by the Certificate of Formation or these Bylaws, any action required or permitted to be taken at a meeting of the Board of Directors or any committee may be taken without a meeting if all members of the Board of Directors or committee consent in writing or by electronic transmission and the writings or electronic transmissions are filed with the minutes of the proceedings of the Board of Directors.

**ARTICLE IV**
**OFFICERS**

**Section 4.01   POSITIONS AND ELECTION.** The officers of the Corporation shall be elected by the Board of Directors and shall be a President and a Secretary and any other officers, including assistant officers and agents, as may be deemed necessary by the Board of Directors. Any two (2) or more offices may be held by the same person.

Each officer shall serve until a successor is elected and qualified or until the earlier death, resignation, or removal of that officer. Vacancies or new offices shall be filled at the next regular or special meeting of the Board of Directors.

**Section 4.02   REMOVAL.** Any officer elected or appointed by the Board of Directors may be removed with or without cause by the affirmative vote of the majority of the Board of Directors. Removal shall be without prejudice to the contract rights, if any, of the officer so removed.

**Section 4.03   POWERS AND DUTIES OF OFFICERS.** The powers and duties of the officers of the Corporation shall be as provided from time to time by resolution of the Board of Directors or by direction of an officer authorized by the Board of Directors to prescribe the duties of other officers. In the absence of such resolution, the respective officers shall have the powers and shall discharge the duties customarily and usually held and performed by like officers of corporations similar in organization and business purposes to the Corporation, subject to the control of the Board of Directors.

**Section 4.04   AUTHORITY TO EXECUTE AGREEMENTS.** All agreements of the Corporation shall be executed on behalf of the Corporation by (a) the President or any Vice President, (b) such other officer or employee of the Corporation authorized in writing by the President, with such limitations or restrictions on such authority as the President deems appropriate or (c) such other person as may be authorized by the Board of Directors.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                                                  **YESCARE-CHS-00000014**

**ARTICLE V**
**SHARE CERTIFICATES AND TRANSFER**

**Section 5.01 CERTIFICATES REPRESENTING SHARES NOT REQUIRED.**

The Corporation shall not be required to deliver certificates representing all shares to which shareholders are entitled, and any uncertificated shares may be evidenced by a book-entry system maintained by the registrar of the shares.

The Corporation shall, after the issuance or transfer of uncertificated shares, send to the registered owner of uncertificated shares a written notice containing the information required to be set forth or stated on certificates pursuant to the Texas Business Organizations Code. Except as otherwise expressly provided by law, the rights and obligations of the holders of uncertificated shares and the rights and obligations of the holders of certificates representing shares of the same class and series shall be identical. No share shall be issued until the consideration therefor, fixed as provided by law, has been fully paid.

**Section 5.02 TRANSFERS OF SHARES.** Shares of the Corporation shall be transferable in the manner prescribed by law and in these Bylaws. Transfers of shares shall be made on the books of the Corporation only by the holder of record thereof or by such other person as may under law be authorized to endorse such shares for transfer or by such shareholder's attorney lawfully constituted in writing. No transfer of shares shall be valid as against the Corporation for any purpose until it shall have been entered in the share transfer records of the Corporation by an entry showing from and to what person those shares were transferred.

**Section 5.03 REGISTERED SHAREHOLDERS.** The Corporation shall be entitled to treat the holder of record of any shares issued by the Corporation as the holder in fact thereof for all purposes, including voting those shares, receiving dividends or distributions thereon or notices in respect thereof, transferring those shares, exercising rights of dissent with respect to those shares, exercising or waiving any preemptive right with respect to those shares, entering into agreements with respect to those shares in accordance with Texas law, or giving proxies with respect to those shares.

Neither the Corporation nor any of its officers, directors, employees, or agents shall be liable for regarding that person as the owner of those shares at that time for those purposes, regardless of whether that person possesses a certificate for those shares, and shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person, whether or not it shall have express or other notice of such claim or interest, except as otherwise provided by Texas law.

**ARTICLE VI**
**INDEMNIFICATION**

**Section 6.01 INDEMNIFICATION OF EXISTING AND FORMER DIRECTORS AND OFFICERS.** The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed action or other proceeding (whether civil, criminal, administrative, arbitrative, or investigative), including any appeal thereof,

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER** **YESCARE-CHS-00000015**

or any inquiry or investigation that could lead to such an action or proceeding (any of the foregoing to be referred to hereafter as a "**proceeding**") by reason of the fact that the person (1) is or was a director or officer of the Corporation; or (2) while a director of the Corporation, is or was serving at the request of the Corporation as a partner, director, officer, venturer, proprietor, trustee, employee, administrator, or agent of another entity, organization, or an employee benefit plan (each such person in (2) to be referred to hereafter as a "**delegate**" and, together with each such person in (1), a "**covered person**") to the fullest extent permitted by the Texas Business Organizations Code (as the same now exists or may hereafter be amended, substituted, or replaced, the "**BOC**"), but, if the BOC is amended, substituted, or replaced, only to the extent that such amendment, substitution, or replacement permits the Corporation to provide broader indemnification rights than the BOC permitted the Corporation to provide prior to such amendment, substitution, or replacement, against all judgments (including arbitration awards), court costs, penalties, settlements, fines, excise, and other similar taxes and reasonable attorneys' fees (all of the foregoing to be referred to hereafter as "**expenses**") actually incurred by the covered person in connection with such proceeding. The right to indemnification in this Section 6.01 shall continue as to a covered person who has ceased to be a director, officer, or delegate and shall inure to his or her heirs, executors, or administrators.

**Section 6.02  ADVANCEMENT OF EXPENSES.** The Corporation shall pay or reimburse reasonable expenses incurred by a covered person currently serving as a director, officer, or delegate of the Corporation who was or is a party or is threatened to be made a party to any proceeding in advance of the final disposition of the proceeding, without any determination as to the covered person's entitlement to indemnification, if the Corporation receives the following before any such advancement of expenses:

      (a)    A written affirmation by the covered person of the covered person's good faith belief that he or she has met the standard of conduct necessary for indemnification under the BOC.

      (b)    A written undertaking by or on behalf of the covered person to repay the amount so advanced if the final determination is that the covered person has not met the required standard of conduct set forth in the BOC or that indemnification is prohibited by the BOC.

**Section 6.03  INDEMNIFICATION OF AND ADVANCEMENT OF EXPENSES TO OTHER PERSONS.** Notwithstanding any other provision of this ARTICLE VI, the Corporation may indemnify and advance expenses to persons other than covered persons, including advisory directors, non-executive officers, employees, and agents of the Corporation, to the extent and in the manner provided by the BOC and these Bylaws.

**Section 6.04  INDEMNIFICATION RIGHTS NOT EXCLUSIVE.** The rights provided pursuant to this ARTICLE VI shall not be exclusive of any other rights to which a person may be entitled by applicable law, the Corporation's Certificate of Formation, action or resolution of the Corporation's shareholders or disinterested directors, or contract.

**Section 6.05  INSURANCE.** The Corporation may purchase and maintain insurance or another arrangement to indemnify any covered person against any liability asserted against and

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**YESCARE-CHS-00000016**

incurred by the covered person in that capacity or arising out of the covered person's status in that capacity, regardless of whether the Corporation would have the power to indemnify the covered person against that liability under applicable law.

**Section 6.06   REPORTS OF INDEMNIFICATION AND ADVANCES.** No later than one (1) year from the date that the Corporation indemnifies or advances expenses to a director, it shall give a written report of such indemnification or advancement to the shareholders, which report must be made with or before the notice or waiver of notice of the next shareholders' meeting or the next submission to the shareholders of a written consent without a meeting.

## ARTICLE VII
## MISCELLANEOUS

**Section 7.01   SEAL.** The Corporation may adopt a corporate seal in a form approved by the Board of Directors. The Corporation shall not be required to use the corporate seal and the lack of the corporate seal shall not affect an otherwise valid contract or other instrument executed by the Corporation.

**Section 7.02   CHECKS, DRAFTS, ETC.** All checks, drafts, or other instruments for payment of money or notes of the Corporation shall be signed by an officer or officers or any other person or persons as shall be determined from time to time by resolution of the Board of Directors.

**Section 7.03   FISCAL YEAR.** The fiscal year of the Corporation shall be as determined by the Board of Directors.

**Section 7.04   INVALID PROVISIONS.** If any one or more of the provisions of these Bylaws, or the applicability of any provision to a specific situation, shall be held invalid or unenforceable, the provision shall be modified to the minimum extent necessary to make it or its application valid and enforceable, and the validity and enforceability of all other provisions of these Bylaws and all other applications of any provision shall not be affected thereby.

**Section 7.05   CONFLICT WITH APPLICABLE LAW OR CERTIFICATE OF FORMATION.** These Bylaws are adopted subject to any applicable law and the Certificate of Formation. Whenever these Bylaws may conflict with any applicable law or the Certificate of Formation, such conflict shall be resolved in favor of such law or the Certificate of Formation.

## ARTICLE VIII
## AMENDMENT OF BYLAWS

**Section 8.01   AMENDMENT OF BYLAWS.** The Board of Directors may amend, alter, change, and repeal these Bylaws or adopt new bylaws. The shareholders may make additional bylaws and may alter and repeal any bylaws whether such bylaws were originally adopted by them or otherwise.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**